1. RONNIE R. GOVEA #V.21557
2. CALIFORNIA MEDICAL FACILITY
3. P.O. BOX 2500 I.1 #125
4. VACAVILLE, CA. 95696
5. (IN PRO-PER)
6.
7.         IN THE UNITED STATES DISTRICT COURT
8.      FOR THE EASTERN DISTRICT OF CALIFORNIA
9.

10. RONNIE R. GOVEA,                    CIVIL ACTION NO.
11.         PLAINTIFF,                  COMPLAINT UNDER
12.                                     42 U.S.C. 1983 ACTION
13. VS.                                 2:15-CV-2545 AC (PC)
14.
15. ROBERT W. FOX, CMF WARDEN,
16. CMF MEDICAL OFFICIALS JOHN DOE'S 1-7
17. DR. F. RADING M.D., DR. JOSEPH BICK M·D.
18. DR. MICHELE DITOMAS M.D. MS
19. CMF CEO JACKIE CLARK
20. J. LEWIS, DEPUTY DIRECTOR "POLICY AND
21. RISK MANAGEMENT SERVICES CALIFORNIA
22. CORRECTIONAL HEALTH CARE SERVICES
23. CMF CMO JOHN DOE
24. CMF INSTITUTIONAL UTILIZATION
25. MANAGEMENT COMMITTEE JOHN DOE'S 1-10
26. SAN JOAQUIN GENERAL HOSPITAL IN FRENCH
27. CAMP, CA. ORTHOPEDIC "DR. NIKOLAJ WOLFSON M.D."
28. WHO NOW WORKS AT U.C. S.F. MEDICAL CENTER.
                          DEFENDANTS,

1.

**FILED**

DEC - 9 2015

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                    DEPUTY CLERK

1.       — EXHAUSTION OF ADMINISTRATIVE REMEDIES —

2. YES THERE IS A GRIEVANCE PROCEDURE AVAILABLE HERE

3. AT CMF, I HAVE FILED TWO HEALTH CARE APPEALS IN

4. THIS MATTER AND THEY BOTH HAVE BEEN COMPLETED AT THE

5. DIRECTORS LEVEL. (SEE EXHIBITS - A AND - B)

6.

7.                    — DEFENDANTS —

8. DEFENDANT ROBERT W. FOX IS THE WARDEN OF CALIFORNIA

9. MEDICAL FACILITY. HE IS LEGALLY RESPONSIBLE FOR THE OPER-

10. ATION OF CMF, AND FOR THE WALFARE OF ALL THE INMATES

11. OF THAT PRISON.

12.

13. DEFENDANTS JOHN DOE'S 1-7 ARE CMF MEDICAL OFFICIALS

14.

15. DEFENDANT DR. F. RADING M.D. IS A CHIEF PHYSICIAN &

16. SURGEON AT CALIFORNIA MEDICAL FACILITY.

17.

18. DEFENDANT DR. JOSEPH BICK M.D. IS A CHIEF PHYSICIAN

19. & SURGEON AT CALIFORNIA MEDICAL FACILITY.

20.

21. DEFENDANT DR. MICHELE DITOMAS M.D. M.S. IS A CHIEF

22. PHYSICIAN & SURGEON AT CALIFORNIA MEDICAL FACILITY.

23.

24. DEFENDANT JACKIE CLARK IS A CHIEF EXECUTIVE OFFICER

25. AT CALIFORNIA MEDICAL FACILITY.

26.

27. DEFENDANTS JOHN DOE'S 1-10 ARE PART OF THE INSTITUTIONAL

28. MANAGEMENT COMMITTEE AT CALIFORNIA MEDICAL FACILITY,

1. DEFENDANT "JOHN DOE" IS THE CMO CHIEF MEDICAL OFFICER
2. AT CALIFORNIA MEDICAL FACILITY.
3.
4. DEFENDANT "JOHN DOE" WHO SIGNED MY CDCR 602 HEALTH
5. CARE APPEAL LOG# CMF-HC-13037843 AT THE DIRECTORS
6. LEVEL FOR A "J. LEWIS" DEPUTY DIRECTOR, POLICY AND RISK
7. MANAGEMENT SERVICES, CALIFORNIA CORRECTIONAL HEALTH
8. CARE SERVICES IS A CDCR EMPLOYEE IN ELK GROVE CA.
9.
10. DEFENDANT "JOHN DOE" WHO SIGNED MY CDCR 602 HEALTH
11. CARE APPEAL LOG# CMF-HC-14040116 AT THE DIRECTORS
12. LEVEL FOR A "J. LEWIS" DEPUTY DIRECTOR, POLICY AND RISK
13. MANAGEMENT SERVICES, CALIFORNIA CORRECTIONAL HEALTH
14. CARE SERVICES IS A CDCR EMPLOYEE IN ELK GROVE CA.
15.
16. DEFENDANT "J. LEWIS", DEPUTY DIRECTOR POLICY AND RISK
17. MANAGEMENT SERVICES, CALIFORNIA CORRECTIONAL HEALT
18. CARE SERVICES IS A CDCR EMPLOYEE IN ELK GROVE CA.
19.
20. ALL DEFENDANTS NAMED ABOVE WORK FOR THE (CDCR)
21. CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION
22.
23. DEFENDANT ORTHOPEDIC DR. NIKOLAJ WOLFSON M.D. WAS WORK-
24. ING FOR SAN JOAQUIN GENERAL HOSPITAL IN FRENCH CAMP CA
25. UNDER CONTRACT WITH (CDCR) AT THE TIME OF INCIDENT, HE
26. NOW WORKS AT U.C.S.F. MEDICAL CENTER SINCE FEB. 2015.
27.
28. EACH DEFENDANT IS SUED INDIVIDUALLY AND IN HIS OR

3.

1. HER OFFICIAL CAPACITY. AT ALL TIMES MENTIONED
2. IN THIS COMPLAINT EACH DEFENDANT ACTED UNDER
3. COLOR OF STATE LAW.
4.
5.
6.                    — PLAINTIFF —
7.
8. PLAINTIFF, RONNIE R. GOVEA IS AND WAS AT ALL
9. TIMES MENTIONED HEREIN A PRISONER OF THE
10. STATE OF CALIFORNIA IN THE CUSTODY OF THE CALIF-
11. ORNIA DEPARTMENT OF CORRECTIONS AND REHABI-
12. LITATION. HE IS CURRENTLY CONFINED IN CALIFORNIA
13. MEDICAL FACILITY IN VACAVILLE, CALIFORNIA.
14.
15.
16.
17.
18.
19.
20
21.
22.
23.
24.
25.
26.
27.
28.

                        4.

1.   — STATEMENT OF CLAIM —

2.

3. I ARRIVED HERE AT CALIFORNIA MEDICAL FACILITY (CMF)

4. ON FEB. 1, 2013 FROM PLEASANT VALLEY STATE PRISON (P.V.S.P.)

5. AND I HAD NO KNEE IN MY LEFT LEG IT WAS REPLACED

6. WITH AN ANTIBIOTIC SPACER BACK IN 2012 DUE TO AN

7. INFECTION CAUSED BY A DEFECTIVE HINGE KNEE REPLACE-

8. MENT DEVICE THAT HAD TO BE REMOVED ON OCT. 29, 2012

9. BECAUSE IT ACTUALLY BROKE IN MY LEFT LEG. THEREFORE,

10. MY PREVIOUS MEDICAL TREATMENT AT TRI- CITY MED-

11. ICAL CENTER IN OCEANSIDE CA. WAS TERMINATED ONCE I

12. WAS TRANSFERRED TO CMF. CMF MEDICAL OFFICIALS

13. DR. JOSEPH BICK M.D. REFERRED ME TO SAN JOAQUIN GEN-

14. ERAL HOSPITAL IN FRENCH CAMP CA. ON FEB. 25, 2013,

15. FOR A CONSULTATION WITH A ORTHOPEDIC SURGEON

16. DR. JOHN M. DOWBAK M.D. AFTER HE REVIEWED MY MEDICAL

17. HISTORY OF THREE PRIOR TOTAL KNEE REPLACEMENT SURGERY's

18. THAT WERE UNSUCCESSFUL, HE TOLD ME I CAN FORGET

19. ABOUT GETTING ANOTHER KNEE REPLACEMENT BECAUSE CDCR

20. IS NOT GOING TO PAY FOR IT, SO HE RECOMMENDED TO

21. REMOVE THE ANTIBIOTIC SPACER FROM MY LEFT LEG THEN

22. FUSE IT, OR A ABOVE THE KNEE AMPUTATION, THOSE WERE

23. MY TWO OPTIONS TO THINK ABOUT. ON MAR. 7, 2013 I HAD

24. FILED A CDCR 602 HEALTH CARE APPEAL LOG. # CMF-HC- 13037843

25. (SEE EXHIBIT-A) REGARDING THE MATTER. ON MAR. 25, 2013

26. I WAS THEN TAKEN BACK TO SAN JOAQUIN GENERAL

27. HOSPITAL TO SEE ORTHOPEDIC SURGEON DR. JOHN M. DOWBAK.

28. M.D. AGAIN, AT THAT TIME I REFUSED TO HAVE MY LEFT

5.

1. LEG FUSED OR A ABOVE THE KNEE AMPUTATION BECAUSE
2. MY PRIOR ORTHOPEDIC SURGEON DR. C. BENTLEY M.D. AT TRI-
3. CITY MEDICAL CENTER'S PLAN "BEFORE" I WAS TRANSFERRED, WAS
4. TO REMOVE THE ANTIBIOTIC SPACER. WHEN THE INFECTION IS
5. GONE, AND INSTALL ANOTHER HINGE KNEE REPLACEMENT DEVICE.
6. ON APR. 23, 2013 AT CMF MY PCP DR. N. AGUILERA M.D. HAD
7. RESPONDED TO MY CDCR 602 HEALTH CARE APPEAL AT THE FIRST
8. LEVEL LOG# CMF-HC-13037843 (EXHIBIT-A) THIS APPEAL WAS
9. PARTIALLY GRANTED YET, MY REQUEST TO HAVE ANOTHER
10. TOTAL KNEE REPLACEMENT DEVICE WAS "DENIED" BY A DOCTOR.
11. F. RADING M.D. CHIEF PHYSICIAN & SURGEON AT CMF. THEREFORE,
12. AT HER DIRECTION CAUSED THE DEPRIVATION OF MY RIGHT
13. TO ADEQUATE AND EFFECTIVE MEDICAL TREATMENT.
14. ON AUG. 19, 2013 AT CMF VIA-TELE MED I WAS REFERRED
15. BACK TO SEE MY PREVIOUS ORTHOPEDIC SURGEON DR. C. BENTLEY
16. M.D. AT TRI-CITY MEDICAL CENTER IN OCEANSIDE CA, AND
17. THEN, HE CHANGED HIS MIND ABOUT INSTALLING A FOURTH
18. TOTAL KNEE REPLACEMENT AND RECOMMENDED AN ABOVE
19. THE KNEE AMPUTATION WITH A GOOD PROSTISIS. HE ALSO
20. RECOMMENDED I SHOULD GET A THIRD OPINION FROM
21. ORTHOPEDIC SPECIALIST AT U.C. DAVIS MEDICAL CENTER
22. (SEE EXHIBIT-C). ON MAY 4, 2013 AT CMF I RESUBMITTED
23. MY CDCR 602 HEALTH CARE APPEAL LOG# CMF-HC-13037843
24. FOR A SECOND LEVEL REVIEW, STATING I FEEL IT WOULD BE
25. INHUMANLY AND BARBARIC IF CMF MEDICAL OFFICIALS FAIL TO
26. SALVAGE MY LEFT LEG BY NOT PROVIDING ME WITH ANOTHER
27. HINGED TOTAL KNEE REPLACEMENT DEVICE. THIS IS IN
28. FACT "SERIOUS MEDICAL NEED", AND A CONDITION THAT

1. SIGNIFICANTLY AFFECTS MY DAILY ACTIVITIES AND CAUSES
2. CHRONIC AND A SUBSTANTIAL AMOUNT OF PAIN BEING LEFT
3. "WITHOUT MEDICAL TREATMENT." ON MAY 28, 2013 I GOT
4. A SECOND LEVEL RESPONSE FOR MY CDCR 602 HEALTH CARE
5. APPEAL LOG # CMF-HC-13037843 FROM CMF MEDICAL OFFICIAL
6. JOHN DOE #1 WHO "PARTIALLY GRANTED" THE APPEAL STATING
7. I AM RECEIVING ADEQUATE MEDICAL TREATMENT AND MY
8. REQUEST TO HAVE A HINGED TOTAL KNEE REPLACEMENT
9. DEVICE INSTALLED HAS BEEN REFERRED TO THE INSTITUTIONAL
10. UTILIZATION MANAGEMENT (UM) COMMITTEE FOR FURTHER
11. REVIEW AND DETERMINATION. THESE ACTIONS WERE DIRECTED
12. BY CMF CHIEF EXECUTIVE OFFICER JACKIE CLARK.
13. ON JUNE 8, 2013 AT CMF I HAD RESUBMITTED MY CDCR
14. 602 HEALTH CARE APPEAL LOG # CMF-HC-13037843 FOR A
15. DIRECTORS LEVEL REVIEW IN ELK GROVE CA. SENSE CMF
16. MEDICAL OFFICIALS CONTINUED TO DISREGARD MY SERIOUS
17. MEDICAL NEEDS. THIS APPEAL IN QUESTION DID NOT GET
18. A THIRD LEVEL "DIRECTORS LEVEL" RESPONSE UNTIL A YEAR
19. LATER WHICH WAS WAY OVER DUE YET, THE HEALTH CARE
20. APPEAL WAS "DENIED" BY A JOHN DOE #2 DIRECTED FOR A
21. J. LEWIS, DEPUTY DIRECTOR POLICY AND RISK MANAGEMENT
22. SERVICES, CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES,
23. ON MAY 21, 2014. THEREFORE, THE ANTIBIOTIC SPACER IN MY
24. LEFT LEG WAS SUPPOSED TO BE THERE FOR 6 TO 8 WEEKS
25. ENDED UP BEING THERE FOR 21 MONTHS, I HAD NO
26. KNEE, NO MEDICAL TREATMENT BECAUSE MY MEDICAL
27. TREATMENT AT TRI-CITY MEDICAL CENTER HAD BEEN
28. INTENTIONALLY INTURRUPTED AND TERMINATED WHEN

7.

1. I WAS TRANSFERRED TO CMF ON FEB. 1, 2013 AND
2. CALIFORNIA MEDICAL FACILITY MEDICAL OFFICIALS
3. WOULD NOT REFER ME TO BE SEEN BY ORTHOPEDIC
4. SURGEONS AT U.C. DAVIS MEDICAL CENTER NOR U.C.
5. S.F. MEDICAL CENTER; THEREFORE, MY MEDICAL
6. TREATMENT WAS DELAYED FOR A SIGNIFICANT
7. AMOUNT OF TIME THAT WAS NOTHINGLESS THEN
8. CRUEL AND UNUSUAL PUNISHMENT. (SEE EXHIBIT-A)
9. ON MAY 8, 2014 CMF MEDICAL OFFICIALS HAD SENT
10. ME BACK TO SAN JOAQUIN GENERAL HOSPITAL IN
11. FRENCH CAMP CA. FOR AN ORTHOPEDIC CONSULTATION
12. WITH A "DR. NIKOLAJ WOLFSON M.D." WHO SAID THAT
13. AFTER REVIEWING MY MEDICAL RECORDS AND HISTORY
14. HE IS WILLING TO INSTALL ANOTHER HINGED KNEE
15. REPLACEMENT DEVICE IN MY LEFT LEG AS LONG AS
16. THE PREVIOUS INFECTION IS GONE. SO HE DONE A
17. ASPIRATION FROM THE LEFT KNEE AREA WHICH HAD
18. CAME BACK CLEAN WITH NO INFECTION. SO WE BOTH
19. CAME TO AN AGREEMENT TO INSTALL A "HINGED"
20. KNEE REPLACEMENT DEVICE IN MY LEFT LEG ONCE
21. THE FINANCIAL CLEARANCE WAS OBTAINED (SEE
22. EXHIBIT-B). ON JUNE 4, 2014 AT SAN JOAQUIN GEN-
23. ERAL HOSPITAL IN FRENCH CAMP CA. ORTHOPEDIC
24. SURGEON DR. N. WOLFSON M.D. HAD REMOVED THE
25. ANTIBIOTIC SPACER FROM MY LEFT LEG, THEN HE
26. INSTALLED A REVISION "DEPUY" TOTAL KNEE REPLACE-
27. MENT DEVICE IN MY LEFT LEG. AFTER SEVERAL
28. WEEKS WENT BY PARTICIPATING IN PHYSICAL

8,

1. THERAPY I NOTICED THAT MY KNEE REPLACEMENT
2. DEVICE HAS BECOME "LOOSE AND WOBBLY" CAUSING
3. CHRONIC PAIN IN THE LEFT LEG. THE DEVICE WOULD
4. JUST "BUCKLE" EVERY FEW STEPS I WOULD TAKE.
5. SO, MY PHYSICAL THERAPIST RECOMMENDED THAT I
6. CONTINUE TO UTILIZE THE WHEELCHAIR TO GET
7. AROUND. I THEN INFORMED CMF MEDICAL OFFICIALS
8. REGARDING THIS MATTER AND THE FACT THAT I COULD
9. NOT DO A FULL RANGE OF EXERCISES AND MY DAILY
10. ACTIVITIES BECAME VERY LIMITED. I HAD BEEN
11. UNDER THE IMPRESSION THAT ORTHOPEDIC SURGEON
12. DR. N. WOLFSON M.D. HAD INSTALLED A "HINGED" KNEE
13. REPLACEMENT DEVICE WHICH IS WHY ME AND MY
14. PHYSICAL THERAPIST COULD NOT UNDERSTAND "WHY"
15. THIS DEVICE IN MY LEG HAS BECOME SO "LOOSE".
16. CMF MEDICAL OFFICIALS COULD NOT ANSWER ANY
17. OF MY QUESTIONS SO I WAS SENT BACK TO
18. SAN JOAQUIN GENERAL HOSPITAL IN FRENCH CAMP
19. CA. TO SEE ORTHOPEDIC SURGEON DR. N. WOLFSON
20. M.D. ON "FOUR DIFFERENT OCCASSIONS" TO SEE
21. "WHY" THE KNEE REPLACEMENT DEVICE HE INSTALLED
22. IN MY LEFT LEG HAS BECOME UNSTABLE. I HAD
23. ENDED UP SEEING TWO DIFFERENT ORTHOPEDIC
25. SURGEONS OTHER THEN DR. N. WOLFSON ON "FOUR"
26. DIFFERENT OCCASSIONS. AFTER FOUR MONTHS
27. WENT BY I OBTAINED SOME OF MY MEDICAL
28. RECORDS AT CMF AND I CAME TO FIND OUT

1. THAT ORTHOPEDIC SURGEON DR. N. WOLFSON M.D.
2. DID NOT INSTALL A "HINGED" KNEE REPLACEMENT
3. DEVICE IN MY LEFT LEG AFTER ALL ON JUNE 4, 2014,
4. NOR DID HE EVER DISCUSS PUTTING IN ANY OTHER
5. TYPE OF DEVICE WITH ME, NOR DID CMF MEDICAL
6. OFFICIALS. CMF MEDICAL OFFICIALS, AND DR. WOLFSON
7. M.D. WERE WELL AWARE OF MY MEDICAL HISTORY
8. AND THE FACT THAT ALMOST "ALL" OF MY LIGAMENTS
9. IN MY LEFT KNEE AREA ARE GONE, WHICH IS WHY
10. WE CAME TO AN AGREEMENT AT MY "PRE-OP"
11. DOCTORS VISIT ON MAY 8, 2014 TO INSTALL A "HINGED"
12. KNEE REPLACEMENT DEVICE FOR STABILITY (SEE
13. EXHIBIT-B). "SOMEBODY" CHOSE NOT TO INSTALL A
14. "HINGED" KNEE REPLACEMENT DEVICE, IT WAS
15. EITHER THE CMF "INSTITUTIONAL UTILIZATION
16. MANAGEMENT COMMITTEE" THAT DID NOT
17. APPROVE THE "HINGED" KNEE REPLACEMENT DEVICE
18. DUE TO COST'S OR ORTHOPEDIC SURGEON DR. WOLFSON
19. M.D. CHOSE TO INSTALL "A MUCH CHEAPER DEVICE?
20. ON SEPT. 29, 2014 I FILED ANOTHER CDCR 602
21. HEALTH CARE APPEAL LOG# CMF-HC-14040116 IN
22. REGARDS TO THIS MATTER (SEE EXHIBIT-B) NOT
23. LONG AFTER I FILED THIS APPEAL, MY FAMILY
24. MEMBER SENT ME A COMPUTER PRINT-OUT FROM
25. THE INTERNET REGARDING "DEPUY" KNEE IMPLANT
26. FAILURES AND I THEN REALIZED I HAVE "ALL"
27. SYMPTOMS OF A "DEPUY" KNEE IMPLANT FAILURE
28. KNOWING ORTHOPEDIC DR. N. WOLFSON INSTALLED

1. A "DEPUY" P.F.C. SIGMA ROTATING PLATFORM DEVICE
2. IN MY LEFT LEG ON JUNE 4, 2014. THIS DEVICE HAS
3. A RECORD OF COMPLICATION SINCE 2004.
4. FINALLY, ON OCT. 20, 2014 I WAS TAKEN BACK
5. TO SAN JOAQUIN GENERAL HOSPITAL IN FRENCH CAMP
6. CA. AND I WAS SEEN BY ORTHOPEDIC SURGEON
7. DR. N. WOLFSON M.D. AND I GOT TO ASK HIM "WHY"
8. IS THIS KNEE REPLACEMENT DEVICE IN MY LEG SO
9. "LOOSE AND WOBBLY" IF IT'S A "HINGED" DEVICE?
10. DR. N. WOLFSON THEN INFORMED ME THAT HE
11. "DID NOT" INSTALL THE "HINGED" DEVICE AFTER ALL
12. BECAUSE THIS OTHER DEVICE HAS A GOOD TRACK
13. RECORD YET, AFTER LOOKING AT MY LEFT KNEE
14. HE VERIFIED THE DEVICE IS UNSTABLE SO HE
15. RECOMMENDED MORE PHYSICAL THERAPY AND TO
16. WEAR A "HINGE" KNEE BRACE FOR SUPPORT,
17. AND GET SOME SHOES WITH A 1/2 INCH LIFT,
18. TRY THAT FOR TEN TO TWELVE WEEKS TO SEE
19. IF THERES ANY IMPROVEMENTS. ON NOV. 6, 2014
20. I RECEIVED A RESPONSE FOR MY CDCR 602 HEALTH
21. CARE APPEAL LOG# CMF-HC-14040116 AT THE FIRST
22. LEVEL REGARDING MY UNSTABLE LEFT KNEE REPLACE-
23. MENT. THE APPEAL WAS "PARTILLY GRANTED"
24. BY CMF MEDICAL OFFICIALS DR. F. RADING M.D. AND
25. A DR. JOSEPH BICK M.D. FOR DR. MICHELE DITOMAS
26. M.D., M.S. CHIEF PHYSICIAN & SURGEON AT CALIFORNIA
27. MEDICAL FACILITY. WE WERE ALL WAITING TO SEE
28. IF THERE WAS GOING TO BE ANY IMPROVEMENTS

11.

1. AFTER FOLLOWING ORTHOPEDIC SURGEON DR. WOLFSON'S
2. RECOMMENDATIONS. I KNEW WHAT NEEDED TO BE
3. DONE WAS TO INSTALL A "HINGED" KNEE REPLACEMENT
4. DEVICE WHICH WAS GOING TO BE ANOTHER RISK OF
5. INFECTION OR ABOVE THE KNEE AMPUTATION "ESPECIALLY"
6. WIITH MY DIABETES. ON DEC. 29, 2014 I RECEIVED A
7. SECOND LEVEL RESPONSE FOR MY CDCR 602 HEALTH
8. CARE APPEAL LOG#CMF-HC-14040116 IT WAS PART—
9. IALLY GRANTED BY A CMF MEDICAL OFFICIAL JOHN DOE #3
10. AND JOHN DOE#4 FOR A JACKIE CLARK CHIEF EXECUTIVE
11. OFFICER AT CALIFORNIA MEDICAL FACILITY, INDICATING
12. THERE HAS BEEN NO IMPROVEMENTS WITH MY KNEE
13. REPLACEMENT DEVICE AND THAT I MAINTAIN MY
14. REQUEST TO HAVE MY KNEE REPLACEMENT DEVICE
15. REPAIRED OR REPLACED WITH "A HINGED DEVICE".
16. I WAS ALSO INFORMED THAT I HAVE AN APPO-
17. INTMENT TO SEE ORTHOPEDIC SURGEON DR. WOLFSON
18. AT SAN JOAQUIN GENERAL HOSPITAL ON JAN. 5, 2015
19. TO DETERMINE IF ANY IMPROVEMENTS HAVE BEEN
20. MADE WITH THE DEVICE. ON JAN. 5, 2015 I WAS
21. TAKEN BACK TO SAN JOAQUIN GENERAL HOSPITAL
22. TO BE SEEN BY ORTHOPEDIC DR. N. WOLFSON M.D.
23. ONCE AGAIN, AT THAT TIME HE RE-EXAMINED
24. ME AND SEEN NO IMPROVEMENTS, THE KNEE
25. DEVICE IS BASICALLY UNSTABLE SO HE SAID HE
26. WOULD "NOW RECOMMEND" TO INSTALL THE "HINGED"
27. KNEE REPLACEMENT DEVICE FOR STABILITY.
28. THIS PROCEDURE WAS APPROVED RIGHT AWAY

1. FINALLY BY, " THE CMF INSTITUTIONAL UTILI-
2. ZATION MANAGEMENT COMMITTEE" ON JAN. 21, 2015
3. HOWEVER, THAT SURGERY HAD TO BE DEFERRED
4. UNTIL I GOT BETTER CONTROL OF MY DIABETES
5. BECAUSE MY A1-C WAS A 9.6 AT THAT TIME
6. WHICH IS WAY TO HIGH TO HAVE A SURBERY.
7. I WAS TOTALLY DISSATISFIED WITH THE SEC-
8. OND LEVEL RESPONSE TO MY CDCR 602 HEALTH CARE
9. APPEAL LOG# CMF-HC-14040116 SO I RESUBMITTED
10. THAT APPEAL TO ELK GROVE FOR A THIRD LEVEL
11. DIRECTORS LEVEL REVIEW ON JAN. 21, 2015 BECAUSE
12. CMF MEDICAL OFFICIALS WANT TO CONTINUE TO
13. SEND ME BACK TO SAN JOAQUIN GENERAL HOSPITAL
14. FOR MORE TREATMENT WHICH IS A SUB-STANDARD
15. CARE FACILITY TO CUT CORNERS AND COST'S. U. C.
16. DAVIS OR U.C. S.F. MEDICAL CENTERS WOULD
17. HAVE PROVIDED MUCH BETTER MEDICAL TREAT-
18. MENT AND COST MORE MONEY. CMF MEDICAL
19. OFFICIALS DISPLAYED DELIBERATE INDIFFER-
20. ENCE TOWARDS MY COMPLEX MEDICAL ISSUES
21. WITH MY LEFT KNEE, DIABETES, CHANCE OF INFECTION
22. AND RISK'S OF ABOVE THE KNEE AMPUTATIONS, THEY
23. ARE MORE CONCERNED ABOUT TRYING TO SAVE MONEY
24. THEN PROVIDING "EFFECTIVE MEDICAL TREATMENT "
25. THE COURSE OF TREATMENT CMF MEDICAL
26. OFFICIALS AND ORTHOPEDIC DR. N. WOLFSON. M.D.
27. CHOSE WAS MEDICALLY UNACCEPTABLE UNDER
28. THE CIRCUMSTANCES THEY CHOSE THIS COURSE

13.

1. IN CONSCIOUS DISREGARD OF AN EXCESSIVE RISK
2. TO MY HEALTH, "NOW" CMF MEDICAL OFFICIALS
3. ARE READY TO PAY THOUSANDS OF DOLLARS MORE
4. TO REMOVE "THE DEFECTIVE" KNEE REPLACEMENT
5. OUT OF MY LEFT LEG AND INSTALL THE "HINGED"
6. DEVICE. THIS PROCEDURE WAS SUPPOSED TO HAVE
7. BEEN DONE THE FIRST TIME ON JUNE 4, 2014.
8.   I WAS INFORMED THAT ORTHOPEDIC SURGEON
9. DR. N. WOLFSON M.D. NO LONGER WORKS AT
10. SAN JOAQUIN GENERAL HOSPITAL IN FRENCH CAMP
11. CA. SINCE FEB. 2015 HE HAS TRANSFERRED
12. TO U.C. S.F. MEDICAL CENTER. NOW, CMF
13. MEDICAL OFFICIALS ARE TELLING ME THAT I
14. WOULD HAVE TO HAVE ANOTHER ORTHOPEDIC
15. SURGEON AT SAN JOAQUIN GENERAL HOSPITAL
16. INSTALL THE REQUIRED "HINGED" KNEE REPLACE-
17. MENT DEVICE ONCE I GET CONTROL OF MY DIA-
18. BETES AND BRING MY A1-C DOWN TO A 6.5 OR
19. 7.0. ON MAR. 16, 2015 I RECEIVED MY CDCR
20. 602 HEALTH CARE APPEAL LOG# CMF-HC-14040110
21. WITH A THIRD LEVEL, DIRECTORS LEVEL RESPONSE
22. WHICH STATES THE APPEAL IS "DENIED". YET,
23. I CONTINUE TO EXPERIENCE CHRONIC PAIN
24. IN MY LEFT LEG AS WELL AS BEING STRESSED
25. OUT KNOWING I'VE GOT TO GO THROUGH MORE
26. PAIN AND SUFFERING WITH AN UPCOMING
27. KNEE REPLACEMENT SURGERY, AND I GOT
28. TO FACE A SIGNIFICANT RISK OF INFECTIONS

14.

1. MY PRIOR CDCR HEALTH CARE APPEAL LOG#CMF-HC-
2. 14040116 WAS COMPLETED ON MAR.16, 2015 BY A
3. JOHN DOE#5 AT THE DIRECTORS LEVEL FOR J. LEWIS,
4. DEPUTY DIRECTOR, POLICY AND RISK MANAGE-
5. MENT SERVICES CALIFORNIA CORRECTIONAL
6. HEALTH CARE SERVICES. MY REQUEST TO BE
7. TREATED BY APPROPRIATELY QUALIFIED ORTHO-
8. PEDIC HEALTH CARE PERSONNEL AT THE U.C.-
9. DAVIS MEDICAL CENTER IS NOT POSSIBLE. (SEE
10. EXHIBIT-B) INMATES A BARRED BY STATE LAW
11. FROM EMPLOYING OR ELECTING TO SEE DIFFERENT
12. PHYSICIANS OF HIS OWN CHOOSING.
13.
14.
15.
16.
17.
18.
19.
20.
21.
22.
23.
24.
25.
26.
27.
28.

15.

1.
2.
— PRAYER FOR RELIEF —

3. WHEREFORE, PLAINTIFF RESPECTFULLY PRAYS THAT
4. THIS COURT ENTER A JUDGEMENT GRANTING PLAINTIFF:
5.
6.    A DECLARATION THAT THE ACTS AND OMISSIONS
7. DESCRIBED HEREIN VIOLATED PLAINTIFF'S RIGHTS
8. UNDER THE CONSTITUTION AND LAWS OF THE
9. UNITED STATES.
10.
11.    COMPENSATORY DAMAGES IN THE AMOUNT
12. OF $1,000,000$^{00}$ (ONE MILLION DOLLARS) AGAINST
13. EACH DEFENDANT MENTIONED IN THIS COMPLAINT.
14.
15.    PUNITIVE DAMAGES IN THE AMOUNT OF
16. $1,000,000$^{00}$ (ONE MILLION DOLLARS) AGAINST
17. ORTHOPEDIC SURGEON DR. NIKOLAJ WOLFSON M.D.
18. AND THE CMF INSTITUTIONAL UTILIZATION
19. MANAGEMENT COMMITTEE JOHN DOES 1-10
20.
21.    A JURY TRIAL ON ALL ISSUES TRIABLE BY JURY
22.
23.    PLAINTIFF'S COST'S IN THIS SUIT
24.
25.    ANY ADDITIONAL RELIEF THE COURT DEEMS JUST,
26. PROPER, EQUITABLE.
27.
28.    DATED: DEC. 5, 2015

                    RESPECTFULLY SUBMITTED,
                    16.

1. RONNIE R. GOVEA #V-21557
2. CALIFORNIA MEDICAL FACILITY
3. P.O. BOX 2500 I.1 #125
4. VACAVILLE, CA. 95696
5. (IN PRO-PER)
6.
7.                     — VERIFICATION —
8.      I HAVE READ THE FOREGOING COMPLAINT
9. AND HEREBY VERIFY THAT THE MATTERS ALLEGED
10. THEREIN ARE TRUE, EXCEPT AS TO MATTERS
11. ALLEGED ON INFORMATION AND BELIEF, AND AS
12. TO THOSE, I BELIEVE THEM TO BE TRUE. I
13. CERTIFY UNDER PENALTY OF PURJURY THAT
14. THE FOREGOING IS TRUE AND CORRECT.
15.
16.      EXECUTED AT CALIFORNIA MEDICAL
17.      FACILITY IN VACAVILLE, CALIFORNIA
18.      ON DECEMBER 5, 2015.
19.
20.
21.
22.
23.
24.                                        Ronnie Govea
25.                                        RONNIE GOVEA
26.
27.
28.

17.

**Case Name:** RONNIE R. GOVEA Vs. CMF MEDICAL OFFICIALS et, a

**Case Number:** _____

**Court:** U.S. DISTRICT COURT FOR THE EASTERN DISTRICT

## PROOF OF SERVICE BY MAIL

I, RONNIE R. GOVEA declare:

That I am over the age of eighteen years of age and am not a party to the above entitled cause of action. That I reside in Solano County, California at the California Medical Facility, at 1600 California Drive, P.O. Box 2500, Vacaville, California, 95696-2500.

That on DECEMBER 5, 2015 I served the attached: a true copy of the attached:

CIVIL COMPLAINT UNDER
42 U.S.C. 1983 ACTION

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal legal mail collection system at the California Medical Facility, Vacaville, California, addressed as follows:

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT
SACRAMENTO DIVISION
501 "I" STREET, SUITE 4-200
SACRAMENTO, CA. 95814

I declare under penalty of perjury and under the laws of the State of California that the foregoing is true and correct. That this proof of service was executed on DECEMBER 5, 2015 at the California Medical Facility, Vacaville, California.

RONNIE R. GOVEA

**Declarant**

Ronnie R. Govea

**Declarant's Signature**

18.

EXHIBIT-A

CDCR 602 HEALTH CARE
APPEAL LOG# CMF-HC-13037843



# CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES

**Date:**  JAN 2 2 2014

**To:**  Govea, Ronnie (V21557)
California Medical Facility
P.O. Box 2000
Vacaville, CA 95696

**From:**  California Prison Health Care Services
Office of Third Level Appeals - Health Care
P.O. Box 588500
Elk Grove, CA 95758

**Tracking/Log #:**  CMF HC 13037843

A review of the Office of Third Level Appeals-Health Care (OTLA-HC) tracking system reveals you submitted an appeal, Tracking/Log # CMF HC 13037843, for processing at the Director's Level.  OTLA-HC has no documentation or indication you have received a response to this appeal.

If you feel your appeal issues have not been resolved, complete the attached "Treat as Original" CDCR 602-HC appeal Section F stating the reason you are dissatisfied with the Second Level Response, sign and date the appeal form, and resubmit your appeal along with this letter to the OTLA-HC.  If you should need additional space, please use the CDCR-602A form (08/09) Section F.  Be advised you have 30 calendar days to resubmit the appeal package, all the attachments, including this letter, to the OTLA-HC for continued processing.


*c nfor*

L.D. Zamora, Chief
Office of Third Level Appeals-Health Care
California Correctional Health Care Services



*Please take notice, this "Treat As Original" copy is in fact incomplete. Resubmitted on 2/13/4 R.⨯*

CALIFORNIA CORRECTIONAL
**HEALTH CARE SERVICES**

P.O. Box 588500
Elk Grove, CA 95758

*SEE "Copy OF ORIGINAL" HC-602 log# CMF-HC-13037843*

# CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES

**Date:** March 11, 2013

**To:** GOVEA, RONNIE (V21557)
A 1 1125001LP
California Medical Facility
P.O. Box 2000
Vacaville, CA 95696-2000

**Tracking/Log #:** CMF HC 13037843 **REJECTED**

Your appeal is being rejected and returned to you for the following reason(s):

**Excessive Verbiage or Documentation:** CCR, Title 15, Section 3084.6(b)(9) states, "The appeal issue is obscured by pointless verbiage or voluminous unrelated documentation such that the reviewer cannot be reasonably expected to identify the issue under appeal. In such case, the appeal shall be rejected unless the appellant is identified as requiring assistance in filing the appeal as described in subsection 3084.1(c);" Section 3084.2(b)(1) states, "Only supporting documents, as defined in subsection 3084(h), necessary to clarify the appeal shall be attached to the appeal;" and Section 3084.2(a)(2) states, "The inmate or parolee is limited to the space provided on the Inmate/Parolee Appeal form and one Inmate/Parolee Appeal Form Attachment to describe the specific issue and action requested."

Please remove all the documents marked with an "X". This information is unnecessary to the appeal process. Once said documents are removed please resubmit your appeal to the Health Care Appeals Office for further review and assignment.

This screening action may not be appealed unless you allege that the above reason(s) is inaccurate. In such case, return this form and your appeal to the Health Care Appeals Office with the necessary information.

Loney, A.
HealthCare Appeals Coordinator
Health Care Appeals Office
California Medical Facility





Note:

Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes, 30 calendar days as specified in CCR 3084.6(a) and CCR 3084.8(b). Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation is granted.

***PERMANENT APPEAL ATTACHMENT-DO NOT REMOVE***

STATE OF CALIFORNIA                                           DEPARTMENT OF CORRECTIONS AND REHABILITATION

**PATIENT/INMATE HEALTH CARE APPEAL**

CDCR 602 HC (REV. 04/11)                                                                          Side 1

| STAFF USE ONLY | | | Institution: | Log #: | Category: |
|---|---|---|---|---|---|
| Emergency Appeal | ☐ Yes | ☐ No | CMFHC | 13037843 | medical |
| Signature: | | Date: | | FOR STAFF USE ONLY | |

You may appeal any California Prison Health Care Services (CPHCS) decision, action, condition, omission, policy or regulation that has a material adverse effect upon your welfare. See California Code of Regulations, Title 15, Section (CCR) 3084.1. You must send this appeal and any supporting documents to the Health Care Appeals Coordinator (HCAC) within 30 calendar days of the event that lead to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process. No reprisals will be taken for using the appeal process.

Appeal is subject to rejection if one row of text per line is exceeded.        **WRITE, PRINT, or TYPE CLEARLY.**

| Name (Last, First): GOVEA | CDC Number: V-21557 | Unit/Cell Number: I-1 #125 | Assignment: U/A |
|---|---|---|---|

State briefly the subject/purpose of your appeal (Example: Medication, To See Specialist, etc.):
MEDICAL TREATMENT AT CALIFORNIA MEDICAL FACILITY —

A. Explain your issue (If you need more space, use Section A of the CDCR 602-A): IN 2012 WHILE
HOUSED AT P.V.S.P. I WAS RECEIVING MEDICAL TREATMENT
AT TRI-CITY MEDICAL CENTER IN OCEANSIDE IN SAN DIEGO
COUNTY. ON FEB. 1, 2013 I WAS TRANSFERRED TO  →

B. Action requested (If you need more space, use Section B of the CDCR 602-A): I RESPECTFULLY
REQUEST THAT (CMF) CALIFORNIA MEDICAL FACILITY, MEDICAL
OFFICIALS PROVIDE ME WITH ADEQUATE AND EFFECTIVE
MEDICAL TREATMENT SUCH AS PROVIDING ME WITH  →

☒ Supporting Documents: Refer to CCR 3084.3.

List supporting documents attached (e.g. Trust Account Statement; CDCR 7410, Comprehensive Accommodation Chrono; CDCR 7362, Request for Health Care Services; etc.):

TRI-CITY MEDICAL RECORDS      SAN JOAQUIN HOSPITAL RECORDS
WORKERS COMP. CLAIM FORMS     ATTORNEY LETTERS

☐ No, I have not attached any supporting documents. Reason :_____

Patient/Inmate Signature: _Ronnie Govea_      Date Submitted: 3-7-13

☐ By placing my initials in this box, I waive my right to receive an interview.

| C. First Level - Staff Use Only | Staff – Check One: Is CDCR 602-A Attached? ☒ Yes ☐ No |
|---|---|

This appeal has been:

☐ Bypassed at the First Level of Review. Go to Section E.

☒ Rejected (See attached letter for instruction) :   Date: 3/8/11   Date: _____   Date: _____   Date: _____

☐ Cancelled (See attached letter):   Date: _____

☒ Accepted at the First Level of Review
Assigned to: Aguilera. N      Title: MD      Date Assigned 3/20/13   Date Due: 4/30/13

First Level Responder: Complete a First Level response, Include Interviewer's name, title, interview date, location, and complete the section below.
Date of Interview: 4/12/2013      Interview Location: ACC

Your appeal issue is:   ☐ Granted   ☒ Granted in part   ☐ Denied   ☐ Other:_____

See attached letter. If dissatisfied with First Level response, complete Section D.

Interviewer: N. Aguilera      Title: PTS      Signature: _____   Date completed 4/23/2013
(Print Name)

Reviewer: F. Radney      Title: P&S      Signature: _____
(Print Name)

| Date received by HCAC:_____ | HCAC Use Only |
| | Date mailed/delivered to appellant: 4/30/13 |

— ORIGINAL COPY —

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**PATIENT/INMATE APPEAL**

*CMF HC 1303 7843*

Side 2

CDCR 602 HC (REV. 04/11)

**D. If you are dissatisfied** with the First Level response, explain the reason below, attach supporting documents and submit to the Health Care Appeals Coordinator for processing within 30 calendar days of receipt of response. If you need more space, use Section D of the CDCR 602-A.

*I AM TOTALLY DISSATISFIED WITH THE FIRST LEVEL RESPONSE. CMF MEDICAL OFFICIALS HAVE FAILED TO REALIZE WHILE I HAD COMPLICATIONS WITH MULTIPLE LEFT KNEE ARTHROPLASTY'S WHILE HOUSED AT P.V.S.P. IN 2012 IS BECAUSE I RECEIVED "POOR AFTER CARE AND POOR TREATMENT FOR MY DIABETES" AT THAT PRISON. CURRENTLY SENSE I'VE BEEN TRANSFERRED HERE TO "CMF" ON 2-1-13 I FEEL MY HEALTH HAS IN FACT IMPROVED, AND THE INFECTION →*

Patient/Inmate Signature: *Ronnie Joula*                Date Submitted: *5-4-13*

**E. Second Level - Staff Use Only**          Staff – Check One: Is CDCR 602-A Attached?        ☒Yes  ☐No

This appeal has been:

☐ By-passed at Second Level of Review. Go to Section G.

☐ Rejected (See attached letter for instruction):   Date: _____ Date: _____ Date: _____ Date: _____

☐ Cancelled (See attached letter):      Date: _____

☒ Accepted at the Second Level of Review

Assigned to: *McClaud Shaun* Title: *SCC* Date Assigned: *5/13/13* Date Due: *6/24/13*

Second Level Responder: Complete a Second Level response. Include Interviewer's name, title, interview date, location, and complete the section below.

Date of Interview: _____   Interview Location: _____

Your appeal issue is:      ☐ Granted     ☒Granted in part   ☐Denied        ☐Other: _____

See attached letter. If dissatisfied with Second Level response, complete Section D.

Interviewer: _____ Title: _____ Signature: _____     Date completed: _____
(Print Name)

Reviewer: _____ Title: *CCII* Signature: _____
(Print Name)

Date received by HCAC: _____

| | HCAC Use Only |
| | Date mailed/delivered to appellant: *6/3/13* |

**F. If you are dissatisfied** with the Second Level response, explain reason below; attach supporting documents and submit by mail for Third Level Review. It must be received within 30 calendar days of receipt of prior response.  Mail to: Chief, Office of Third Level Appeals – Health Care, California Prison Health Care Services, P  Office of Third Level Appeals, Building C                    need more space, use Section F of the CDCR 602-A.            P.O. Box 588500 Elk Grove CA, 95758

*I AM TOTALLY DISSATISFIED WITH THE SECOND LEVEL RESPONSE TO THIS APPEAL I WAS INTERVIEWED BY MY PCP N. AGUILERA BACK ON APRIL 12, 2013 HE INFORMED ME, IT WAS DETERMINED THAT MY REQUEST TO HAVE A HINGED TOTAL KNEE REPLACEMENT DEVICE HAS BEEN REFERRED →*

Patient/Inmate Signature: *Ronnie Joulea*          Date Submitted: *6-8-13*

**G. Third Level - Staff Use Only**

☐ Rejected (See attached letter for instruction):   Date: _____ Date: _____   Date: _____ Date: _____

☐ Cancelled (See attached letter):      Date: _____

☒ Accepted at the Third Level of Review

Your appeal is      ☐ Granted      ☐ Granted in part  ☒Denied        ☐Other: _____

See attached Third Level response.

| Third Level Use Only     **MAY 2 1 2014** |
| Date mailed/delivered to appellant: ___/___/___ |

**Request to Withdraw Appeal:** I request that this appeal be withdrawn from further review because; State reason. (If withdrawal is conditional, list conditions.)

_____

_____

_____

Patient/Inmate Signature: _____          **Date Submitted:** _____

Print Staff Name: _____ Title: _____ Signature: _____          Date: _____

DEPARTMENT OF CORRECTIONS AND REHABILITATION

STATE OF CALIFORNIA
INMATE/PAROLEE APPEAL FORM ATTACHMENT

CDCR 602-A (08/09)

Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | CMF HC | 1 30 37 843 | Med |

**FOR STAFF USE ONLY**

Attach this form to the CDCR 602, only if more space is needed. Only one CDCR 602-A may be used.

Appeal is subject to rejection if one row of text per line is exceeded.

WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): GOVEA | CDC Number: V-21557 | Unit/Cell Number: I-1 # 125 | Assignment: |
|---|---|---|---|

**A. Continuation of CDCR 602, Section A only** (Explain your issue): (CMF) CALIFORNIA MEDICAL FACILITY. THEREFORE, MY "ON-GOING" MEDICAL TREATMENT AT TRI-CITY MEDICAL CENTER WAS DELAYED AND TERMINATED. ON 2-25-13 I WAS TAKEN OUT TO SAN JOAQUIN GENERAL HOSPITAL FOR A CONSULTATION WITH ORTHO SURGEON JOHN M. DOWBAK M.D. AT THAT TIME HE INFORMED ME THAT "EVEN THOUGH YOUR LEG IS NO LONGER INFECTED" CDC IS NOT GOING TO PAY FOR "ANOTHER" KNEE REPLACEMENT AND YOUR TWO OPTIONS ARE TO HAVE YOUR LEG "FUSED" TOGETHER OR AMPUTATED. I HAD INFORMED DR. DOWBAK THAT THE OTHER ORTHO SURGEON AT TRI-CITY MEDICAL CENTERS PLAN WAS TO REMOVE THE ANTIBIOTIC SPACER ONCE THE INFECTION IS GONE AND "INSTALL ANOTHER TOTAL KNEE REPLACEMENT DEVICE. ON 2-7-13 MY KNEE AREA WAS TESTED FOR INFECTION AND HAS "NO GROWTH" NOW! YET, CMF MEDICAL OFFICIALS RATHER SAVE MONEY BY HAVING MY LEG "FUSED" TOGETHER INSTEAD OF SALVAGING MY LEG BY INSTALLING ANOTHER KNEE REPLACEMENT DEVICE. PLEASE TAKE NOTICE, THIS INJURY OCCURED BY WORKING FOR CDC IN 2004, ALSO MY COMPLICATIONS WITH MY SURGERIES HAVE TO DO WITH DOCTORS INSTALLING DEFECTIVE "ZIMMER" KNEE REPLACEMENTS IN MY LEG. SEE ATTACHED DOCUMENTATION.

Inmate/Parolee Signature: Ronnie Govea    Date Submitted: 3-7-13

**B. Continuation of CDCR 602, Section B only** (Action requested): ANOTHER KNEE REPLACEMENT DEVICE AS "FIRST PLANNED" BY A CERTIFIED SPECIALIST. THE UNITED STATES CONSTITUTIONS EIGHTH AMENDMENT PROVIDES: PRISON OFFICIALS ARE OBLIGATED UNDER THE 8TH AMENDMENT TO PROVIDE PRISONERS WITH ADEQUATE MEDICAL CARE, THIS PRINCIPAL APPLIES REGARDLESS OF WHETHER THE MEDICAL CARE IS PROVIDED BY GOVERNMENT EMPLOYEES OR BY PRIVATE MEDICAL STAFF UNDER CONTRACT WITH THE GOVERNMENT. A PRISON OFFICIAL DEMONSTRATES "DELIBERATE INDIFFERENCE" IF HE OR SHE RECKLESSLY DISREGARDS A SUBSTANTIAL RISK OF HARM TO THE PRISONER. THE 8TH AMENDMENT PROHIBITS THE "UNNECESSARY AND WANTON INFLICTION OF PAIN", A "SERIOUS MEDICAL NEED" IS AT ISSUE ARE 1) WHETHER THE MEDICAL NEED IN QUESTION AS IMPORTANT AND WORTHY OF COMMENT OR TREATMENT 2) WHEN MEDICAL CONDITION SIGNIFICANTLY AFFECTS DAILY ACTIVITIES.

Inmate/Parolee Signature: Ronnie Govea    Date Submitted: 3-7-13

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE/PAROLEE APPEAL FORM ATTACHMENT
CDCR 602-A (08/09)

Case 3:15-cv-05578-EDB Document 1 Filed 12/09/15 Page 25 of 87

Side 2

CMF HC 130378 Y3

**D. Continuation of CDCR 602, Section D only (Dissatisfied with First Level response):** IN MY LEFT LEG IS GONE NOW SENSE THE ANTIBIOTIC SPACER HAS BEEN INTACT FOR 6 MONTHS AND MY "PCP" HERE N. AGUILERA HAS PRESCRIBED ADDITIONAL DIABETIC MEDICATION TO CONTROL MY DIABETES. I FEEL IT WOULD BE INHUMANLY AND BARBARIC IF "CMF" MEDICAL OFFICIALS FAIL TO SALVAGE MY LEFT LEG BY NOT PROVIDING ME ANOTHER HINGED TOTAL KNEE REPLACE-MENT DEVICE AS PRESCRIBED BY MY TREATING ORTHO SURGEON IN OCEANSIDE. THIS IS A "SERIOUS MEDICAL NEED" AND A CONDITION THAT SIGNIFICANTLY AFFECTS MY DAILY ACTIVITIES AND CAUSES CHRONIC AND SUBSTANTIAL PAIN BEING LEFT UNTREATED AS DEFINED IN THE U.S. CONSTITUTIONS 8TH AMENDMENT VIOLATION. "DELIBERATE INDIFFERENCE" MAY BE SHOWN WHEN PRISON DOCTORS IGNOR A PRISONER'S KNOWN MEDICAL NEEDS OR WHEN PRISON OFFICIALS INTENTIONALLY DENY OR DELAY ACCESS TO MEDICAL CARE OR INTENTIONALLY INTERFERE WITH TREATMENT THAT HAS BEEN PRESCRIBED BY MEDICAL STAFF. DELAYS IN PROVIDING CARE FOR EMER-GENCY NEEDS OR LONG DELAYS IN THE FACE OF RECOGNIZED NEED FOR TREAT-MENT CAN AMOUNT TO "DELIBERATE INDIFFERENCE" ESPECIALLY WHERE THERE IS A RECORD OF MULTIPLE INCIDENTS OF IMPROPER OR DELAYED MEDICAL CARE, CAN ALSO AMOUNT TO CRUEL AND UNUSUAL PUNISHMENT. ALSO IT IS A KNOWN FACT A PERSON CAN HAVE MULTIPLE TOTAL KNEE REPLACEMENTS "BEFORE" ONE BECOMES SUCCESSFUL, I KNOW AN INMATE WHO HAD "FIVE" KNEE REPLACEMENTS DUE TO COMPLICATIONS WITH INFECTIONS AND DEFECTIVE "ZIMMER" KNEE REPLACEMENT DEVICES THAT WERE RE-CALLED.

**Inmate/Parolee Signature:** Ronnie Youea **Date Submitted:** 5-4-13

**F. Continuation of CDCR 602, Section F only (Dissatisfied with Second Level response):** TO THE INSTITUTIONAL UTILIZATION MANAGEMENT (UM) COMMITTEE FOR FURTHER REVIEW AND DETERMINATION WHETHER A HINGED TOTAL KNEE REPLACEMENT DEVICE WILL BE INSTALLED AS PLANNED "BEFORE" MY MEDICAL TREAT-MENT WAS INTENTIONALLY INTURRUPTED. CMF MEDICAL OFFICIALS CONTINUE TO DELAY AND FAIL TO PROVIDE "EFFECTIVE" MEDICAL TREATMENT. THE ANTIBIOTIC SPACER IN MY LEFT LEG WAS ONLY "SUPPOSED" TO BE INTACT FOR 8 TO 10 WEEKS AND IT'S BEEN THERE FOR APPOXIMATELY 8-MONTHS NOW WHICH IS SIMPLY "OUTRAGEOUS". THIS IS A DIRECT VIOLATION OF CCR, TITLE 15, SECTION 3350(b)(5) PROVISION OF MEDICAL CARE AND DEFINITIONS WHICH STATES IN PART "SIGNIFICANT ILLNESS AND DISABILITY MEANS "ANY" MEDICAL CONDITION THAT CAUSES OR MAY CAUSE IF LEFT "UNTREATED" A SEVERE LIMITATION OF FUNCTION OR ABILITY TO PERFORM THE DAILY ACTIVITIES OF LIFE. PRISON OFFICIALS ARE "DELIBERATELY INDIFFERENT" TO A PRISONER'S SERIOUS MEDICAL NEEDS WHEN THEY DENY, DELAY OR INTENTIONALLY INTERFERE WITH MEDICAL TREATMENT. A DIRECT VIOLATION OF THE U.S. CONSTITUTIONS 8TH AMENDMENT. THIS IS A CLEAR CASE OF "CRVEL AND UNUSUAL PUNISHMENT" BY CDCR MEDICAL OFFICIALS.

**Inmate/Parolee Signature:** Ronnie Youea **Date Submitted:** 6-8-13

**ADMITTED:** 10/29/2012

**TRANSFERRED:**

DOB: 04/18/1968
PRIMARY CARE PHYSICIAN: PLEASANT VALLEY SP CDCR, PVSP

**ADMITTING DIAGNOSIS(ES):**
   1. Left knee septic arthritis. status post total knee arthroplasty.

PRINCIPAL PROCEDURE(S): Left knee open removal of total knee hardware and irrigation and debridement with placement of Prostalac cement spacer.

HOSPITAL COURSE: This is a 44-year-old male with a longstanding history of left knee problems. The patient has undergone three revision surgeries and has had a previous infection to the knee that was treated in a similar fashion as to this admission. The patient has a history of uncontrolled diabetes as well. The patient was doing reasonably well at his last telemedicine visit approximate 5-6 weeks ago, when approximately 1-2 weeks after that began having drainage from the knee. The patient was evaluated at a local hospital and underwe... surgical irrigation and debridement. Cultures were taken and the patient was to be treated with IV antibiotics.

Subsequently, the patient refused his IV and PICC line treatment twice prior to me being informed that he was having a problem. The patient was seen for a live forensic medicine visit and immediately admitted to the hospital. The patient had been on oral antibiotics over the interval. The patient was scheduled for the surgery as stated above.

This procedure was performed on October 31, 2012, after the patient had medical clearance and a PICC line was placed. This procedure went well and was without complication.

The patient had a protracted length of admission principally due to pain control but also the necessity of ensuring that the patient had an appropriate rehabilitation environment to return to, which would allow him to get another six weeks of IV antibiotics.

Culture results were obtained from San Joaquin Valley Hospital, which demonstrated a methicillin-sensitive Staphylococcus aureus (MSSA). This is a different organism than had previously been present.

These records have been difficult to obtain as we had to go through the prison, and in the interval the patient was treated with IV vancomycin. The patient's pain was controlled with IV Dilaudid through the patient controlled analgesia. The patient was weaned off of this and put on oral morphine in the last couple of days of his admission.

The patient also had an ultrasound to rule out a deep venous thrombosis due to increasing calf pain and swelling on postoperative day number five. This was negative.

TRANSFER SUMMARY

Page 1 of 2

TRI-CITY MEDICAL CENTER                    GOVEA, RONNIE   **V·21557**
4002 Vista Way                             01258830
Oceanside, CA  92056                       3S 322 01
                                           04/18/1968  44
                                           CC TO:  PLEASANT VALLEY SP CDCR, PVSP

RECEIVED
MAY 1 3 2013
HC APPEAL

MAR 20 2013

The patient was allowed to be weightbearing as tolerated in a knee immobilizer. The patient had his drain removed on postoperative day number three, and his Foley catheter removed on postoperative day number t···· A CPM device was not used for the patient as it was clear that his knee would be grossly unstable.

At the time of his discharge, the patient's blood sugars were reasonably controlled, and his hemoglobin was noted to be approximately 9.6 after requiring transfusion of two units of blood earlier in the week.

DISCHARGE PLAN: The plan for discharge is to return back to his facility and receive IV antibiotics for the next five weeks. The patient should be on Ancef 1 g IV q.8h. for that interval.

The patient may be acceptable for return to surgery after that point. Ideally, we would wait approximately 4-6 weeks after cessation of the IV antibiotics and possibly aspirate the joint, send cultures, and determine that there is definitely no residual infection before proceeding with another complex knee revision reconstruction.

The patient has been informed that there is the possibility that he will eventually require an above-knee amputation as a definitive treatment for his repeat infection in the face of his diabetes.

The patient will be allowed to ambulate, toe-touch weightbearing, in a knee immobilizer.

The patient's staples should be able to be removed in about ten more days.

The patient will require extended release morphine 10-20 mg p.o. t.i.d.

If you have any questions or concerns, please call my office at 760-295-2995.


DICTATED: CHRISTIAN BENTLEY, M.D.

CB/ID3355/aml
D: 11/08/201212:28 P
T: 11/08/2012 1:07 P
#010496657
cc:    CHRISTIAN BENTLEY, M.D.
       PLEASANT VALLEY SP CDCR, PVSP

       Transfer with patient


**TRANSFER SUMMARY**

**TRI-CITY MEDICAL CENTER**

Page 2 of 2

GOVEA, RONNIE
01258830
3S 322 01
04/18/1968  44
CC TO: PLEASANT VALLEY SP CDCR

Printed 2012.11.29 12:49:47 -08'00'

John M. Dowbak, MD

**SAN JOAQUIN GENERAL HOSPITAL**

**CONSULTATION**

V2155?

PATIENT: GROVEA, RONNIE
MR#: 1104207
ADMIT DATE: 02/25/2013
LOCATION: SPEC CR CL
DOB: 04/18/1968

DATE OF CONSULTATION: 02/25/2013

CONSULTING PHYSICIAN: John M Dowbak, MD

REFERRING PHYSICIAN:

HISTORY: Please be advised I had the pleasure of seeing the above patient
today who is serving a life sentence and has already completed 7 years of
a life sentence, who apparently had left knee problems in the past. He
had meniscectomies in the past and this culminated in 2009 at Bakersfield
with a left total knee arthroplasty. Apparently he had instability of his
left knee, and he lived with instability of his left knee for
approximately 2-1/2 years. The patient was seen by Dr. Gaal at San
Joaquin and apparently he had surgery by Dr. Bentley in San Diego in
early 2012. In early 2012 he had a revision left total knee arthroplasty
and unfortunately this became infected. He had the metal removed and a
spacer applied for 2 months and had a third surgery with a total knee
replacement. Unfortunately this culminated in a new infection which and
on 10/29/2012 he had his third total knee removed and a spacer applied.
It came back methicillin-sensitive Staph aureus and culture results were
obtained from San Joaquin Valley Hospital. The patient also has had
compliance issues with a PICC line placement and IV antibiotics. He also
has been a diabetic since 2004. The patient comes in today with a knee
immobilizer in place and would like to have his knee replaced. The
patient has a history of uncontrolled diabetes mellitus as well. The
patient has been ambulating with toe touch weightbearing with a knee
immobilizer. He takes morphine 10-20 mg three times a day for his pain.
The patient has been treated with IV vancomycin in the past and his pain
was controlled with IV Dilaudid. He has had a deep venous thrombosis
workup in the past which was negative. A culture report on 02/07/2013
showed no growth with 2800 nucleated cells, 85% neutrophils, 4%
lymphocytes with the appearance clear hazy. His sedimentation rate on
10/23/2012 was 62 with a white count of 8400. He is now here for
consultation purposes.

On examination today, the patient has approximately a 3/4 inch leg length
discrepancy on the left side compared to the right.  Range of motion with
crepitation is 0-85 degrees with instability.  There is global swelling
of the left knee but capillary refill is less than 2 seconds.  There is
no neurological deficits.  Capillary refill is less 2 seconds.  The
patient has a warm extremity with slightly decreased proprioception of
left leg.

X-rays of the left knee were done along with the left femur and left
tibia which shows an antibiotic spacer in place.  The patient has cement
up his left femur in the intramedullary aspect and has a fair amount of
cement at the articulation site of his patella, femur and tibia, as
expected for antibiotic spacer.

**CONSULTATION**

Page 1 of 2

Electronically signed by DOWBAK, JOHN M on 2013-02-25 12:57:40

John M. Dowbak, MD

**SAN JOAQUIN GENERAL HOSPITAL**

**CONSULTATION**

V2155フ

PATIENT: GROVEA, RONNIE
MR#: 1104207
ADMIT DATE: 02/25/2013
LOCATION: SPEC CR CL
DOB: 04/18/1968

RECOMMENDATION: The best course of action at the present time is to repeat the sedimentation rate, CBC, a hemoglobin A1c, and a C-reactive protein. The patient was told that it is completely unrealistic to expect a new total knee arthroplasty, not with 3 knee surgeries that have gone awry secondary to infection and loosening. The patient was told that he has immunocompromised secondary to his diabetes and to his multiple infections and the only recourse for him which I think is reasonable would be to fuse his left knee and to take out the spacer. This may allow him to walk but with a 1.5 inch leg length discrepancy which can be corrected with an elevated shoe lift. We will see the patient back in 4 weeks time to determine what course of action he would like to have done. We will assess his hemoglobin A1c, his lab values to see if there is any residual infection.

Thank you for allowing us to see the above patient.

Voice #552512402/Job #168978
D: 02/25/2013 09:36:00                    John M. Dowbak, MD
T: 02/25/2013 10:43:00
JMD:jbl

cc: Joseph Bick, MD





**CONSULTATION**

Page 2 of 2

Electronically signed by DOWBAK, JOHN M on 2013-02-25 12:57:40



FEB 2 6 2013

John M. Dowbak, MD

**SAN JOAQUIN GENERAL HOSPITAL**

**CONSULTATION**

V21557

PATIENT: GOVEA, RONNIE
            MR#: 1104207
ADMIT DATE: 03/25/2013
  LOCATION: SPEC CR CL
         DOB: 04/18/1968

DATE OF CONSULTATION: 03/25/2013

CONSULTING PHYSICIAN: John M Dowbak, MD

REFERRING PHYSICIAN: BICK - CMF, JOSEPH

To the California Medical Facility

Please be advised I had the pleasure of seeing the above patient today who is 5 months post insertion of a left knee spacer for recurrent infection of his left total knee arthroplasty. He has had multiple surgeries for left knee arthroplasties and revisions dating back since 2009. The patient is now here for follow up care.

All wounds of his left leg are well healed.

The patient's white count is 5900, and his hematocrit is 39, his hemoglobin A1c is 7.6, high. His sedimentation rate is 2 and his C-reactive protein is 0.2.

The patient has a resolved left knee infection. The spacer has worked to eradicate as much of the infection as possible. The patient was scheduled for a hinged Zimmer revision total knee arthroplasty at Ocean Side, and he still wants this type of procedure. The patient was told that he has cement up and down his medullary canal. His medullary canal of his tibia and femur were very thin, and it was felt that it is not in the patient's best interest to undergo another knee arthroplasty as this would be 4 that he would have. The patient wishes to be seen by the doctor at Ocean Side who recommended a hinged total knee arthroplasty revision. He refuses an arthrodesis with removal of the spacer.

If the patient refuses a knee arthrodesis at this institution, then it is reasonable to have the patient return to Oceanside where they put the spacer in, then recommended a hinged total knee arthroplasty with removal of spacer. I feel that the probability of having a successful surgery is very limited and fraught with multiple complications.

The patient was told to see the doctors in Oceanside if he wants a knee reconstruction; otherwise, we will see him back on a p.r.n. basis.

Voice #556427774/Job #337094
D: 03/25/2013 09:26:00
T: 03/25/2013 11:51:00
JMD:medq

John M. Dowbak, MD



**CONSULTATION**

Page 1 of 1

MAR 2 9 2013

Electronically signed by DOWBAK, JOHN M on 2013-03-25 13:54:36

# CALIFORNIA CORRECTIONAL
# **HEALTH CARE SERVICES**



### Institution Response for First Level HC Appeal

**Date:** April 23, 2013

**To:** GOVEA, RONNIE (V21557)
A I 1125001LP
California Medical Facility
P.O. Box 2000
Vacaville, CA 95696-2000

**Tracking/Log #:** CMF HC 13037843

**Appeal Issues:**
In your CDCR-602HC Inmate/Parolee Health Care Appeal Form received on March 20, 2013, you indicated:

| Issue Type | Action Requested |
|---|---|
| **Issue 1:** Surgical Issues  (Knee Surgery) | 1) Knee Replacement Device |
| | 2) Adequate Medical Treatment |

**Interview:**
You were interviewed by Nicolas Aguilera, M.D., on April 12, 2013, regarding this appeal. During the interview, you were allowed the opportunity to fully explain your appeal issues. Effective communication was achieved as demonstrated by the questions and answers you provided during your interview.

**Response:**
The First Level Appeal, received on March 20, 2013, indicated that you were taken to San Joaquin General Hospital (SJGH) on February 25, 2013, and seen by orthopedic surgeon, John M. Dowbak, M.D., for evaluation of possible replacement of your left knee. You indicated that you were given two options by Dr. Dowbak for treatment of your left knee: (1) have your knee fused or (2) have your leg amputated. You also indicate that Dr. Dowbak recommended that if you did not have your knee fused or leg amputated, you should then be seen by the orthopedic surgeon in Oceanside who previously placed your current knee spacer to install a hinged knee replacement. You have requested that you be provided adequate medical treatment as provided by the Eighth Amendment of the Constitution. You have also requested that you be seen by the orthopedic surgeon in Oceanside or another orthopedic surgeon who is willing to provide a total hinged knee replacement surgery.

A thorough review of the available medical records does document that that you were seen by Dr. Dowbak on March 25, 2013. Dr. Dowbak documented that you have had multiple left total knee arthroplasties dating back to 2009. He noted that you were scheduled for total knee arthroplasty in Oceanside. He noted that you have already undergone three left knee arthroplasties and also noted that the medullary canal of your tibia and femur are very thin. He felt that it is not in your best interest to undergo another knee arthroplasty. He further documented that if you refuse a knee arthrodesis at SJGH, it would be reasonable to return to Oceanside for the recommended hinged total knee arthroplasty with removal of the spacer. He further documented that the probability of having a successful surgery is very limited and fraught with multiple complications.

At the First Level of Review, this appeal is **PARTIALLY GRANTED**.

Your request for adequate medical treatment is GRANTED as you are being treated by your primary care physician (PCP) and an orthopedic surgeon. Your request for a total knee replacement device is DENIED at this time; however, your PCP will refer your case to the Institutional Utilization Management Committee for further review and consideration.

Please be advised that you have a right to request treatment. However, medical treatment is determined by a physician based on the physician's evaluation, diagnosis, and departmental policy. This decision is based on the criteria set forth in the California Code of Regulations, Title 15, Section 3354(a). As indicated in Title 15, Section 3354(c), "health care personnel not employed by the department are not authorized to order treatment for an inmate. Such persons may offer opinions and recommendations for consideration by department health care staff."

A review of your appeal with attachment(s), Unit Health Record and all pertinent departmental policies and procedures were reviewed.

**Appeal Decision:**
Based upon the aforementioned information, your appeal is **PARTIALLY GRANTED**.

F. RADING, M.D.
Chief Physician & Surgeon (A)
California Medical Facility







# HEALTH CARE SERVICES



## Institution Response for Second Level HC Appeal

**Date:** May 28, 2013

**To:** GOVEA, RONNIE (V21557)
A I 1125001LP
California Medical Facility
P.O. Box 2000
Vacaville, CA 95696-2000

**Tracking/Log #:** CMF HC 13037843

### Appeal Issues:

In your second level CDCR-602HC Inmate/Parolee Health Care Appeal Form received on May 13, 2013, you indicated:

| Issue Type | Action Requested |
|---|---|
| **Issue 1:** Surgical Issues (Knee Surgery) | 1) Knee Replacement Device |
| | 2) Adequate Medical Treatment |

### Interview:

You were interviewed by Nicholas Aguilera, M.D., on April 12, 2013, regarding this appeal. During the interview, you were allowed the opportunity to fully explain your appeal issue(s). Effective communication was achieved as demonstrated by the questions and answers you provided during your interview.

### Response:

The First Level Appeal, received on March 20, 2013, indicated in pertinent part that you were taken to San Joaquin General Hospital (SJGH) on February 25, 2013, and seen by Orthopedic Surgeon John M. Dowbak, M.D., for evaluation of a possible fourth left knee replacement. You indicated that you were given two options by Dr. Dowbak for the treatment of your left knee: 1) have your knee fused; or 2) have your leg amputated. You further indicated that Dr. Dowbak recommended that, if you did not have either of the options completed, you should be seen by the orthopedic surgeon in Oceanside who previously placed your current knee spacer, to install a hinged knee replacement. You have requested to receive adequate medical treatment as provided by the Eighth Amendment of the Constitution. You have also requested that you be seen by the orthopedic surgeon in Oceanside or another orthopedic surgeon who is willing to provide total hinged knee replacement surgery.

At the First Level of Review, this appeal was **PARTIALLY GRANTED**.

The Second Level Appeal, received on May 13, 2013, indicated you were totally dissatisfied with the first level response as California Medical Facility (CMF) medical officials have failed to realize that while you had previous complications with the multiple left knee arthroplasties while housed at Pleasant Valley State Prison (PVSP) and that it was from the poor after-care treatment while at PVSP. You go on to state that your health has improved and the infection in your left leg is gone since being at CMF. Therefore, you believe that it would inhumane and barbaric if CMF medical officials fail to salvage your leg by not providing you another hinged total knee replacement device as prescribed by your treating orthopedic surgeon in Oceanside.

A review of your appeal with attachment(s), Unit Health Record and all pertinent departmental policies and procedures were reviewed. It was determined that your request to have a hinged total knee replacement device has been referred to the institutional Utilization Management (UM) committee for further review and determination at which time you will be made aware of the disposition.

**Appeal Decision:**
Based upon the aforementioned information, your appeal is **PARTIALLY GRANTED**.

Your request to receive adequate medical treatment is **GRANTED** as you are being treated by your primary care physician and an orthopedic surgeon. Your request for total knee replacement is pending review of the institutional UM committee.

**JACKIE CLARK**
Chief Executive Officer
California Medical Facility





CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES



**Date:** MAY 21 2014

**To:** GOVEA, RONNIE (V21557)
California Medical Facility
P.O. Box 2000
Vacaville, CA 95696-2000

**From:** California Correctional Health Care Services
Inmate Correspondence and Appeals Branch
P.O. Box 588500
Elk Grove, CA 95758

**Tracking/Log # :** CMF HC 13037843

This appeal was reviewed by Inmate Correspondence and Appeals Branch staff on behalf of the Deputy Director, Policy and Risk Management Services. All submitted information has been considered.

## DIRECTOR'S LEVEL DECISION:

Appeal is denied. This decision exhausts your administrative remedies.

## APPEAL REQUESTS:

You are requesting adequate and effective medical treatment such as providing you with another knee replacement device you state was "first planned" by a certified specialist.

## BASIS FOR DIRECTOR'S LEVEL DECISION:

Your appeal file and documents obtained from your Unit Health Record (UHR) were reviewed by licensed clinical staff.

These records indicate:

- You have received Primary Care Provider (PCP) follow-up evaluations to April 17, 2014, related to your history of complex left knee issues, including failed arthroplasties, septic arthritis, osteoarthritis, and multiple surgeries. In addition, you have received orthopedic evaluation in consideration of further surgical treatment for the left knee with encounters documented on February 10, and 27; and on Mach 17, 2014.
- Since you initially submitted your appeal in March 2013, you have received ongoing medical evaluation including orthopedic consultation with the PCP reviewing the specialist's recommendation with you. The PCP also documented discussion of a plan of care with you including a referral for an orthopedic follow-up consultation to consider left knee surgical treatment options which occurred on May 8, 2014. In the interim, you had approved health care accommodations for mobility impairment and the medication extended release Morphine for chronic pain.

You state that the U.S. Constitution Eighth Amendment provides that prison officials are obligated to provide adequate medical care. However, a request for "proper medical care" (or "effective care") without qualification is overly vague and unanswerable. This appeal response will only address health care matters explicitly mentioned in the CDCR 602-HC, Section A, and/or the continuation portion on the CDCR 602-A form, Section

CALIFORNIA CORRECTIONAL
**HEALTH CARE SERVICES**

P.O. Box 588500
Elk Grove, CA 95758

R.GOVEA, V21557
CMF HC 13037843
Page 2 of 2

A. If you feel dissatisfied with the handling of other health care issues not mentioned in Section A, you will need to submit a CDCR Form 7362, Health Care Service Request or a separate 602-HC. It is your responsibility to clearly state the problem(s) you would like addressed by CCHCS staff.

Treatment is provided based on your current medical needs and the judgment of your current provider, not on the basis of previous orders of other medical facilities or staff, in accordance with departmental policy and procedures. The professional judgment of your current provider is not rendered as inadequate medical care or deliberate indifference just because another provider may have had a different opinion.

Your medical condition will continue to be monitored with care provided as determined medically indicated by the PCP.

After review, no intervention at the Director's Level of Review is necessary as your medical condition has been evaluated and you are receiving treatment deemed medically necessary.

## RULES AND REGULATIONS:

The rules governing these issues are: California Code of Regulations, Title 15; Inmate Medical Services Policies and Procedures; and the Department Operations Manual.

## ORDER:

No changes or modifications are required by the institution.

J. Lewis, Deputy Director
Policy and Risk Management Services
California Correctional Health Care Services

CALIFORNIA CORRECTIONAL
**HEALTH CARE SERVICES**

P.O. Box 588500
Elk Grove, CA 95758

EXHIBIT-B

CDCR 602 HEALTH CARE

APPEAL LOG# CMF-HC-14040116

*— ORIGINAL —*

 

# HEALTH CARE SERVICES

**MAR 1 6 2015**

**Date:**

**To:** GOVEA, RONNIE (V21557)
California Medical Facility
P.O. Box 2000
Vacaville, CA 95696-2000

**From:** California Correctional Health Care Services
Inmate Correspondence and Appeals Branch
P.O. Box 588500
Elk Grove, CA 95758

**Tracking/Log # :** CMF HC 14040116

This appeal was reviewed by Inmate Correspondence and Appeals Branch staff on behalf of the Deputy Director, Policy and Risk Management Services. All submitted information has been considered.

## DIRECTOR'S LEVEL DECISION:

Appeal is denied. This decision exhausts your administrative remedies.

## APPEAL REQUESTS:

You claim that a previous left knee replacement performed at San Joaquin General Hospital is unstable, defective; and you are requesting effective and adequate medical treatment by "fixing or replacing" the unstable, defective, left knee.

## BASIS FOR DIRECTOR'S LEVEL DECISION:

Your appeal file and documents obtained from your Unit Health Record were reviewed by licensed clinical staff. These records indicate:

- Appeal log # CMF HC 13037843 documents previous Primary Care Provider (PCP) evaluations in April 2014, related to your history of complex left knee issues including failed arthroplasties, septic arthritis, osteoarthritis and multiple surgeries.
- Subsequent to your appeal submitted in September 2014, you have received multiple provider follow up evaluations to March 4, 2015, including an orthopedic follow up evaluation on January 5, 2015, noting your history of failed prior knee replacement surgeries, most recently in June 2014, with current unstable left knee. In addition, you have received ongoing medical evaluation including an orthopedic consultation with review of surgical treatment options, and an explanation of the associated risks. A Request for Services has been submitted for recommended knee surgery, approved on January 21, 2015; however, the surgery had been deferred until your diabetes is better controlled. In the interim, you are designated as DPO (Intermittent Wheelchair User) status, with approved health care accommodations, Outpatient Housing Unit housing, physical therapy (PT) services; and an order for narcotic/non-narcotic analgesics for chronic pain.

At the Director's Level of Review, you state that the denial of access to appropriately qualified orthopedic health care personnel at the University of California, Davis Medical Center (UCDMC) constituted deliberate indifference. The Department shall provide only medical services for patient-inmates that are based on medical necessity and supported by outcome data as effective medical care. In the absence of available outcome data for a specific case, treatment will be based on the judgment of the physician that the treatment is considered effective for the purpose and is supported by diagnostic information and consultations with appropriate specialists.

The PCP discussed your preference to have the left knee surgery performed at UCDMC, and also advised you that this may not be possible; however, this does not constitute deliberate indifference. Your contention that you have not received adequate medical care is refuted by professional health care staff familiar with your medical history, as well as a review of your medical records. You continue to be monitored for your blood sugar as well as for adjustment of your diabetes medication regimen in response to high blood sugar; and you continue to receive interim PT services, with a plan to continue PT, with PT recording multiple recent PT encounters related to your left knee condition with the most recent visit on January 29, 2015, which does not demonstrate deliberate indifference. You have been appropriately evaluated by professional and qualified orthopedic, medical, PT and specialty health care staff.

Your medical condition will continue to be monitored with care provided as determined medically indicated by the PPC.

After review, no intervention at the Director's Level of Review is necessary as your medical condition has been evaluated and you are receiving treatment deemed medically necessary.

**RULES AND REGULATIONS:**

The rules governing these issues are: California Code of Regulations, Title 15; Inmate Medical Services Policies and Procedures; and the Department Operations Manual.

**ORDER:**

No changes or modifications are required by the institution.

J. Lewis, Deputy Director
Policy and Risk Management Services
California Correctional Health Care Services

**PATIENT-INMATE HEALTH CARE APPEAL**

CDCR 602 HC (REV. 6/13)

Page 1 of 2

| STAFF USE ONLY | | | Institution: | Log #: | Category: |
|---|---|---|---|---|---|
| Emergency Appeal | ☐ Yes | ☐ No | CMF +C | 14040116 | |
| Signature: | | Date: | | FOR STAFF USE ONLY | |

You may appeal any medical, mental health, or dental decision, action, condition, omission, policy or regulation that has a material adverse effect upon your welfare. See California Code of Regulations, Title 15, Section (CCR) 3084.1. You must send this appeal and any supporting documents to the Health Care Appeals Coordinator (HCAC) within 30 calendar days of the event that led to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process. No reprisals will be taken for using the appeal process.

**Appeal is subject to rejection if one row of text per line is exceeded.**     **WRITE, PRINT, or TYPE CLEARLY.**

| Name (Last, First): Govea | CDCR Number: V21557 | Unit/Cell Number: G-3 | Assignment: |
|---|---|---|---|

**State briefly the subject/purpose of your appeal (Example: Medication, To See Specialist, etc.):**

**SECTION A.** Explain your issue (If you need more space, use Section A of the CDCR 602-A):

**SECTION B.** Action requested (If you need more space, use Section B of the CDCR 602-A):

☐ **Supporting Documents: Refer to CCR 3084.3.**

List supporting documents attached (e.g., Trust Account Statement; CDCR 7410, Comprehensive Accommodation Chrono; CDCR 7362, Request for Health Care Services; etc.):

**SEE ATTACHED CDC-1824/602**

☐ No, I have not attached any supporting documents. Reason :

Patient-Inmate Signature: _____  Date Submitted: _____

☐ By placing my initials in this box, I waive my right to receive an interview.

| SECTION C. FIRST LEVEL - Staff Use Only | Check One: Is CDCR 602-A attached? ☑ Yes ☐ No |
|---|---|

This appeal has been:     Check One: Is this a recategorized/converted 1824? ☐ Yes ☑ No

☐ Bypassed at the First Level of Review. Go to Section E.

☐ Rejected (See attached letter for instruction): Date: _____ Date: _____ Date: _____ Date: _____

☐ Cancelled (See attached letter): Date: _____

☑ Accepted    Assigned to: Rading    Title: _____  Date Assigned: 10/15/14  Date Due: 11/26/14

First Level Responder: Complete a First Level response. Include Interviewer's name, title, interview date, location, and complete the section below.

Date of Interview: 10/21/14    Interview Location: G-3

Your appeal issue is: ☐ Granted  ☑ Granted in part  ☐ Denied  ☐ Other: _____

See attached letter. If dissatisfied with First Level response, complete Section D.

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: | Interview conducted? ☑ Yes ☐ No |
|---|---|---|---|
| ☐ TABE score ≤ 4.0 | ☑ Additional time | ☑ P/I asked questions | Interviewer: F. RADINH     Title: M.D. |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☑ P/I summed information | (Print Name) |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | **Please check one:** | Signature: _____  Date completed: 11/5/14 |
| ☐ DNS ☐ DDP | ☑ Basic ☐ Transcribe | ☐ Not reached* ☑ Reached | Reviewer: Joseph Bick     Title: 11/10/14 |
| ☐ Not Applicable | ☐ Other* | *See chrono/notes | (Print Name) |
| 4. Comments: | | | Signature: J. Bick |

| HCAC Use Only | HCAC Use Only |
|---|---|
| Date received by HCAC: | Date closed and mailed/delivered to appellant: 11/12/14 |

RECEIVED OCT 15 2014 HC APPEALS

COMPLETED NOV 12 2014 HC APPEALS

RECEIVED NOV 24 2014 HC APPEALS

COMPLETED JAN-2 2015 HC APPEALS

RECEIVED JAN 2 2 2015 HC APPEALS

ICAB MAR 16 2015 Complete

**SECTION D.** If you are dissatisfied with the First Level response, explain the reason below, attach supporting documents and submit to the Health Care Appeals Coordinator for processing within 30 calendar days of receipt of response. If you need more space, use Section D of the CDCR 602-A.

*I AM TOTALLY DISSATISFIED WITH THE FIRST LEVEL RESPONSE TO THIS APPEAL BECAUSE ON MAY 8, 2014 I SEEN ORTHOPEDIC SURGEON DR. WOLFSON M.D. AT SAN JOAQUIN GENERAL HOSPITAL FOR A "PRE-OP" VISIT, AT THAT TIME WE DISCUSSED HIS PLANS AND PROCEDURES TO INSTALL A "HINGED" TOTAL KNEE REPLACEMENT �José*

Patient-Inmate Signature: *Ronnie Javier*          Date Submitted: *11-23-14*

---

**SECTION E. SECOND LEVEL - Staff Use Only**          Check One: Is CDCR 602-A attached?          ☒ Yes ☐ No

This appeal has been:          Check One: Is this a recatergorized/converted 1824?          ☐ Yes ☒ No

☐ Bypassed at Second Level of Review. Go to Section G.

☐ Rejected (See attached letter for instruction):  Date: _____ Date: _____ Date: _____ Date: _____

☐ Cancelled (See attached letter):          Date: _____

☒ Accepted  Assigned to: *PV Cuette*          Title: _____ Date Assigned: *11/24/14* Date Due: *12/8/14*

Second Level Responder: Complete a Second Level response. Include Interviewer's name, title, interview date, location, and complete the section below.

Date of Interview: _____          Interview Location: _____

Your appeal issue is:          ☐ Granted  ☒ Granted in part  ☐ Denied          ☐ Other: _____

See attached letter.  If dissatisfied with Second Level response, complete Section F.

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: | Interview conducted? ☐ Yes ☒ No |
|---|---|---|---|

☐ TABE score ≤ 4.0  ☐ Additional time  ☐ P/I asked questions          Interviewer: _____ Title: _____
☐ DPH ☐ DPV ☐ LD  ☐ Equipment ☐ SLI  ☐ P/I summed information          (Print Name)
☐ DPS ☐ DNH  ☐ Louder ☐ Slower  **Please check one:**          Signature: _____ Date completed: _____
☐ DNS ☐ DDP  ☐ Basic ☐ Transcribe ☐ Not reached* ☐ Reached
☐ Not Applicable  ☐ Other*  *See chrono/notes          Reviewer: _____ Title: _____

4. Comments: _____          Signature: _____
          (Print Name)

| HCAC Use Only | HCAC Use Only |
|---|---|
| Date received by HCAC: _____ | Date closed and mailed/delivered to appellant: _1/2/15_ |

---

**SECTION F.** If you are dissatisfied with the Second Level response, explain reason below; attach supporting documents and submit by mail for Third Level Review.  It must be received within 30 calendar days of receipt of prior response.  Mail to: Health Care Appeals, ATTN: Chief, Building C, P.O. Box 588500, Elk Grove, CA 95758.  If you need more space, use Section F of the CDCR 602-A.

*I AM TOTALLY DISSATISFIED WITH THE SECOND LEVEL RESPONSE TO THIS APPEAL FOR THE SIMPLE FACT CMF MEDICAL OFFICIALS ARE "WELL AWARE" OF THE "COMPLEX ISSUES" WITH MY LEFT KNEE AND RECOMMENDATIONS FROM MY PREVIOUS ORTHOPEDIC DR. C. BENTLEY AND ATTORNEY'S TO SEND ME TO U.C. DAVIS MEDICAL CENTER FOR TREATMENT YET, CMF MEDICAL OFFICIALS CHOSE ➔*

Patient-Inmate Signature: *Ronnie Javier*          Date Submitted: *1-21-2015*

---

**SECTION G. THIRD LEVEL - Staff Use Only**

☐ Rejected (See attached letter for instruction):  Date: _____ Date: _____ Date: _____ Date: _____

☐ Cancelled (See attached letter):  Date: _____

☐ Accepted at the Third Level of Review

Your appeal is:  ☐ Granted          ☐ Granted in part  ☒ Denied          ☐ Other: _____

See attached Third Level response.          Third Level Use Only          **MAR 1 6 2015**
          Date closed and mailed/delivered to appellant: _____

**Request to Withdraw Appeal:** I request that this appeal be withdrawn from further review because; State reason. (If withdrawal is conditional, list conditions.)

_____

_____

Patient-Inmate Signature: _____          Date Submitted: _____

Print Staff Name: _____  Title: _____  Signature: _____  Date: _____

Cmf HC 14040116

Side 1

Location: Institution/Parole Region:

1. _____
2. _____

Log #:

1 _____
2 _____

Category: _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. This form shall be used when the policy, action, or decision being appealed involves health care services (medical, dental, or mental health). You must first informally seek relief through discussion with the appropriate staff member or by utilizing the health care service processes at your institution. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Health Care Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| GOVEA | #V-21557 | MED-UNASSIGN. | 6-3 #304 |

A. Describe Problem: ON JUNE 4TH, 2014 I HAD MY 4TH TOTAL KNEE REPLACEMENT SURGERY ON MY LEFT LEG ALONG WITH 12" METAL RODS INSTALLED IN MY LEG BONES, AFTER THIS LAST MAJOR SURGERY I'VE BEEN EXPERIENCING SHARP PAIN THROUGHOUT MY LEG THAT CAUSES DISCOMFORT AND SLEEPLESS NIGHTS. THIS SUBSTANTIAL CHRONIC PAIN AFFECTS MY ABILITY TO PERFORM DAILY ACTIVITIES AND PHYSICAL THERAPY. CALIFORNIA MEDICAL FACILITY OFFICIALS ALLOWED "SAN JOAQUIN GENERAL HOSPITAL" ORTHOPEDIC SURGEON "DR. N. WOLFSON" TO INSTALL A "DEPUY" DEFECTIVE KNEE REPLACEMENT DEVICE IN MY LEG THAT HAS ACTUALLY BECOME "LOOSE, WOBBLY AND BASICALLY UNSTABLE". THE "DEPUY" KNEE REPLACEMENT →

If you need more space, attach one additional sheet.

B. Action Requested: I RESPECTFULLY REQUEST CMF MEDICAL OFFICIALS PROVIDE ME WITH EFFECTIVE AND ADEQUATE MEDICAL TREATMENT BY "FIXING OR REPLACING" THE UNSTABLE "DEFECTIVE" DEPUY KNEE REPLACEMENT DEVICE THAT SAN JOAQUIN GENERAL HOSPITAL ORTHO SURGEON "DR. N. WOLFSON" INSTALLED IN MY LEG. MY KNEE NEEDS TO BE FIXED TO ALLEVIATE SOME OF THE CHRONIC PAIN I EXPERIENCE ON A DAILY BASIS SO I CAN ALSO PERFORM DAILY ACTIVITIES.

Inmate/Parolee Signature: Ronnie Govea   Date Submitted: 9-29-14

C. INFORMAL LEVEL (Date Received _____):

Staff Response: _____

_____

_____

Staff Signature: _____   Date Returned to Inmate: _____

SEE ATTACHED
CDC 1824/602

D. FORMAL LEVEL:

If you are dissatisfied, explain below, attach supporting documents (Health Care Service Request Form, CDC 7362, Comprehensive Accommodation Chrono, CDC 7410, Trust Account Statement, etc.) and submit for processing to the Health Care Appeals Coordinator at your location within 15 days of receipt of response.

_____

_____

_____

_____

Inmate/Parolee Signature: _____   Date Submitted: _____

RECEIVED OCT 15 2014 HC APPEALS

COMPLETED NOV 12 2014 HC APPEALS

RECEIVED NOV 24 2014 HC APPEALS

RECEIVED MAR 2 2 2015 HC APPEALS

ICAB MAR 16 2015 Complete

CDCR Appeal Number
_____

STATE OF CALIFORNIA
INMATE/PATOLEE HEALTH CARE
APPEAL FORM
CDCR 602-H2 (08/08)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
CALIFORNIA PRISON HEALTH CARE SERVICES

Side 2

---

FIRST LEVEL: ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

E. REVIEWER'S ACTION (Complete within 30 working days): Date Assigned: _____ Due Date: _____

_SEE ATTACHED CDC-1824/602_

Staff Signature: _____ Title: _____ Date Completed: _____

Division Head Approval
Signature: _____ Title: _____ Date Returned to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit for processing to the Health Care Appeals Coordinator at your location within 15 days of receipt of response:

_SEE ATTACHED CDC-1824/602_

Inmate/Parolee Signature: _____ Date Submitted: _____

SECOND LEVEL: ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

G. REVIEWER'S ACTION (Complete within 20 working days): Date Assigned: _____ Due Date: _____

☐ See Attached Letter
Staff Signature: _____ Date Completed: _____

Health Care Services
Hiring Authority Signature: _____ Title: _____ Date Returned to Inmate: _____

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 working days of receipt of response:

_SEE ATTACHED CDC-1824/602_

Inmate/Parolee Signature: _____ Date Submitted: _____

For Director's Review of Health Care issues, submit all documents to:    Chief of Third Level Appeals – Health Care
P. O. Box 4038
Sacramento, CA 95812-4038

DIRECTOR'S ACTION: ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

☐ See Attached Letter
Date: _____

DEPARTMENT OF CORRECTIONS AND REHABILITATION

STATE OF CALIFORNIA Case 2:15-cv-0254 MCE-DB Document 1 Filed 12/09/15 Page 44 of 87
INMATE/PAROLEE APPEAL FORM ATTACHMENT

CDCR 602-A (08/09)

Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | CMF HC | 140 40116 | |
| | | FOR STAFF USE ONLY | |

Attach this form to the CDCR 602, only if more space is needed. Only one CDCR 602-A may be used.

Appeal is subject to rejection if one row of text per line is exceeded.          WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): GOVEA | CDC Number: V-21557 | Unit/Cell Number. G.3 # 304 | Assignment: MED U/A |
|---|---|---|---|

A. Continuation of CDCR 602, Section A only (Explain your issue): DEVICE "GIVES OUT" WHEN I
STAND OR TRY TO WALK FOR LONG PERIODS OF TIME AND INTENDS TO SWELL UP.
I HAVE BEEN SEEN BY SEVERAL ORTHOPEDIC SURGEONS WHO HAVE DIAGNOSED
MY LEFT KNEE REPLACEMENT DEVICE AS BEING "UNSTABLE" AND RECOMMENDED THAT
I WEAR A MOLDED CUSTOM MADE KNEE BRACE FOR STABILITY FOR NOW. I HAD
INFORMED "CMF MEDICAL OFFICALS" AND DR. MOE THAT EVERYTIME I AM SCHEDULED
TO GO TO SAN JOAQUIN GENERAL HOSPITAL FOR A FOLLOW-UP WITH MY ORTHOPEDIC
SURGEON "DR. N. WOLFSON", ON FOUR DIFFERENT OCCASIONS I ENDED UP SEEING
OTHER ORTHO SURGEONS WHO WON'T ANSWER MY QUESTIONS REGARDING THE
" DE PUY" DEFECTIVE KNEE REPLACEMENT DEVICE DR. N. WOLFSON INSTALLED IN MY
LEG NOR, CAN THEY LET ME KNOW IF THEY HAVE A PLAN TO FIX THE "LOOSE AND
UNSTABLE" KNEE REPLACEMENT DEVICE. ORTHO SURGEONS DR. PUCELIK AND DR. CROOK
TELL ME I HAVE TO TALK TO ORTHO SURGEON "DR. N WOLFSON "WHO INSTALLED THE
" DE PUY" KNEE REPLACEMENT DEVICE YET, "DR. N. WOLFSON CONTINUES TO AVOID ME.
CMF MEDICAL OFFICALS HAVE PROVIDED INADEQUATE MEDICAL TREATMENT IN DIRECT
VIOLATION OF THE U.S. CONSTITUTIONS 8TH AMENDMENT WHICH PROHIBTS THE
"UNNESSESARY AND WANTON INFLICTION OF PAIN" MY MEDICAL CONDITION IS SO
OBVIOUS THAT EVEN A LAY PERSON WOULD EASLY RECOGNIZE THE NECESSITY OF A
DOCTORS ATTENTION PURSUANT TO CCR. TITLE 15, SECTION 3350 (b)(5)

Inmate/Parolee Signature: Ronnie Govea          Date Submitted: 9-29-14

RECEIVED
OCT 1 5 2014
HC APPEALS

COMPLETED

RECEIVED
NOV 24 2014
HC APPEALS

COMPLETED

B. Continuation of CDCR 602, Section B only (Action requested): _____

ICAB
MAR 1 6 2015
Complete

Inmate/Parolee Signature: _____          Date Submitted: _____

D. Continuation of CDCR 602, Section D only (Dissatisfied with First Level response): *DEVICE IN MY LEG WHICH I HAD* *AGREED WITH HIM BECAUSE MY 3rd KNEE REPLACEMENT DEVICE WAS A ZIMMER "HINGED"* *TOTAL KNEE REPLACEMENT DEVICE THAT WAS NOT SO WOBBLY OR LOOSE IT WAS STABLE* *UNTIL IT FAILED AND BROKE. AFTER DR. WOLFSON PERFORMED THE KNEE REPLACEMENT* *SURGERY ON JUNE 4, 2014 I WAS UNDER THE IMPRESSION THAT HE INSTALLED A "HINGED"* *KNEE REPLACEMENT DEVICE IN MY LEG AS HE FIRST PLANNED TO ALLEVIATE ANY UNSTABILITY.* *ON OCTOBER 20, 2014 I SEEN DR. WOLFSON AT SJGH FOR A FOLLOW-UP VISIT AND I HAD* *SHOWED HIM MY "UNSTABLE AND LOOSE" KNEE REPLACEMENT DEVICE AND I ASKED HIM* *"WHY" IS MY KNEE SO LOOSE, UNSTABLE AND WOBBLY WHEN IT'S A "HINGED" KNEE REPLA-* *CEMENT DEVICE? DR. WOLFSON INFORMED ME THAT "HE DID NOT INSTALL THE HINGED DEVICE"* *IN MY LEG AFTER ALL BECAUSE THE "DEPUY" REVISION SYSTEM I INSTALLED HAS A GOOD* *TRACK RECORD! AS OF NOVEMBER 23, 2014 THERE HAS BEEN MINOR IMPROVEMENTS* *AFTER COMPLYING WITH ALL DR. WOLFSON'S RECOMMENDATIONS, AFTER UTILIZING THE* *CUSTOM KNEE BRACE AND CORRECTIVE SHOES WITH A 1/4 INCH LIFT, THE UNSTABLE* *"DEPUY" KNEE REPLACEMENT DEVICE ACTUALLY PREVENTS ME FROM DOING THE FULL* *RANGE OF PHYSICAL THERAPY EXERCISES. I CAN ONLY WALK A SHORT DISTANCE BECAUSE* *I START TO EXPERIENCE SHARP PAIN IN THE KNEE AND OCCASIONAL BUCKLING, MY* *DAILY ACTIVITIES ARE LIMITED". ON 10-20-14 I ALSO DISCUSSED WITH DR. WOLFSON THE* *POSSIBILITY OF A "REVISON" SURGERY TO INSTALL A "HINGED" KNEE REPLACEMENT DEVICE TO STABILIZE* *THE LOOSENESS OF THE KNEE, BECAUSE THE "DEPUY" KNEE REPLACEMENT DEVICE CONTINUES TO* *CAUSE CHRONIC PAIN AND ALL THE SYMPTOMS OF A KNEE IMPLANT FAILURE.*

Inmate/Parolee Signature: *Ronnie Hovea*    Date Submitted: *11-23-14*

F. Continuation of CDCR 602, Section F only (Dissatisfied with Second Level response): *TO SEND ME TO SAN JOAQUIN GENERAL* *HOSPITAL WHICH IS A SUB-STANDARD CARE FACILITY TO CUT CORNERS AND COST'S BECAUSE U. C.* *DAVIS WOULD HAVE PROVIDED MUCH BETTER MEDICAL TREATMENT AND COST MORE MONEY. CMF* *MEDICAL OFFICIALS DISPLAYED "DELIBERATE INDIFFERENCE" TOWARDS MY "COMPLEX MEDICAL ISSUES" WITH* *MY LEFT KNEE, DIABETES, INFECTIONS AND RISK'S OF ABOVE KNEE AMPUTATIONS, THEY ARE MORE* *CONCERNED ABOUT SAVING MONEY THEN PROVIDING "EFFECTIVE MEDICAL TREATMENT". THIS CASE* *SHOWS THAT THE COURSE OF TREATMENT SJGH ORTHO DR. WOLFSON CHOSE WAS "MEDICALLY UNA-* *CCEPTABLE" UNDER THE CIRCUMSTANCES AND HE CHOSE THIS COURSE IN CONSCIOUS DISREGARD OF* *AN EXCESSIVE RISK TO MY HEALTH, NOW DR. WOLFSON IS READY TO PERFORM "ANOTHER REVISION KNEE* *REPLACEMENT SURGERY TO REMOVE THE "DEFECTIVE" DEPUY P.F.C. SIGMA DEVICE AND INSTALL A "HINGED"* *KNEE REPLACEMENT DEVICE FOR STABILITY. THIS PROCEDURE WAS SUPPOSED TO HAVE BEEN DONE THE* *FIRST TIME ON JUNE 4, 2014 BUT, DR. WOLFSON CHOSE TO INSTALL A MUCH "CHEAPER" DEVICE INSTEAD OF THE* *"HINGED" DEVICE, SJGH DR. WOLFSON WILL BENEFIT "ONCE AGAIN" BY CHARGING CMF MEDICAL OFFICIALS* *THOUSANDS OF DOLLARS FOR "ANOTHER REVISION KNEE REPLACEMENT SURGERY" CAUSING ME MORE* *PAIN AND SUFFERING! I HAVE LOST CONFIDENCE IN DR. WOLFSON. THESE ACTIONS BY CMF MEDICAL* *OFFICIALS CONSTITUTES "DELIBERATE INDIFFERENCE" BY THE DENIAL OF ACCESS TO APPROPRIATELY QUALIFIED* *ORTHOPEDIC HEALTH CARE PERSONNEL AT U.C. DAVIS MEDICAL CENTER.*

Inmate/Parolee Signature: *Ronnie Hovea*    Date Submitted: *1-21-2015*





# HEALTH CARE SERVICES

## Institution Response for First Level HC Appeal

**Date:** November 6, 2014

**To:** GOVEA, RONNIE (V21557)
A G 3000304LP
California Medical Facility
P.O. Box 2000
Vacaville, CA 95696-2000

**Tracking/Log #:** CMF HC 14040116

### Appeal Issues:
In your CDCR-602HC Inmate/Parolee Health Care Appeal Form received on October 15, 2014, you indicated:

**Issue Type** **Action Requested**

**Issue 1:** Disagreement with Treatment ( MD ) Fix or replace defective knee replacement

### Interview:
You were interviewed by Dr. Rading on October 21, 2014, regarding this appeal. During the interview, you were allowed the opportunity to fully explain your appeal issue(s).

### Response:
The First Level Appeal, received on October 15, 2014, indicated that you had left knee replacement at SJGH and the knee has become unstable. You are requesting that you have your unstable knee fixed or replaced. On October 20, 2014, you were seen by the surgeon who performed your knee replacement; he agreed that your left knee is in fact unstable. His recommendation was that you try a custom knee brace with a shoe lift for 10-12 weeks and he will see you in follow up to discuss further options if there is no improvement.

At the First Level of Review, this appeal is **PARTIALLY GRANTED.**

A review of your appeal with attachment(s), Unit Health Record and all pertinent departmental policies and procedures, were reviewed.

### Appeal Decision:
Based upon the aforementioned information, your appeal is **PARTIALLY GRANTED.**

*Josal Buck for*

**MICHELE DITOMAS, MD, MS**
Chief Physician & Surgeon
California Medical Facility

CALIFORNIA CORRECTIONAL

# HEALTH CARE SERVICES



## Institution Response for Second Level HC Appeal

**Date:** December 29, 2014

**To:** GOVEA, RONNIE (V21557)
A G 3000304LP
California Medical Facility
P.O. Box 2000
Vacaville, CA 95696-2000

**Tracking/Log #:** CMF HC 14040116

### Appeal Issues:

In your CDCR-602HC Inmate/Parolee Health Care Appeal Form received on November 24, 2014, you indicated:

**Issue Type**         **Action Requested**

**Issue 1:** Disagreement with Treatment ( MD )  Fix or replace defective knee replacement

### Interview:

You were interviewed by Dr. Rading, Physician and Surgeon, on October 21, 2014, regarding this appeal. During the interview, you were allowed the opportunity to fully explain your appeal issue(s). Effective communication was achieved as evidenced by your appropriate questions and answers throughout the interview in regards to the appeal issues brought forward.

### Response:

The First Level Appeal, received on October 15, 2014, indicated that you had left knee replacement at SJGH and the knee has become unstable. You requested to have your unstable knee fixed or replaced. On October 20, 2014, you were seen by the surgeon who performed your knee replacement; he agreed that your left knee is in fact unstable. His recommendation was that you try a custom knee brace with a shoe lift for 10-12 weeks, and he will see you in follow up to discuss further options if there is no improvement.

At the First Level of Review, this appeal was **PARTIALLY GRANTED**.

The Second Level Appeal, received on November 24, 2014, indicated you are completely dissatisfied with the first level response. You claim you have done everything Dr. Wolfson has requested of you but that your condition has not improved. You maintain your request to have your knee replacement apparatus repaired for replaced.

At the Second Level of Review, this appeal is **PARTIALLY GRANTED**.

A review of your appeal with attachment(s), Unit Health Record and all pertinent departmental policies and procedures were reviewed. You have a follow-up appointment with Dr. Wolfson in January 2015 to determine if any improvement has been made with the device. At that time he will re-examine your knee and make a prognosis at that time.

R GOVEA, V21557
CMF HC 14040116
Page 2 of 2

**Appeal Decision:**
Based upon the aforementioned information, your appeal remains **PARTIALLY GRANTED**.

**JACKIE CLARK**
Chief Executive Officer
California Medical Facility



Nikolaj Wolfson, MD

**SAN JOAQUIN GENERAL HOSPITAL**

HISTORY & PHYSICAL
PRE-ADMIT

V21557

PATIENT: GOVEA, RONNIE
MR#: 1104207
ADMIT DATE: 06/04/2014
LOCATION: PACU
DOB: 04/18/1968

CHIEF COMPLAINT: Staged revision, left infected total knee arthroplasty.

HISTORY OF PRESENT ILLNESS: The patient is a 46-year-old inmate whose history is previously dictated. He underwent left total knee arthroplasty a few years ago. This became infected and required revision in San Diego. The revision was done on October 21st. Cemented spacer was placed into the knee joint.

The patient's past history is positive for type C hepatitis. He is otherwise well.

PHYSICAL EXAMINATION: NECK: No neck tenderness or lymphadenopathy.
GENERAL: Multiple tattoos.
CHEST: Clear. S1, S2 normal.
EXTREMITIES: Left leg neurovascularly intact. Significantly swollen left knee. Multiple scars.

X-RAYS: Cemented Prostalac type knee arthroplasty.

The patient had aspiration from his left knee performed by me and this did not reveal any white cells or bacteria.

DISCUSSION: I discussed with the patient his condition. He is awaiting a stage II revision. This can be done and I described the risks and benefits of the procedure. It will be extensive surgery. It may require hinged prosthesis. Appropriate arrangements will be made once the financial clearance obtained.

Voice #610177417/Job #249006
D: 05/08/2014 15:53:00
T: 05/08/2014 16:07:00
NW:medq

Nikolaj Wolfson, MD



HISTORY & PHYSICAL PRE-ADMIT
Page 1 of 1

Electronically signed by WOLFSON, NIKOLAJ on 2014-06-04 18:13:05

" PRE - OP VISIT "

# PRELIMINARY

Nikolaj Wolfson, MD

**SAN JOAQUIN GENERAL HOSPITAL**

TRANSFER SUMMARY

$V21557$

PATIENT: GOVEA, RONNIE
MR#: 1104207
ADMIT DATE:06/04/2014
TRANSFERRED DATE:06/05/2014
LOCATION:3C MED/SG
DOB:04/18/1968

ADMISSION DIAGNOSIS: Previously failed infected left total knee
arthroplasty stage I.

DIAGNOSIS ON TRANSFER: Status post stage II revision of failed left total
knee arthroplasty.

PROCEDURE PERFORMED: Stage II revision left total knee arthroplasty.

HOSPITAL COURSE: The patient is a 46-year-old inmate with previously
failed and revised total knee arthroplasty. He had a cement spacer in his
knee. Preoperatively there was no evidence of infection.

On the day of patient admission, patient underwent a revision of his
total left knee arthroplasty. I used DuPuy revision system with the
proximal and distal stents and cement with antibiotics. The
intraoperative course was unremarkable. The patient is doing very well.
Today he is comfortable. Pain is well controlled. He is neurovascularly
intact. His hemoglobin is 9.1.

In my opinion, patient can be transferred to the prison medical facility.
He is allowed to weight bear as tolerated, and will need extensive
physical therapy. For DVT prophylaxis, I would recommend aspirin for 3-4
weeks. I will follow him to the outpatient clinic.

ADDENDUM: Patient's discharge has been postponed by one day due to the
pain management. He is doing well.

He obviously will require more pain medications with his stage 2 revision
arthroplasty. I would suggest Percocet 5-10 mg/325 every four hours
p.r.n. Motrin obviously will not be sufficient. He also will be on
enteric-coated aspirin 325 mg once a day for two weeks, and dressing
changes should start on Tuesday on a daily basis. He is allowed to
weight bear as tolerated and he will have physical therapy three times a
week. It will be long route for him to achieve better range of motion
due to the fact that he was immobilized for so long.

Voice #613616804/Job #312652
D: 06/05/2014 13:35:00
T: 06/05/2014 14:15:00
NW:jbl

Nikolaj Wolfson, MD

TRANSFER SUMMARY
Page 1 of 1

# PRELIMINARY

Nikolaj Wolfson, MD

**SAN JOAQUIN GENERAL HOSPITAL**

**REPORT OF OPERATION**

V 21557

PATIENT: GOVEA, RONNIE
MR#: 1104207
ADMIT DATE: 06/04/2014
LOCATION: 3B MED/SG
DOB: 04/18/1968

OPERATION PERFORMED: Left total knee revision arthroplasty stage II.

DATE OF OPERATION: 06/04/2014

SURGEON: Nikolaj Wolfson, MD

PREOPERATIVE DIAGNOSIS: Failed left total knee arthroplasty, staged knee revision arthroplasty.

ANESTHESIA: General.
ANESTHESIOLOGIST: David Edelsohn, MD

The patient came to the hospital for his elective left knee arthroplasty. After discussing with the patient the procedure and risks involved, the left leg was marked.

PROCEDURE: The patient was brought to the OR. Placed on OR table in supine position. General anesthesia applied. Left leg prepped and draped in the usual fashion. Surgical time-out performed. The previously utilized incisional medial scar approach. Medial arthrotomy performed. 80 mL of fluid aspirated and sent for:

1. Cell _____ power field account.

2. Cultures and sensitivity. The knee fluid looked pretty much clear. There was no grossly infected tissue identified. The cemented knee temporary spacer prosthesis was solid and removed uneventfully. The bone was substantial both on the femoral and tibial side to a lesser extent. Intramedullary canal entered to both sides and reamed.

Attention brought to the tibial side first. Tibial side prepared nicely.

The tibial side was prepared using PFC. A long tibial component with femoral 40 mm sleeve and a tibial rotating platform, size 4, and 75 mm x 12 mm stem.

The distal femur and femoral revision component required also Sigma size 5 PS revision stem with posterior augments 8 mm on the medial side, 8 mm on the lateral side, as well as 115 mm x 12 fluted stem. The trials were performed. Intraoperative x-rays were taken and knee was actually well balanced. After trials were performed and the knee was irrigated with normal saline, the permanent components were inserted using gentamicin bone cement on the tibial, femoral, and patellar site which was resurfaced with a size 41 patella. I was quite pleased with the overall alignment and stability achieved. Tourniquet initially was used for 128 minutes. It was deflated for almost an hour, and reinflated for 25 minutes during this cementation part of the procedure.

Arthrotomy was closed using #2 Vicryl, 0 Vicryl used to close the deep subcutaneous layer. Skin closed using nylon 3-0. Sterile dressing

---

REPORT OF OPERATION

Page 1 of 2





# PRELIMINARY

Nikolaj Wolfson, MD

**SAN JOAQUIN GENERAL HOSPITAL**

**REPORT OF OPERATION**

V21557

PATIENT: GOVEA, RONNIE
MR#: 1104207
ADMIT DATE: 06/04/2014
LOCATION: 3B MED/SG
DOB: 04/18/1968

applied.  Peripheral pulse palpated.

PLAN: The patient will be seen by physical therapy. He will be on Lovenox prophylaxis. He is allowed to weight bear as tolerated. X-rays taken today at the end of the procedure confirmed excellent alignment.

Voice #613493906/Job #372009
D: 06/04/2014 16:49:00
T: 06/05/2014 13:15:00
NW:medq

_____
Nikolaj Wolfson, MD





/       REPORT OF OPERATION
        Page 2 of 2



Nikolaj Wolfson, MD

**SAN JOAQUIN GENERAL HOSPITAL**

**PROGRESS NOTE**

V21557

**PATIENT:** GOVEA, RONNIE
**MR#:** 1104207
**ADMIT DATE:** 06/16/2014
**LOCATION:** SPEC CR CL
**DOB:** 04/18/1968

DATE OF VISIT: 06/16/2014

HISTORY/PLAN: The patient is back for follow-up after his total knee revision arthroplasty, left knee. He is doing great. His swelling is coming down. His incision is clean. He is neurovascularly intact.

I understand the patient is going through physical therapy and having CPM.

X-ray taken today showed that the implant is in good position.

In my opinion the patient should have his sutures removed in about 10 days. He should be moving indeed his knee and he is allowed to weight bear as tolerated. Nevertheless, I would not use CPM. I think it would be wise to arrange a long hinged left leg brace so it can protect him for now since there is always the risk of mechanical loosening. We will follow him up in about 9 to 10 days for suture removal, and another time in about six weeks.

Voice #614856149/Job #394619
D: 06/16/2014 09:57:00            Nikolaj Wolfson, MD
T: 06/16/2014 13:04:00
NW:jbl

cc: Joseph Bick, MD







**PROGRESS NOTE**

Page 1 of 1

Electronically signed by WOLFSON, NIKOLAJ on 2014-06-17 17:30:50

May 12 2014 2:02PM

OMF



*San Joaquin General Hospital / A Division of San Joaquin County Health Care Services*

### ORTHOPEDIC SCHEDULING FORM

V21557 ±125L

Surgery Date: 6-4-14 –

Confirmation #: _____

Scheduled by: _____ SX: 6/4/14

GOVEA, RONNIE                                    Confidential
MRN: 001104207 Acct #: 20712B414 Type: O
DOB: 04/18/1966 Age: 46Y Sex: M DOS: 05/08/2014
Ins: CAL MEDICAL FACILITY 942 F/C: 24
Loc: SPECIAL CARE CLINIC Atnd: WOLFSON, NIKOLAJ.

Patient Sticker

Circle One:

SSS/AM Admit/Inpatient     Security Patient: Yes / No     ICD-9: _____

Diagnosis: Failed stage 1 total kne Arthroplasty Revision RPr

Procedure: Stage 2 Revision LFT Failed Infected Total Kne

arthrop/asty

Surgeon: N. Wolson

RECEIVED
MAY 1 4 2014 OK
1006
CMFTRANSPORTATION
RN FRIEND

Urgency: ☐ 48-72 hrs ☐ 1 week ☐ Elective ☐ Other: _____

Estimated Length of Surgery: _____ Hrs/Mins

Medical Clearance: Y / N     By: ☐ Int/Family Med     FINANCIAL CLEARANCE:
                              ☐ Cardiac         (Is the patient financially cleared for surgery?)
                              ☐ Anesthesia
                              ☐ PCP             YES _____ NO

RECEIVED

H&P Done By:

ORTHO Surgeon: N. Wolson

OCT 1 5 2014
APPEALS
HC APP

Other: _____

post op: 6/10/14 08:30 am
mc
*

Special Requests (Implants/Equipment): Revision system DePuy

RECEIVED

C-Arm: Y /(N)     X-Ray (Y)/ N     Assistance: (Y)/ N     Blood: (Y) N     Type/Amount: 2 units PRR

Assistant: _____ / _____     Position: Spine     Table: _____

Special Pre-Op Instructions: _____

Special Considerations (I.E. Latex Allergy, Jehovah's Witness): _____

BREAKING NEWS: Class Action Lawsuit Atlas Chalet Shingles Defective, Deteriorating Prematurely in Florida
Class Action Lawsuit Atlas Chalet Shingles Defective, Deteriorating Prematurely in Florida



**PW Parker | Waichman LLP**
A NATIONAL LAW FIRM

**1-800-YOURLAWYER®**
**1-800-968-7529**

NEW YORK | LONG ISLAND | NEW JERSEY | WASHINGTON, D.C. | FLORIDA     Para Español Haga Clic Aqui     YOURLAWYER.COM®
Accidents   Class Action   Defective Drugs   Medical Devices   Medical Malpractice   Nursing Home   Product Liability   Other Practice Areas   About Us

Contact Us     Testimonials & Reviews     Verdicts     Our Team     PW Main Office     PW in the News     PW Blog

### DePuy Knee Replacement



Home » Topics » Defective Medical Devices » DePuy Knee Replacement

Share   Tweet   Stumble   Share   Pin it   email   print   g+1 1

## DePuy Knee Replacement Side Effects May Lead To Knee Replacement Failure Lawsuits

**DePuy Knee Replacement | Lawsuits, Lawyers | Side Effects: Loosening, Instability, Swelling, Knee Pain | Faulty Implant, Not Labeled Properly, Mis-Etched Size**

Have you suffered an early failure of a DePuy Orthopaedics knee replacement device? Premature failure of a knee implant can lead to severe injuries, as well as the need for painful revision surgery and rehab. Recovery from a failed joint implant such as a DePuy knee replacement can take as long as six months.

If your DePuy knee implant failed after just a few years, we want to hear from you today. Our DePuy knee replacement failure lawyers are offering free legal consultations to anyone who believes they were a victim of a faulty knee implant. You may be entitled to compensation for medical bills, lost wages, pain and suffering, and other damages. If your implant failed too early, we urge you to contact our DePuy knee replacement lawyers today to protect your legal rights.

## DePuy Knee Implant Recalls

In the past, DePuy knee implant recalls have been issued for various reasons. In 2001 for example, the British government's Medical Devices Agency issued a recall of knee implant Hylamer liners made by DePuy that had been sterilized with gamma radiation in air. The recall was conducted after a study showed that patients were showing a high failure rate -67.6 % within five years. That was thirteen times the expected failure rate for the device. The use of gamma radiation in air is known to increase the risk of oxidation, which can make an implant brittle and prone to breaking down. Because of this risk, manufacturers have begun using ethylene oxide, or gas plasma, to sterilize components.

In 2008, DePuy issued another recall on its LCS Knee Orthopedic Knee Implant - Meniscal bearing insert. This product is intended to replace a knee joint in order to relieve pain and restore function to the knee. The reason for the recall was that the product was not labeled properly and mis-etched as to size.

In 2009, DePuy issued an international recall of the LCS® Duofix™ Femoral Component (all lots). (This recall occurred outside the U.S., as the component has not been approved for sale by the U.S. Food & Drug Administration.) In its recall notice, the company said it identified increased revision rates associated with the LCS® Duofix™ Femoral Component, predominantly in Australia. The Australian revision rate in 2009 was 1.45% and the overall global revision rate with the LCS® Duofix™ femoral component in 2009 was 0.57%.

## Symptoms of Knee Implant Failures

How do you know if your DePuy implant is failing? If you experience any of the following symptoms past the normal knee implant surgery recovery period, you should contact your doctor immediately:

- **Loosening and Instability:** If your knee "gives out" when you stand or put weight on it, or you experience hyper-mobility (your knee is prone to moving unnaturally - backwards or sideways), something is likely wrong. This condition is worsened when the surrounding ligaments become inflamed as well and lose their tension

- **Swelling.** This is generally due to inflammation of the knee lining or synovium, which, in turn, causes increased production of fluid as a response to irritation. When the body cannot absorb the amount of fluid produced the effusion or accumulation causes swelling.

- **Heat or Warmth in the Knee:** This is a normal sensation for several months after knee surgery, but if it persists or comes back, there is a problem.

- **Pain:** This may manifest as a minor soreness or it can be an acute, severe pain that presents upon motion or as a constant throbbing.

If your doctor determines that your DePuy knee implant has failed, you will likely have to undergo revision surgery. Revision knee surgery is much more difficult than initial implantation and is often complicated by bone loss.

**DePuy Knee Replacement**

* Denotes required field.

* First Name

* Last Name

* Email

Phone

Cell Phone

Street Address

Zip Code

City

State    -Choose State-  ⌄

Date when device was implanted :
Month ⌄  Day ⌄ Year ⌄

Please describe any problems or injuries caused by the product:

⦿ No ◯ Yes, I agree to the Parker Waichman LLP disclaimers. Click here to review.

☑ Yes, I would like to receive the Parker Waichman LLP monthly newsletter, InjuryAlert.

**SUBMIT**
**FOR A FREE CASE REVIEW**





Legal Help for Victims

If you experienced an early failure of your DePuy knee implant, you may have valuable legal rights. To discuss your case with one of our DePuy knee replacement lawyers, please fill out our online form, or call 1-800-YOURLAWYER (1-800-968-7529) today.

Tags.

## DePuy Knee Replacement

### FDA Announces DePuy LPS Diaphyseal Sleeve Class I Recall

Feb 25, 2013

The U.S. Food & Drug Administration (FDA) just announced the Class I recall of DePuy Othopaedic's Limb Preservation System (LPS) Diaphyseal Sleeve. DePuy Orthopaedics is a unit of health care products giant, Johnson & Johnson. According to the federal regulator, the recalled DePuy LPS Diaphyseal Sleeve, which is used in knee arthroplasty revision surgery, was manufactured from 2008 to July 20, 2012. The recall followed reports of sleeve fracture at the taper joint and device..

FDA Announces DePuy LPS Diaphyseal Sleeve Class I Recall »

Share

### Potential Filing Deadline Looms Over DePuy ASR Hip Implant Lawsuits

Aug 29, 2012 | Parker Waichman LLP

Victims of the defective and recalled DePuy Orthopaedics ASR metal-on-metal hip implant may soon be out of time to file lawsuits against the manufacturer seeking damages for the injuries caused by those devices.According to a report at MassDevice.com, the two-year statute of limitations that many states follow expired over the past weekend. That milestone marks two years since the ASR hip implant was removed from the market (August 2010) because it had been linked to thousands of adverse event...

Potential Filing Deadline Looms Over DePuy ASR Hip Implant Lawsuits »

### Patients with Metal Hip Implants Scheduled for Revision Surgery Are Cautioned to Seek Legal Advice Prior to Surgery to Ensure Proper Preservation of Explanted Device

Aug 27, 2012 | Parker Waichman LLP

Parker Waichman LLP, a national law firm committed to protecting the rights of people injured by defective medical devices, is cautioning the victims of faulty hip implants, knee replacements and other medical devices to seek legal advice before undergoing revision surgery to have the device in question removed and replaced According to Parker Waichman LLP, the explanted medical device, as well as any surrounding tissue removed with the device, may prove to be crucial evidence in any...

Patients with Metal Hip Implants Scheduled for Revision Surgery Are Cautioned to Seek Legal Advice Prior to Surgery to Ensure Proper Preservation of Explanted Device »

### DePuy Comments at FDA Metal-on-Metal Hip Implant Hearing Prompt Strong Reaction

Jul 2, 2012 | Parker Waichman LLP

Comments made last week by a spokesperson for DePuy Orthopaedics regarding its line of metal-on-metal hip implants has drawn the ire of at attorney at the national law firm of Parker Waichman LLP, which represents numerous victims of these device's defects.Daniel Burke, Senior Litigation Counsel at the firm, said in response to comments offered to a Food and Drug Administration panel last week investigating the safety and future use of all-metal hips that the DePuy logic goes against the...

DePuy Comments at FDA Metal-on-Metal Hip Implant Hearing Prompt Strong Reaction »

### Study Sees no Cancer Risk with Metal-on-Metal Hip Implants, but Can't Rule out Possible Association

Apr 9, 2012 | Parker Waichman LLP

A new study involving metal-on-metal hip implants has found no link between the devices and an increased risk of cancer. However, the study, published in the British Medical Journal, followed patients with all-metal hip replacements for less than a decade and even its authors concede that metal-on-metal hip implant patients will need to be monitored for far longer before any cancer danger can truly be ruled out.For this latest study, researchers from the BMJ from the University of...

Study Sees no Cancer Risk with Metal-on-Metal Hip Implants, but Can't Rule out Possible Association »

More DePuy Knee Replacement News





PARKER WAICHMAN LLP

Best Lawyers
TOP LISTED IN




LAWDRAGON
LAWYER PROFILES AND LEGAL NEWS



HAVE A
?
CLICK
HERE
FOR A
FREE
CASE
REVIEW

PW Parker | Waichman LLP
A NATIONAL LAW FIRM

| Offices | Your Lawyer | | Connect With Us! |
|---|---|---|---|
| NEW YORK | Contact Us | Firm Testimonials | ParkerWaichmanLLP |
| LONG, ISLAND | About Us | Espanol Version | @ParkerWaichman |
| NEW JERSEY | Firm News | Site Map | parkerwaichman |
| FLORIDA | Blog | RSS Feed | parkerwaichmanllp |
| WASHINGTON D.C. | Firm Settlements | | |

Share

©2002-2014 YourLawyer.com™ All Rights Reserved
Please note that you are not considered a client until you have signed a retainer agreement and your case has been accepted by us
Prior results do not guarantee or predict a similar outcome with respect to any future matter. | Attorney Advertising

[PROTECTED BY COPYSCAPE DO NOT COPY] php-5 VendorsBay inc.

Search






# SAN JOAQUIN GENERAL HOSPITAL
500 W. Hospital Road
French Camp, CA 95231

Confidential

GOVEA, RONNIE
MRN: 001104207 Acct #: 207314493 Type: I
DOB: 04/18/1968 Sex: M PRE: 06/04/2014
Ins: CAL MEDICAL FACILITY 942  F/C: 24
Loc: Atnd: WOLFSON, NIKOLAJ

V21557

Physician's Begin Here

Registered Nurses Begin Here

Technical & Others Begin Here

06/04/2014

14:45

| REF | LOT | |
|-----|-----|---|
| 545050501 | 3623619 | 2015-06 |

SmartSet GMV
GENTAMICIN Bone Cement **40g**

DePuy International Ltd
T/A DePuy CMW
Blackpool FY4 4QQ England

PAT545050501

| REF | LOT | |
|-----|-----|---|
| 545050501 | 3623619 | 2015-06 |

SmartSet GMV
GENTAMICIN Bone Cement **40g**

DePuy International Ltd
T/A DePuy CMW
Blackpool FY4 4QQ England

PAT545050501

*(handwritten notes at right)*

---

REF 96-2364  LOT 432861
SIGMA®
TIBIAL INSERT
ROTATING PLATFORM TC3
SIZE 5 17.5mm GVF
(01)10603295242838
(17)181031(10)432861

STERILE R  2018-10
QTY 1

REF 96-0783  LOT 461933
P.F.C.® SIGMA®
FEMORAL ADAPTER BOLT
NEUTRAL
(01)10603295223930
(17)23113(10)461933

STERILE R  2023-11
QTY 1

---

REF 96-0781  LOT 516749
P.F.C.® SIGMA®
FEMORAL ADAPTER
5 DEGREE
(01)10603295233918
(17)240331(10)516749

STERILE R  2024-03
QTY 1

REF 96-0908  LOT 410623
P.F.C.® SIGMA®
POSTERIOR AUGMENT COMBO  CEMENTED
SIZE 5 9mm
(01)10603295234517
(17)230831(10)410623

STERILE R  2023-08
QTY 1

---

REF 96-0902  LOT 413749
P.F.C.® SIGMA®
DISTAL AUGMENT
SIZE 5 8mm LEFT
(01)10603295234487
(17)230831(10)413749

STERILE R  2023-08
QTY 1

REF 96-0908  LOT 423893
P.F.C.® SIGMA®
POSTERIOR AUGMENT COMBO  CEMENTED
SIZE 5 9mm
(01)10603295234517
(17)230*54719

STERILE R  2023-09
QTY 1

---

REF 96-0900  LOT 265331
P.F.C.® SIGMA®
DISTAL AUGMENT
SIZE 5 4mm LEFT
(01)10603295234463
(17)220731(10)265331

STERILE R  2022-07
QTY 1

REF 96-0084  LOT 434719
SIGMA®
FEMORAL
TC3 CEMENTED
SIZE 5 LEFT
(01)10603295232513
(17)230831(10)434719

STERILE R  2023-09
QTY 1

---

REF 1294-53-230  LOT 506149
UNIVERSAL FEMORAL SLEEVE
FULL POROUS
40mm
(01)10603295028334
(17)240331(10)506149

STERILE R  2024-03
QTY 1

REF 86-7426  LOT 287094
UNIVERSAL STEM FLUTED
115mm x 12mm
(01)10603295217893
(17)220930(10)287094

STERILE R  2022-09
QTY 1

TOCK (08/25/10)
RED. 6529 (02/10)

SAN JOAQUIN GENERAL HOSPITAL
500 W. Hospital Road
French Camp, CA 95231

Confidential

GOVEA, RONNIE
MRN: 001104207  Acct #: 207314493  Type: I
DOB: 04/18/1968  Sex: M  PRE: 06/04/2014
Ins: CAL MEDICAL FACILITY 942  F/C: 24
Loc: Atnd: WOLFSON, NIKOLAJ

Physician's
Begin Here

Registered Nurses
Begin Here

Technical & Others
Begin Here

√ 21557

---

LO.

REF 86-7412     LOT 458881

UNIVERSAL STEM FLUTED
75mm x 12mm
(01)10603295217817
(17)231130(10)458881

STERILE|R  ⓨ 2023-11

QTY 1

REF 1294-54-100  LOT 504785
M.B.T. REVISION
METAPHYSEAL SLEEVE POROUS
37mm
(01)10603285028419
(17)240229(10)504785

STERILE|R  ⓨ 2024-02

QTY 1

---

REF 1294-35-140  LOT 484671
TIBIAL TRAY ROTATING PLATFORM
M.B.T. REVISION
SIZE 4 CEMENTED
(01)10603295025978
(17)240131(10)484671

STERILE|R  ⓨ 2024-01

QTY 1

REF 96-0103     LOT D13113152  ⓨ 2018-10
OVAL DOME PATELLA 3-PEG , 41mm
(01)10603295232638
(17)181031(10)D13113152

● DePuy      ▰ DePuy Orthopaedics, Inc.

---

Item # 587 CEDUF STOCK (08/25/10)
Host 6528 (08/10)

PCP DR. Aguilera
I-125

## OFFICE VISIT NOTE

**ADMITTED**: 08/19/2013
**DOB**: 04/18/1968

### CDCR# V21557
### CUSTODY INSTITUTION: CMF TM CA MED FACIL CDCR, CMF

CHIEF COMPLAINT: The patient is well-known to me. The patient is an insulin-dependent diabetic who is status post major complex revision, total knee replacement, which got infected. This required removal of all of the components with placement of an antibiotic spacer and cement.

The patient had re-aspiration of the knee, which was negative for evidence of infection.

The patient had a second opinion from another community orthopedic surgeon who felt that another attempt at revision would be not be effective, as there is a very high likelihood of another infection of the knee.

On examination, the patient has some swelling, but no redness or induration. Range of motion is from zero to 90 degrees.

There are no recent films available for review. There are no laboratories to review.

IMPRESSION: Status post removal of hardware and antibiotic therapy for infected total knee replacement.

PLAN: I told the patient to consider an above-knee amputation, the reason being is that he is most likely going to experience good functional outcome from this procedure, combined with a good prosthetic.

I am also similarly apprehensive about pursuing a major revision knee replacement in Mr. Govea due to his history of infection and insulin-dependent diabetes.

I think he should consider a third opinion regarding a complex total knee replacement procedure with UC Davis. I have also explained to the patient that it is not just placing the knee prosthesis, but also dealing with the soft tissue and the extensor mechanism. He may not end up with a good range of motion following such a procedure.

The patient can followup with me on a p.r.n. basis.

CDCR OFFICE VISIT NOTE

Page 1 of 2

TRI-CITY MEDICAL CENTER
4002 Vista Way
Oceanside, CA 92056

GOVEA, RONNIE
MR #01258830          RM #TELE
DOB: 04/18/1968       AGE: 45
CC TO: CMF TM CA MED FACIL CDCR, CMF

## Original Telemedicine Report

Confidential Saved 2013-09-15T17:23:48Z

DICTATED: CHRISTIAN BENTLEY, M.D.

CB/ID3355/clc
D: 08/19/2013 3:25 P
T: 08/20/2013 12:48 P
#010550298
cc:     CHRISTIAN BENTLEY, M.D.
        CMF TM CA MED FACIL CDCR, CMF



CDCR OFFICE VISIT NOTE

TRI-CITY MEDICAL CENTER

Page 2 of 2

                                GOVEA, RONNIE
                                MR #01258830  RM #TELE
                                DOB: 04/18/1968  AGE: 45
                                CC TO:  CMF TM CA MED FACIL CDCR, CMF

# Original Telemedicine Report

Confidential Saved 2013-09-15T17:23:48Z



# KOSZDIN, FIELDS, SHERRY & KATZ

Susan E. Fields *
Mark J. Sherry *
Robert A. Katz *

* *Certified Specialist,*
*Workers' Compensation,*
*The State Bar of California,*
*Board of Legal Specialization*

6151 Van Nuys Boulevard
Van Nuys, California
91401
(818) 781-1503
FAX (818) 989-5288

<u>Office Manager</u>
Annys Friedman

<u>Legal Assistants</u>
Richard Mayer
Dee Thierry

March 18, 2013

State Compensation Insurance Fund
Post Office Box 3171
Suisun City, California 94585
Attn: Marciela Wilson, Claims Examiner

RE:  Ronnie Govea vs. California Correctional Institute
     Claim No:    TL169342

Dear Ms. Wilson:

I have received correspondence from my client, indicating that he has been recently seen by yet another orthopedic surgeon at "San Joaquin Hospital" in Stockton, California. That doctor spoke to the applicant about having to either fuse his leg or possibly even amputate it. He took some blood tests and said that he would get back to my client in four weeks.

I understand that it is a known fact at the correctional institute that the medical care provided there is sub-standard, and with a condition as serious as my client's, he should be treated elsewhere.

Please authorize a transfer for the applicant to either U.C. Davis or USF, which are both in close proximity to the applicant and provide much better care.

Thank you for your attention to this letter.

Very truly yours,

KOSZDIN, FIELDS, SHERRY & KATZ

MARK J. SHERRY
MJS:chp-3-1JMS4

cc:    Mr. Ronnie Govea
       #V-21557
       California Medical Facility I-1, #125
       Post Office Box 2500
       Vacaville, California 95696

# EXHIBIT-C
## MEDICAL RECORDS

John M. Dowbak, MD

**SAN JOAQUIN GENERAL HOSPITAL**

**CONSULTATION**

V2155?

PATIENT: GROVEA, RONNIE
MR#: 1104207
ADMIT DATE: 02/25/2013
LOCATION: SPEC CR CL
DOB: 04/18/1968

DATE OF CONSULTATION: 02/25/2013

CONSULTING PHYSICIAN: John M Dowbak, MD

REFERRING PHYSICIAN:

HISTORY: Please be advised I had the pleasure of seeing the above patient today who is serving a life sentence and has already completed 7 years of a life sentence, who apparently had left knee problems in the past. He had meniscectomies in the past and this culminated in 2009 at Bakersfield with a left total knee arthroplasty. Apparently he had instability of his left knee, and he lived with instability of his left knee for approximately 2-1/2 years. The patient was seen by Dr. Gaal at San Joaquin and apparently he had surgery by Dr. Bentley in San Diego in early 2012. In early 2012 he had a revision left total knee arthroplasty and unfortunately this became infected. He had the metal removed and a spacer applied for 2 months and had a third surgery with a total knee replacement. Unfortunately this culminated in a new infection which and on 10/29/2012 he had his third total knee removed and a spacer applied. It came back methicillin-sensitive Staph aureus and culture results were obtained from San Joaquin Valley Hospital. The patient also has had compliance issues with a PICC line placement and IV antibiotics. He also has been a diabetic since 2004. The patient comes in today with a knee immobilizer in place and would like to have his knee replaced. The patient has a history of uncontrolled diabetes mellitus as well. The patient has been ambulating with toe touch weightbearing with a knee immobilizer. He takes morphine 10-20 mg three times a day for his pain. The patient has been treated with IV vancomycin in the past and his pain was controlled with IV Dilaudid. He has had a deep venous thrombosis workup in the past which was negative. A culture report on 02/07/2013 showed no growth with 2800 nucleated cells, 85% neutrophils, 4% lymphocytes with the appearance clear hazy. His sedimentation rate on 10/23/2012 was 62 with a white count of 8400. He is now here for consultation purposes.

On examination today, the patient has approximately a 3/4 inch leg length discrepancy on the left side compared to the right. Range of motion with crepitation is 0-85 degrees with instability. There is global swelling of the left knee but capillary refill is less than 2 seconds. There is no neurological deficits. Capillary refill is less 2 seconds. The patient has a warm extremity with slightly decreased proprioception of left leg.

X-rays of the left knee were done along with the left femur and left tibia which shows an antibiotic spacer in place. The patient has cement up his left femur in the intramedullary aspect and has a fair amount of cement at the articulation site of his patella, femur and tibia, as expected for antibiotic spacer.

CONSULTATION

Page 1 of 2

FEB 2 6 2013

John M. Dowbak, MD

**SAN JOAQUIN GENERAL HOSPITAL**

CONSULTATION

PATIENT: GROVEA, RONNIE
MR#: 1104207
ADMIT DATE:02/25/2013
LOCATION:SPEC CR CL
DOB:04/18/1968

RECOMMENDATION: The best course of action at the present time is to repeat the sedimentation rate, CBC, a hemoglobin Alc, and a C-reactive protein. The patient was told that it is completely unrealistic to expect a new total knee arthroplasty, not with 3 knee surgeries that have gone awry secondary to infection and loosening. The patient was told that he has immunocompromised secondary to his diabetes and to his multiple infections and the only recourse for him which I think is reasonable would be to fuse his left knee and to take out the spacer. This may allow him to walk but with a 1.5 inch leg length discrepancy which can be corrected with an elevated shoe lift. We will see the patient back in 4 weeks time to determine what course of action he would like to have done. We will assess his hemoglobin Alc, his lab values to see if there is any residual infection.

Thank you for allowing us to see the above patient.


Voice #552512402/Job #168978
D: 02/25/2013 09:36:00
T: 02/25/2013 10:43:00
JMD:jbl

John M. Dowbak, MD

cc: Joseph Bick, MD

CONSULTATION
Page 2 of 2

Electronically signed by DOWBAK, JOHN M on 2013-02-25 12:57:40

# ATTACHMENT

**SAN JOAQUIN GENERAL HOSPITAL**

**CONSULTATION**

V21557

John M. Dowbak, MD

PATIENT: GOVEA, RONNIE
MR#: 1104207
ADMIT DATE: 03/25/2013
LOCATION: SPEC CR CL
DOB: 04/18/1968

DATE OF CONSULTATION: 03/25/2013

CONSULTING PHYSICIAN: John M Dowbak, MD

REFERRING PHYSICIAN: BICK - CMF, JOSEPH

To the California Medical Facility

Please be advised I had the pleasure of seeing the above patient today who is 5 months post insertion of a left knee spacer for recurrent infection of his left total knee arthroplasty. He has had multiple surgeries for left knee arthroplasties and revisions dating back since 2009. The patient is now here for follow up care.

All wounds of his left leg are well healed.

The patient's white count is 5900, and his hematocrit is 39, his hemoglobin A1c is 7.6, high. His sedimentation rate is 2 and his C-reactive protein is 0.2.

The patient has a resolved left knee infection. The spacer has worked to eradicate as much of the infection as possible. The patient was scheduled for a hinged Zimmer revision total knee arthroplasty at Ocean Side, and he still wants this type of procedure. The patient was told that he has cement up and down his medullary canal. His medullary canal of his tibia and femur were very thin, and it was felt that it is not in the patient's best interest to undergo another knee arthroplasty as this would be 4 that he would have. The patient wishes to be seen by the doctor at Ocean Side who recommended a hinged total knee arthroplasty revision. He refuses an arthrodesis with removal of the spacer.

If the patient refuses a knee arthrodesis at this institution, then it is reasonable to have the patient return to Oceanside where they put the spacer in, then recommended a hinged total knee arthroplasty with removal of spacer. I feel that the probability of having a successful surgery is very limited and fraught with multiple complications.

The patient was told to see the doctors in Oceanside if he wants a knee reconstruction; otherwise, we will see him back on a p.r.n. basis.

Voice #556427774/Job #337094
D: 03/25/2013 09:26:00
T: 03/25/2013 11:51:00
JMD:medq

John M. Dowbak, MD



RECEIVED
OTLA-HC
FEB 20 2014
HC APPEALS

**CONSULTATION**

Page 1 of 1

MAR 2 9 2013

Electronically signed by DOWBAK, JOHN M on 2013-03-25 13:54:36

12.

Confidential Saved 2013-05-17T23:05:33Z

PCP OR. Aguilera
I-125

## OFFICE VISIT NOTE

**ADMITTED:** 08/19/2013
**DOB:** 04/18/1968

## CDCR# V21557
CUSTODY INSTITUTION: CMF TM CA MED FACIL CDCR, CMF

CHIEF COMPLAINT: The patient is well-known to me. The patient is an insulin-dependent diabetic who is status post major complex revision, total knee replacement, which got infected. This required removal of all of the components with placement of an antibiotic spacer and cement.

The patient had re-aspiration of the knee, which was negative for evidence of infection.

The patient had a second opinion from another community orthopedic surgeon who felt that another attempt at revision would be not be effective, as there is a very high likelihood of another infection of the knee.

On examination, the patient has some swelling, but no redness or induration. Range of motion is from zero to 90 degrees.

There are no recent films available for review. There are no laboratories to review.

**IMPRESSION:** Status post removal of hardware and antibiotic therapy for infected total knee replacement.

PLAN: I told the patient to consider an above-knee amputation, the reason being is that he is most likely going to experience good functional outcome from this procedure, combined with a good prosthetic.

I am also similarly apprehensive about pursuing a major revision knee replacement in Mr. Govea due to his history of infection and insulin-dependent diabetes.

I think he should consider a third opinion regarding a complex total knee replacement procedure with UC Davis. I have also explained to the patient that it is not just placing the knee prosthesis, but also dealing with the soft tissue and the extensor mechanism. He may not end up with a good range of motion following such a procedure.

The patient can followup with me on a p.r.n. basis.

CDCR OFFICE VISIT NOTE

Page 1 of 2

TRI-CITY MEDICAL CENTER
4002 Vista Way
Oceanside, CA 92056

GOVEA, RONNIE
MR #01258830         RM #TELE
DOB: 04/18/1968      AGE: 45
CC TO: CMF TM CA MED FACIL CDCR, CMF

## Original Telemedicine Report

Confidential Saved 2013-09-15T17:23:48Z

DICTATED: CHRISTIAN BENTLEY, M.D.

CB/ID3355/clc
D: 08/19/2013 3:25 P
T: 08/20/2013 12:48 P
#010550298
cc:    CHRISTIAN BENTLEY, M.D.
       CMF TM CA MED FACIL CDCR, CMF

CDCR OFFICE VISIT NOTE

Page 2 of 2

TRI-CITY MEDICAL CENTER

GOVEA, RONNIE
MR #01258830  RM #TELE
DOB: 04/18/1968  AGE: 45
CC TO: CMF TM CA MED FACIL CDCR, CMF

## Original Telemedicine Report

Confidential Saved 2013-09-15T17:23:48Z

## Orthopedics Telemedicine Clinic Dr. Bentley

| Date | Time | |
|------|------|--|
| 08/19/13 | 1434 | V/S: BP-102/64  T- 98.7   P- 73   R- 14   O2 Sat= 99% |
| | | Pt. is A/O x-3. I/P is in a wheelchair. Lung sounds clear bilaterally. Cardio-RRR |
| | | Skin is warm and dry to touch. I/P removed brace from left leg. Noted moderate amount of |
| HT:5'7 | | swelling around left knee. No swelling noted to right knee. No lower leg edema noted bilat. |
| WT: 177lbs | | I/P able to bend left knee without difficulty, however, he is unable to apply any weight-bearing |
| | | to left leg. I/P here today to follow up with Dr. Bentley regarding his left knee pain. He was |
| | | last seen by Dr. Bentley when housed at PVSP. Notes from SJGH visit, recent labs, x-ray reports, |
| | | medication profile, and PCP progress notes sent to Dr. Bentley's office via MedWeb last week. |
| | | I/P was cooperative with assessment/evaluation process. Dr. Bentley discussed Dr. Dowbak's |
| | | (Orthopedist from SJGH) notes/recommendations with patient. I/P informed Dr. Bentley |
| | | that he "really wants to have a 4th left knee surgery because he feels that he'll have better |
| | | rehab therapy and better care, now that he's at CMF." Dr. Bently told I/P that he should |
| | | consider an above-the knee amputation. He explained in detail the risks of surgery and the |
| | | fact that the pt. has diabetes, HTN, high cholesterol and history of post-op infections. I/P was |
| | | very insistent about "wanting to give it another try with surgery." Dr. Bentley stated that he |
| | | "will recommend that I/P consider a 3rd opinion with a UCDavis regarding surgery, however, |
| | | his recommendation is for an above-the knee amputation."  Today's clinic notes will be sent |
| | | to patient's PCP upon receipt.-----------------------------------Huliganga, R.N. |
| | | ALLERGIES: NKDA |

INSTITUTION  CMF    I-125-L

CDC NUMBER, NAME (LAST, FIRST, MI) DATE OF BIRTH

V21557
Govea, Ronnie
DOB: 04/18/68
PCP: Dr. Aguilera

## INTERDISCIPLINARY PROGRESS NOTES
CDC 7230 (REV 04/03

**Original Telemedicine Report**

Confidential Saved 2013-09-15T17:23:48Z

Nikolaj Wolfson, MD

**SAN JOAQUIN GENERAL HOSPITAL**

**HISTORY & PHYSICAL**
**PRE-ADMIT**

V21557

**PATIENT:** GOVEA, RONNIE
**MR#:** 1104207
**ADMIT DATE:** 06/04/2014
**LOCATION:** PACU
**DOB:** 04/18/1968

CHIEF COMPLAINT: Staged revision, left infected total knee arthroplasty.

HISTORY OF PRESENT ILLNESS: The patient is a 46-year-old inmate whose history is previously dictated. He underwent left total knee arthroplasty a few years ago. This became infected and required revision in San Diego. The revision was done on October 21st. Cemented spacer was placed into the knee joint.

The patient's past history is positive for type C hepatitis. He is otherwise well.

PHYSICAL EXAMINATION: NECK: No neck tenderness or lymphadenopathy.
GENERAL: Multiple tattoos.
CHEST: Clear. S1, S2 normal.
EXTREMITIES: Left leg neurovascularly intact. Significantly swollen left knee. Multiple scars.

X-RAYS: Cemented Prostalac type knee arthroplasty.

The patient had aspiration from his left knee performed by me and this did not reveal any white cells or bacteria.

DISCUSSION: I discussed with the patient his condition. He is awaiting a stage II revision. This can be done and I described the risks and benefits of the procedure. It will be extensive surgery. It may require hinged prosthesis. Appropriate arrangements will be made once the financial clearance obtained.

Voice #610177417/Job #249006
D: 05/08/2014 15:53:00
T: 05/08/2014 16:07:00
NW:medq

Nikolaj Wolfson, MD

Electronically signed by WOLFSON, NIKOLAJ on 2014-06-04 18:13:05

# PRELIMINARY

Nikolaj Wolfson, MD

**SAN JOAQUIN GENERAL HOSPITAL**

REPORT OF OPERATION

V 2157

PATIENT: GOVEA, RONNIE
MR#: 1104207
ADMIT DATE: 06/04/2014
LOCATION: 3B MED/SG
DOB: 04/18/1968

OPERATION PERFORMED: Left total knee revision arthroplasty stage II.

DATE OF OPERATION: 06/04/2014

SURGEON: Nikolaj Wolfson, MD

PREOPERATIVE DIAGNOSIS: Failed left total knee arthroplasty, staged knee revision arthroplasty.

ANESTHESIA: General.
ANESTHESIOLOGIST: David Edelsohn, MD

The patient came to the hospital for his elective left knee arthroplasty. After discussing with the patient the procedure and risks involved, the left leg was marked.

PROCEDURE: The patient was brought to the OR. Placed on OR table in supine position. General anesthesia applied. Left leg prepped and draped in the usual fashion. Surgical time-out performed. The previously utilized incisional medial scar approach. Medial arthrotomy performed. 80 mL of fluid aspirated and sent for:

1. Cell _____ power field account.

2. Cultures and sensitivity. The knee fluid looked pretty much clear. There was no grossly infected tissue identified. The cemented knee temporary spacer prosthesis was solid and removed uneventfully. The bone was substantial both on the femoral and tibial side to a lesser extent. Intramedullary canal entered to both sides and reamed.

Attention brought to the tibial side first. Tibial side prepared nicely.

The tibial side was prepared using PFC. A long tibial component with femoral 40 mm sleeve and a tibial rotating platform, size 4, and 75 mm x 12 mm stem.

The distal femur and femoral revision component required also Sigma size 5 PS revision stem with posterior augments 8 mm on the medial side, 8 mm on the lateral side, as well as 115 mm x 12 fluted stem. The trials were performed. Intraoperative x-rays were taken and knee was actually well balanced. After trials were performed and the knee was irrigated with normal saline, the permanent components were inserted using gentamicin bone cement on the tibial, femoral, and patellar site which was resurfaced with a size 41 patella. I was quite pleased with the overall alignment and stability achieved. Tourniquet initially was used for 128 minutes. It was deflated for almost an hour, and reinflated for 25 minutes during this cementation part of the procedure.

Arthrotomy was closed using #2 Vicryl, 0 Vicryl used to close the deep subcutaneous layer. Skin closed using nylon 3-0. Sterile dressing

# PRELIMINARY

Nikolaj Wolfson, MD

**SAN JOAQUIN GENERAL HOSPITAL**

REPORT OF OPERATION

V21557

PATIENT: GOVEA, RONNIE
MR#: 1104207
ADMIT DATE: 06/04/2014
LOCATION: 3B MED/SG
DOB: 04/18/1968

applied.  Peripheral pulse palpated.

PLAN: The patient will be seen by physical therapy. He will be on Lovenox prophylaxis. He is allowed to weight bear as tolerated. X-rays taken today at the end of the procedure confirmed excellent alignment.

Voice #613493906/Job #372009
D: 06/04/2014 16:49:00
T: 06/05/2014 13:15:00
NW:medq

Nikolaj Wolfson, MD

REPORT OF OPERATION
Page 2 of 2

# PRELIMINARY

Nikolaj Wolfson, MD

**SAN JOAQUIN GENERAL HOSPITAL**

TRANSFER SUMMARY

$\sqrt{2155}7$

PATIENT: GOVEA, RONNIE
MR#: 1104207
ADMIT DATE: 06/04/2014
TRANSFERRED DATE: 06/06/2014
LOCATION: 3C MED/SG
DOB: 04/18/1968

ADMISSION DIAGNOSIS: Previously failed infected left total knee arthroplasty stage I.

DIAGNOSIS ON TRANSFER: Status post stage II revision of failed left total knee arthroplasty.

PROCEDURE PERFORMED: Stage II revision left total knee arthroplasty.

HOSPITAL COURSE: The patient is a 46-year-old inmate with previously failed and revised total knee arthroplasty. He had a cement spacer in his knee. Preoperatively there was no evidence of infection.

On the day of patient admission, patient underwent a revision of his total left knee arthroplasty. I used DuPuy revision system with the proximal and distal stents and cement with antibiotics. The intraoperative course was unremarkable. The patient is doing very well. Today he is comfortable. Pain is well controlled. He is neurovascularly intact. His hemoglobin is 9.1.

In my opinion, patient can be transferred to the prison medical facility. He is allowed to weight bear as tolerated, and will need extensive physical therapy. For DVT prophylaxis, I would recommend aspirin for 3-4 weeks. I will follow him to the outpatient clinic.

ADDENDUM: Patient's discharge has been postponed by one day due to the pain management. He is doing well.

He obviously will require more pain medications with his stage 2 revision arthroplasty. I would suggest Percocet 5-10 mg/325 every four hours p.r.n. Motrin obviously will not be sufficient. He also will be on enteric-coated aspirin 325 mg once a day for two weeks, and dressing changes should start on Tuesday on a daily basis. He is allowed to weight bear as tolerated and he will have physical therapy three times a week. It will be long route for him to achieve better range of motion due to the fact that he was immobilized for so long.

Voice #613616804/Job #312652
D: 06/05/2014 13:35:00
T: 06/05/2014 14:15:00
NW:jbl

Nikolaj Wolfson, MD

Nikolaj Wolfson, MD

**SAN JOAQUIN GENERAL HOSPITAL**

**PROGRESS NOTE**

V21557

PATIENT: GOVEA, RONNIE
MR#: 1104207
ADMIT DATE:06/16/2014
LOCATION:SPEC CR CL
DOB:04/18/1968

DATE OF VISIT: 06/16/2014

HISTORY/PLAN: The patient is back for follow-up after his total knee
revision arthroplasty, left knee. He is doing great. His swelling is
coming down. His incision is clean. He is neurovascularly intact.

I understand the patient is going through physical therapy and having
CPM.

X-ray taken today showed that the implant is in good position.

In my opinion the patient should have his sutures removed in about 10
days. He should be moving indeed his knee and he is allowed to weight
bear as tolerated. Nevertheless, I would not use CPM. I think it would
be wise to arrange a long hinged left leg brace so it can protect him for
now since there is always the risk of mechanical loosening. We will
follow him up in about 9 to 10 days for suture removal, and another time
in about six weeks.

Voice #614856149/Job #394619
D: 06/16/2014 09:57:00            Nikolaj Wolfson, MD
T: 06/16/2014 13:04:00
NW:jbl

cc: Joseph Bick, MD

**PROGRESS NOTE**

Page 1 of 1

Electronically signed by WOLFSON, NIKOLAJ on 2014-06-17 17:30:50

James S. Pucelik, MD

**SAN JOAQUIN GENERAL HOSPITAL**

**ORTHOPEDIC CONSULTATION**

PATIENT: GOVEA, RONNIE
**MR#:** 1104207
LOCATION: SPEC CR CL

$V21557$

DOB: 04/18/1968

DATE OF CONSULTATION: 06/27/2014

CONSULTING PHYSICIAN: James S Pucelik, MD

REFERRING PHYSICIAN: Joseph Bick, MD

This 46-year-old male had a fourth knee inserted into the left knee approximately three weeks ago by Dr. Wilson. The wound looks good. The sutures were removed, and the knee was re-dressed. It was noted on the lab studies that were sent from the facility that the patient has an urinary tract infection with greater than 100,000 E coli growing. He is being treated now with Bactrim 1 b.i.d. I would increase that 2 b.i.d. and keep it going for two weeks, and then recheck his urinalysis and return to clinic here to check the knee.

Voice #616366451/Job #359072
D: 06/27/2014 14:16:00
T: 06/27/2014 19:46:00
JSP:medq

James S. Pucelik, MD

cc: California Medical Facility

**ORTHOPEDIC CONSULTATION**

Page 1 of 1

Electronically signed by PUCELIK, JAMES S on 2014-06-30 14:11:08

Jerry C. Crooks, MD

**SAN JOAQUIN GENERAL HOSPITAL**

**ORTHOPEDIC CONSULTATION**

PATIENT: GOVEA, RONNIE
MR#: 1104207
LOCATION:SPEC CR CL

V21557

DOB:04/18/1968

DATE OF CONSULTATION: 07/11/2014

CONSULTING PHYSICIAN: Jerry C Crooks, MD

REFERRING PHYSICIAN: BICK - CMF, JOSEPH

Patient inmate at Cal Medical Facility. He is here for followup of total knee replacement revision by Dr. Wolfson. He is in physical therapy. He has considerable instability in his knee, appropriate for the multiple operations he has. He does have a hinged knee brace in place. Examination of his knee reveals 10 to 90 degree range of motion, global laxity, mild diffusion.

RECOMMENDATION: Wear hinged knee brace. Continue therapy. Return to clinic followup in four weeks. X-ray left knee including the entire length of the prosthesis in the femur and tibia.

Voice #617927317/Job #386142
D: 07/11/2014 09:29:00
T: 07/11/2014 13:26:00
JCC:medq

Jerry C. Crooks, MD

**ORTHOPEDIC CONSULTATION**

Page 1 of 1

Electronically signed by CROOKS, JERRY C on 2014-07-14 08:32:10

Confidential Printed 2015.03.17 08:35:33 -07'00'

James S. Pucelik, MD

**SAN JOAQUIN GENERAL HOSPITAL**

ORTHOPEDIC CONSULTATION

**PATIENT:** GOVEA, RONNIE
**MR#:** 1104207
LOCATION:SPEC CR CL

√21557

DOB:04/18/1968

DATE OF CONSULTATION: 08/15/2014

CONSULTING PHYSICIAN: James S Pucelik, MD

REFERRING PHYSICIAN: Joseph Bick, MD

This 46-year-old male had several revisions of a left total knee. The last one was done approximately three months ago and the wound has healed up, but the problem has been that the patient has been left with an unstable knee. It is globally unstable and mostly from medial to lateral, but the range of motion is +10 to about 80 degrees. My recommendations would be to get a custom molded hinged knee brace to stabilize it medially and laterally and see if that will stabilize the situation to some extent. The patient then should return to see Dr. Wolfson in one month on a Thursday morning.

Voice #622158086/Job #515157
D: 08/15/2014 09:04:00
T: 08/15/2014 15:45:00
JSP:medq

James S. Pucelik, MD

ORTHOPEDIC CONSULTATION
Page 1 of 1

AUG 1 9 2014

Electronically signed by PUCELIK, JAMES S on 2014-08-18 12:41:01



PRELIMINARY

SEP 2 8 2014

Jerry C. Crooks, MD

**SAN JOAQUIN GENERAL HOSPITAL**

**ORTHOPEDIC CONSULTATION**

**PATIENT:** GOVEA, RONNIE
**MR#:** 1104207
**LOCATION:** SPEC CR CL

V21557

**DOB:** 04/18/1968

DATE OF CONSULTATION: 09/25/2014

CONSULTING PHYSICIAN: Jerry C Crooks, MD

REFERRING PHYSICIAN: Joseph Bick, MD

Patient inmate at Cal Medical Facility. Patient is here, followup left total knee replacement. He continues to have problems with instability. He has had multiple surgeries on the left knee. It was suggested on his last visit to have a knee brace and they have offered to have a Breg X2K brace. I feel that that would be satisfactory. On examination, he has range of motion 5-105. 3+ lax, medial collateral ligament. Also some anterior instability. Left leg is about a half inch short compared to the right.

RECOMMENDATION: Continue therapy two times a week for eight weeks. Quad and hamstring exercises. Obtain the Breg X2K knee brace for the left knee. A half-inch lift in the heel, left shoe. Return to clinic, followup, two months.

Voice #627196096/Job #544207
D: 09/25/2014 15:13:00
T: 09/25/2014 19:42:00
JCC:medq

_____
Jerry C. Crooks, MD

**ORTHOPEDIC CONSULTATION**

Page 1 of 1

Nikolaj Wolfson, MD

**SAN JOAQUIN GENERAL HOSPITAL**

**PATIENT:** GOVEA, RONNIE
**MR#:** 1104207
**LOCATION:** SPEC CR CL

ORTHOPEDIC CONSULTATION

V21557

**DOB:** 04/18/1968

DATE OF CONSULTATION: 10/20/2014

CONSULTING PHYSICIAN: Nikolaj Wolfson, MD

REFERRING PHYSICIAN: Dorothy Swingle, MD

The patient is back for a followup of his revised left total knee arthroplasty. He had a cemented spacer for a couple of years and revision worked very well. It was revised with the DePuy rotating platform knee. Patient complains that after some walking, his knee is starting to give out. He does not feel secure. No obvious pain.

On examination, the left knee had the typical post number of surgery scarring and mild swelling. No warmth. Incisions healed nicely. Indeed, the knee is unstable with the valgus producing stress, more indicative of MCL insufficiency and to a lesser extent LCL. Anterior drawer is 1+, actually not that bad.

X-rays reviewed showed well aligned revised total knee arthroplasty.

In my opinion, at this stage, the patient should have a hinged well made knee brace which will stabilize his knee during his walking. He is no into any heavy duty activities and is inmate.

At this stage, my recommendations would be hinged knee brace. I would push as far as I can to have another revision with a more constrained, possibly hinged knee arthroplasty.


Voice #630108374/Job #419479
D: 10/20/2014 09:40:00          Nikolaj Wolfson, MD
T: 10/20/2014 10:11:00
NW:medq

cc: Faiser Rading, M.D.


ORTHOPEDIC CONSULTATION

Page 1 of 1

Confidential Printed 2015.03.17 08:31:27 -07'00'

Nikolaj Wolfson, MD

**SAN JOAQUIN GENERAL HOSPITAL**

HISTORY & PHYSICAL

V 21557

PATIENT: GOVEA, RONNIE
MR#: 1104207
ADMIT DATE:01/05/2015
LOCATION:SPEC CR CL
DOB:04/18/1968

CHIEF COMPLAINT: Unstable left total knee arthroplasty.

HISTORY OF PRESENT ILLNESS: The patient is a 46-year-old man who had an
infected left total knee arthroplasty which about three years ago was
revised stage I, and cemented spacer with antibiotics was placed in. It
was aimed for about two years. In June of last year, the patient
underwent revision arthroplasty. He was doing reasonably well.
Nevertheless, over time developed more and more instability in his left
knee. This is likely on the basis of his substantial ligamentous issues.

The patient is otherwise well.

On examination today, the patient has well aligned leg. It is obvious
that he has wasting of his quads. He indeed is unstable with the varus-
valgus producing stress, both in flexion and extension. He uses a hinged
short brace which helps him to ambulate and he is very happy with the
current status of his mobility. Nevertheless, not happy to the extent
that stable knee would provide.

X-ray reviewed demonstrated total knee revised arthroplasty in a good
condition.

I discussed with the patient his situation. The only next option, in my
opinion, for stabilizing his knee would be hinged implant. Putting a
thicker spacer, in my view, will only tighten him up but will cause
likely flexion contracture.

So hinged prosthesis as revision option would involve femoral component
only. I discussed this with the patient. He understands that once
revised with the hinged prosthesis, the risks are higher in not only the
infection but even fracture and mechanical loosening. He is waiting and
asking to take this route. We had a lengthy discussion about it, and
appropriate arrangements will be made.


Voice #639052856/Job #734979
D: 01/05/2015 10:02:00
T: 01/05/2015 10:28:00
NW:medq

Nikolaj Wolfson, MD

cc: Kapra, M.D.

HISTORY & PHYSICAL
Page 1 of 1

Confidential Printed 2015 03 17 08:28:47 -07'00'

# HEALTH CARE SERVICES
## PHYSICIAN REQUEST FOR SERVICES
*(To be completed by requesting Physician and forwarded to Utilization Management Unit)*

JAN 06 2015

| PATIENT NAME | | CDC NUMBER | | INSTITUTION |
|---|---|---|---|---|
| **GOVEA, RONNIE** | | **V21557** | | **CMF** |

| DATE OF BIRTH | EPRD DATE | | GENDER | |
|---|---|---|---|---|
| **04/18/1968** | | | **MALE** | |

| PRINCIPLE DIAGNOSIS | | ICD - 9 CODE | CPT CODE(S) |
|---|---|---|---|
| | | | |

| REQUESTED SERVICE(S) | # OF DAYS RECOMMENDED |
|---|---|
| **Consult  unstable Left knee after TKR** | |

*Please check all that apply:*   ☑ Diagnostic Procedure/Consultation   ☐ Outpatient/Inpatient   ☐ Initial/Follow Up

Requested Treatment/Service is:   ☐ EMERGENT   ☐ URGENT   ☐ ROUTINE

*For the purpose of retrospective review,  if emergent or urgent, please justify:*

| Proposed provider: | Anticipated Length of Stay: |
|---|---|

Expected disposition (i.e  outpatient follow-up, return to institution, transfer)

Medical Necessity (briefly describe the clinical situation: the history of the illness, treatments used, pertinent lab and imaging studies, or questions for the consultant):

Estimated time for service delivery, recovery, rehabilitation and follow-up:

Summary of preliminary or diagnostic work up, conservative treatment provided (if applicable, please provide TB code, CD4, viral load, albumin, total protein and dates within last 3 months):

Comments (diagrams, risk factors, prognosis, alternative management, etc.):

| REQUESTING PHYSICIAN PRINTED NAME | APPROVED / AUTHORIZED / DENIED / DEFERRED BY | DATE: |
|---|---|---|
| **Dr Faiza Rading   707-448-6841  ext 2858/2804** | | |

| REQUESTING PHYSICIAN SIGNATURE | DATE: | Utilization management tracking #. |
|---|---|---|
| | | CMF 14/15 823612 |

| DATE OF CONSULTATION | PRINTED NAME OF CONSULTANT |
|---|---|
| **1/5/2015  @  0830** | SJGH, 500 West Hospital Road, French Camp; 209-468-6116 |

FINDINGS:

RECOMMENDATIONS:   *Revision   left   TKA*
*W/h   hinged   prosthesis*

FOLLOW-UP OR FURTHER EVALUATIONS REQUESTED:

| CONSULTANT SIGNATURE | DATE 01. 05. 2015 | CDC NUMBER, NAME (LAST, FIRST, MI) AND DOB |
|---|---|---|
| ETA RN SIGNATURE | DATE | **GOVEA, RONNIE** |
| **Nikolaj Wolfson, MD** 4873 | | |
| PCP SIGNATURE | DATE | |

GOVEA, RONNIE   Confidential

GOVEA, RONNIE
MRN: 001104207 Acct #: 208876482 Type: O
DOB: 04/18/1968 Age: 46Y Sex: M  DOS: 01/05/2015
Ins: CAL MEDICAL FACILITY 942  F/C: 24
Loc: SPECIAL CARE CLINIC Atnd: WOLFSON, NIKOLAJ

Attach Progress Note page for additional information

**THIS FORM MUST BE RETURNED WITH THE PATIENT!!!**

CMF   OFFSITE

JAN 06 2015

04/18/1968

DISTRIBUTION
ORIGINAL - FILE IN UHR
GREEN   - TO UHR PENDING ORIGINAL
CANARY  - CONSULTANT
PINK    - UM
GOLD    - SPECIALTY SCHEDULER

PHYSICIAN REQUEST FOR SERVICES 9RFS)       CDC 7243 (Rev. 11/02)       RECEIVED

Confidential Saved 2015-06-11T21:08:26Z

SAN JOAQUIN GENERAL HOSPITAL

V 21557

6 304 L

T.B. CARD IDENTY

Confidential
BOVEA, RONNIE
MRN: 001184257 Acct #: 28997642 Type: O
DOB: 04/18/1958 Age: 48Y Svc: M DOS: 01/05/2015
INS: CAL MEDICAL FACILITY 942 | FIC: 24
Loc: SPECIAL CARE CLINIC Atnd: WOLFSON, NIKOLAJ

TO:    Admitting Department

FOR:    Admission to SJGH or Ambulatory Surgery

DATE: 1 5 15    PATIENT AGE: 46   SEX M

The Admitting Office must interview all patients scheduled for admission or ambulatory Surgery at SJGH. This should be done immediately following the clinic visit at which the admission is scheduled or at which a TAR (Treatment Authorization Request) is indicated.

DESIRED ADMISSION DATE: _____ PLANNED SURGERY DATE: 1 14 15

DIAGNOSIS: Wristfx Kace Dr Mengelkey 715-3b

PROCEDURE(S): Revision ____ total Kace Arthroplasty

PROCEDURE CODE(S): 27447   NAME OF PRIMARY SURGEON: N Wolfson

INPATIENT?: _____ OUTPATIENT?: _____

EXPECTED LENGTH OF HOSPITALIZATION: _____

IS THIS A WORK RELATED MEDICAL PROBLEM? YES ___ (NO)

MIA: JUSTIFICATION FOR SERVICE _____

Nikolaj Wolfson, MD
4879

N. Wolfson

PHYSICIAN NAME          PHYSICIAN SIGNATURE

APPROVED _____ DENIED _____

CMF OFFSITE

CHIEF OF SERVICE APPROVAL _____ DATE _____

JAN 05 2015

ADMINISTRATIVE REVIEW _____ DATE _____

155
RECEIVED
Faxed to
63 #

(approved/denied & signature)

If financial arrangements cannot be made at this time, could this admission be delayed until the patient is able to meet financial requirements?

YES: _____ This admission could be delayed as long as _____ without causing harm to the patient.

NO _____ Delay could cause serious health problems for this patient.

FOR ADMITTING OFFICE USE

Source of payment: Insurance, 3rd Party Coverage [ ]    Medicare [ ]

OFFSITE
JAN 05 2015
RECEIVED

Medi-Cal [ ] : TAR required? Yes ___ No ___

TAR approved? Yes ___ No ___

Private Pay [ ]   Needs approval by Chief of Service

MIA [ ]   All MIA admissions and ambulatory surgeries require the approval of the Chief of Service. Electives require additional approval by Administration   CMF OFFSITE

Admission delayed? O.R. notified [ ]

JAN 08 2015
ReFaxed 63

PATIENT SERVICES REPRESENTATIVE   RECEIVED

RN melendres

Confidential Saved 2015-06-11T21:22:34Z



*San Joaquin General Hospital / A Division of San Joaquin County Health Care Services*

## ORTHOPEDIC SCHEDULING FORM

N 21557

Surgery Date:

Confirmation #: 77218

Scheduled by: Anna/ fn Welton

Confidential

GOVEA, RONNIE
MRN: 001104207  Acct #: 208876482  Type: O
DOB: 04/18/1968  Age: 46Y  Sex: M  DOS: 01/05/2015
Ins: CAL MEDICAL FACILITY 942  F/C: 24
Loc: SPECIAL CARE CLINIC  Atnd: WOLFSON, NIKOLAJ

Patient Sticker

Circle One:  → e-mail tp

SSS/AM Admit/Inpatient    Security Patient: Yes / No        ICD-9: 715.36

Diagnosis: Unstable, Revised T-T0l Knee Arthroplasty

Procedure: Revision of Revised LEF5 T0l Knee
Arthroplasty

Surgeon: No Fr80n

Urgency:  ☐ 48-72 hrs  ☐ 1 week  ☑ Elective  ☐ Other: NCXT 2 wks   Nikolaj Wolfson, MD 4873

Estimated Length of Surgery: 3  Hrs/Mins

Medical Clearance:  Y / N  By:  ☐ Int/Family Med     FINANCIAL CLEARANCE:
                              ☐ Cardiac          (Is the patient financially cleared for surgery?)
                              ☐ Anesthesia
                              ☐ PCP              YES   NO

H&P Done By:

ORTHO Surgeon: N. Wolfson

Other: _____

-----------------------------------------------------------------

Special Requests (Implants/Equipment): Deply hinled Revision Knee Implant

C-Arm: Y/N    X-Ray: Y/N    Assistance: Y / N    Blood: Y/N   Type/Amount: 2 halfs PRB0

Assistant: _____ / _____   Position: Supine   Table: Rebelan

Special Pre-Op Instructions: _____

Special Considerations (i.e. Latex Allergy, Jehovah's Witness): _____

FAX REQUEST FORM TO THE SURGERY CONTROL ROOM AT (209)468-6407

Faxed @ 10¹³  9.5.15                Confidential Saved 2015-06-11T21:22:34Z

STATE OF CALIFORNIA
**HEALTH CARE SERVICES** 2015    DEPARTMENT OF CORRECTIONS
**PHYSICIAN REQUEST FOR SERVICES**

(To be completed by requesting Physician and forwarded to Utilization Management Unit)

| PATIENT NAME GOVEA KONNIE | | CDC NUMBER V21557 | INSTITUTION |
|---|---|---|---|

| DATE OF BIRTH 4 8 68 | EPRD DATE | | GENDER |
|---|---|---|---|

| PRINCIPLE DIAGNOSIS V21557 Unstable L TKR | | ICD - 9 CODE | CPT CODE(S) |
|---|---|---|---|

| REQUESTED SERVICE(S) Revision of unstable L Knee | | | # OF DAYS RECOMMENDED |
|---|---|---|---|

Please circle all that apply: Diagnostic Procedure/Consultation      Outpatient/Inpatient      Initial/Follow-up

Requested Treatment/Service is:    **EMERGENT**      **URGENT**      **ROUTINE**

For the purpose of retrospective review, if emergent or urgent, please justify: _____

Proposed Provider: _____      Anticipated Length of Stay: _____

Expected disposition (i.e.: outpatient follow-up, return to institution, transfer): _____

Medical Necessity (briefly describe the clinical situation: the history of the illness, treatments used, pertinent lab and imaging studies, or questions for the consultant): 46 yr old well who had multiple L knee surgeries which were complicated with infection in the past. Her knee reapent surgery - 2014 current very unstable despite using a cushion made brace. Pt needs to have another revision with

Estimated time for service delivery, recovery, rehabilitation and follow-up: a hinged device.

Summary of preliminary or diagnostic work up, conservative treatment provided (if applicable, please provide TB code, CD4, viral load, albumin, total protein and dates within last 3 months): _____

Comments (diagrams, risk factors, prognosis, alternative management, etc.): _____

| REQUESTING PHYSICIAN PRINTED NAME Rudmey | APPROVED / AUTHORIZED / DENIED / DEFERRED BY DATE |
|---|---|

| REQUESTING PHYSICIAN SIGNATURE | DATE 1/9/15 | Utilization management tracking # |
|---|---|---|

| DATE OF CONSULTATION Return to SRC Medical dr for review | PRINTED NAME OF CONSULTANT |
|---|---|

FINDINGS: _____

RECOMMENDATIONS: _____

CMF-OHU

FOLLOW-UP OR FURTHER EVALUATIONS REQUESTED: _____

| CONSULTANT SIGNATURE | DATE | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
|---|---|---|
| ETA RN SIGNATURE | DATE | RONNIE GOVEA, R. |
| PCP SIGNATURE | DATE | V21557 |

**Attach Progress Note page for additional information.**
**THIS FORM MUST BE RETURNED WITH THE PATIENT!!!**

DOB: 4/8/68

DISTRIBUTION:
ORIGINAL - FILE IN UHR
GREEN - TO UHR PENDING ORIGINAL
CANARY - CONSULTANT
PINK - UM
GOLD - SPECIALTY SCHEDULER

PHYSICIAN REQUEST FOR SERVICES (RFS)      CDC 7243 (Rev. 11/02)

Confidential Saved 2015-06-11T21:08:26Z

V2l557

San Joaquin General Hospital
500 West Hospital Road
French Camp, CA 95231
209-468-6000

Confidential

GOVEA, RONNIE
MRN: 001104207 Acct #: 208876482 Type: 0
DOB: 04/18/1968 Age: 46Y Sex: M DOS: 01/05/2015
Ios: CAL MEDICAL FACILITY 942   F/C: 24
Loc: SPECIAL CARE CLINIC Atnd: WOLFSON, NIKOLAJ

*Addressograph*

1. Your practitioner(s) has (have) recommended the following operation or procedure: *Revision*
*left to rid Knee Arthroplasty*

Upon your authorization and consent, this operation or procedure, together with any different
or further procedures which, in the opinion of the practitioner(s) performing the procedure,
may be indicated due to any emergency, will be performed on you.  The operations or
procedures will be performed by the practitioner named below (or in the event the practitioner
is unable to perform or complete the procedure, a qualified substitute practitioner), together
with associates and assistants, including anesthesiologists, pathologists, and radiologists
from the medical staff of San Joaquin General Hospital to whom the practitioner(s)
performing the procedure may assign designated responsibilities.

2. Name of the practitioner(s) who is (are) performing the procedure or administering the
medical treatment: *N. Wolson*

3. All operations or procedures carry the risk of unsuccessful results, complications, injury, or
even death, from both known and unforeseen causes, and no guarantee is made as to result
or cure.  You have the right to be informed of:

- The nature of the operation or procedure, including other care, treatment or medications;
- Potential benefits, risks or side effects of the operation or procedure, including potential
  problems that might occur during recuperation;
- The likelihood of achieving treatment goals;
- Reasonable alternatives and the relevant risks, benefits and side effects related to such
  alternatives, including the possible results of not receiving care or treatment; and
- Any independent medical research or significant economic interests your practitioner may
  have related to the performance of the proposed operation or procedure.

Except in cases of emergency, operations or procedures are not performed until you have
had the opportunity to receive this information and have given your consent. You have the
right to give or refuse consent to any proposed operation or procedure at any time prior to its
performance.

4. By your signature following, you authorize the pathologist to use his/her discretion in the
disposition or use of any body part, organ, or tissue removed from your person during the
operation or procedure set forth above, subject to the following conditions (if any): _____

Your signature on this form indicates that:

- you have read and understand the information provided on the form;
- your practitioner has adequately explained to you the operation or procedure set forth
  above, along with the risks, benefits, alternatives and the other information described in this
  form;

Item #415 CBDUP STOCK (06/12/10)
Hosp. 5055 (08/10)

Consent to Surgery or Special Procedure

SAN JOAQUIN GENERAL HOSPITAL
500 W. Hospital Road
French Camp, CA 95231

v 21557

Confidential

GOVEA, RONNIE
MRN: 001104207  Acct #: 207314493  Type: I
DOB: 04/18/1968  Sex: M  PRE: 06/04/2014
Ins: CAL MEDICAL FACILITY 942  F/C: 24
Loc: Atnd: WOLFSON, NIKOLAJ

Physician's
Begin Here

Registered Nurses
Begin Here

Technical & Others
Begin Here

06/04/2014

14:45

**REF** 545050501   **LOT** 3623619   2015-06

SmartSet GMV
GENTAMICIN Bone Cement  **40g**

DePuy International Ltd
T/A DePuy CMW
Blackpool FY4 4QQ England
U.004400363623619
PA1545050501

Dr NOTE
Ph - op Dx:
Started Ins
less total Kare
Revision
POST - op As above

**REF** 545050501   **LOT** 3623619   2015-06

SmartSet GMV
GENTAMICIN Bone Cement  **40g**

DePuy International Ltd
T/A DePuy CMW
Blackpool FY4 4QQ England
U.004400363623619
PA1545050501

More luke : sl cbov.
GA No Edilso
Smal. N. bolton
TT 128 min + 75 min

REF 96-2364  **LOT** 432861
SIGMA®
TIBIAL INSERT
ROTATING PLATFORM TC3
SIZE 6 17.5mm QVF
(01)10603295242536
(17)181031(10)432861

**STERILE R** 2018-10

NEUTRAL
(01)10603292233930
(17)231130(10)461933

**REF** 96-0783  **LOT** 461933
P.F.C.® SIGMA®
FEMORAL ADAPTER BOLT

**QTY** 1

**STERILE R** 2023-11

**QTY** 1

**REF** 96-0781  **LOT** 516749
P.F.C.® SIGMA®
FEMORAL ADAPTER
5 DEGREE
(01)10603295233918
(17)240331(10)516749

**STERILE R** 2024-03

**QTY** 1

REF 96-0908  **LOT** 410623
P.F.C.® SIGMA®
POSTERIOR AUGMENT COMBO CEMENTED
SIZE 5 8mm
(01)10603295234517
(17)230531(10)410623

**STERILE R** 2023-08

**QTY** 1

REF 96-0902  **LOT** 413749
P.F.C.® SIGMA®
DISTAL AUGMENT
SIZE 5 8mm LEFT
(01)10603295234487
(17)230831(10)413749

**STERILE R** 2023-08

**QTY** 1

REF 96-0908  **LOT** 423893
P.F.C.® SIGMA®
POSTERIOR AUGMENT COMBO CEMENTED
SIZE 5 8mm
(01)10603295234517
(17)230534719

**STERILE R** 2023-09

**QTY** 1

REF 96-0900  **LOT** 265331
P.F.C.® SIGMA®
DISTAL AUGMENT
SIZE 5 4mm LEFT
(01)10603295234463
(17)220731(10)265331

**STERILE R** 2022-07

**QTY** 1

**REF** 96-0084  **LOT** 434719
SIGMA®
FEMORAL
TC3 CEMENTED
SIZE 5 LEFT
(01)10603295232513

**STERILE R** 2023-09

**QTY** 1

**REF** 1294-53-235  **LOT** 506149
UNIVERSAL FEMORAL SLEEVE
FULL POROUS
40mm
(01)10603295036334
(17)240331(10)506149

**STERILE R** 2024-03

**QTY** 1

REF 86-7426  **LOT** 287094
UNIVERSAL STEM FLUTED
115mm x 12mm
(01)10603295217893
(17)220930(10)287094

**STERILE R** 2022-09

**QTY** 1

TOCK (06/25/10)
pag. 5526 (02/10)

SAN JOAQUIN GENERAL HOSPITAL
500 W. Hospital Road
French Camp, CA 95231

Physician's
Begin Here

Registered Nurses
Begin Here

Technical & Others
Begin Here

V 21557

GOVEA, RONNIE
MRN: 001104207  Acct #: 207314493  Type: I
DOB: 04/18/1968  Sex: M  PRE: 06/04/2014
Ins: CAL MEDICAL FACILITY 942  F/C: 24
Loc: Alnd: WOLFSON, NIKOLAJ

Confidential

---

LC:

REF 86-7412    LOT 458881

UNIVERSAL STEM FLUTED
75mm x 12mm
(01)10603295217817
(17)231130(10)458881

STERILE R  2023-11

QTY 1

1294-54-100 LOT 504785

M.B.T. REVISION
METAPHYSEAL SLEEVE POROUS
37mm
(01)10603295026419
(17)240229(10)504785

STERILE R  2024-02

QTY 1

---

1294-35-140 LOT 484871

TIBIAL TRAY ROTATING PLATFORM
M.B.T. REVISION
SIZE 4 CEMENTED
(01)10603296025979
(17)240131(10)484871

STERILE R  2024-01

QTY 1

REF 96-0103    LOT. D13113152    2018-10
- OVAL-DOME PATELLA 3-PEG , 41mm

(01)10603296232636
(17)181031(10)D13113152

DePuy    DePuy Orthopaedics, Inc.

---

PROGRESS NOTES