1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT
9                    FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11   RONNIE R. GOVEA,                          No.  2:15-cv-02545 MCE DB P
12                  Plaintiff,
13          v.                                 FINDINGS AND RECOMMENDATIONS
14   ROBERT W. FOX, et al.,
15                  Defendants.
16

17          Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights

18   action pursuant to 42 U.S.C. § 1983.  Plaintiff alleges defendants were deliberately indifferent to

19   his serious medical needs.  Before the court is defendants' motion for summary judgment.  (ECF

20   No. 92.)  For the reasons set forth below, the court will recommend defendants' motion for

21   summary judgment be granted.

22                                    **BACKGROUND**

23   **I.  Procedural History**

24          Plaintiff initiated this action by filing the original complaint in December, 2015.  (ECF

25   No. 1.)  That complaint was screened and dismissed for failure to state a claim.  (ECF No. 8.)

26   Thereafter, plaintiff filed an amended complaint.  (ECF No. 13.)  Upon screening the amended

27   complaint, the court found that plaintiff stated a potentially cognizable Eighth Amendment claim

28   against several defendants but dismissed his state law negligence claim for failure to plead

                                            1

compliance with the California Government Claims Act.  (ECF No. 15.)  Plaintiff was given the option to proceed immediately with his Eighth Amendment claims or to amend the complaint. Plaintiff opted to file a second amended complaint on December 21, 2018.  (ECF No. 16.)  The court found that plaintiff's Second Amended Complaint stated both Eighth Amendment and state law negligence claims and ordered service appropriate for Joseph Bick, Jackie Clark, Robert W. Fox, J. Lewis, F. Rading, and Nikolaj Wolfson.  (ECF No. 19.)  Following completion of service, the court granted plaintiff's motion to amend the complaint.  (ECF No. 63.)  Plaintiff filed the Third Amended Complaint ("TAC") on October 21, 2019.  (ECF No. 64.)  The TAC is the operative complaint in this action.

Defendants subsequently filed two separate motions to dismiss the TAC.  (ECF No. 65, 67.)  The first motion to dismiss filed by defendants Bick, Clark, Fox, Lewis, and Rading (ECF No. 65) was granted in part and denied in part (ECF No. 77).  The court dismissed plaintiff's ADA claims and declined to exercise supplemental jurisdiction over plaintiff's state late disability claims but permitted plaintiff to proceed on his Eighth Amendment Claims against defendants Bick, Clark, Fox, Lewis, and Rading.  (Id. at 2.)  The second motion to dismiss was filed by Wolfson.  (ECF No. 67.)  The court granted this motion and Wolfson was dismissed as a defendant in this action.  (ECF No. 77.)

The remaining defendants filed an answer to the TAC on April 7, 2020.  (ECF No. 78.) Following discovery, defendants filed the motion for summary judgment currently before the court on April 12, 2021.  (ECF No. 92.)  Plaintiff filed an opposition on May 17, 2021.  (ECF No. 96.)  Defendants filed a reply on May 24, 2021.  (ECF No. 97.)  On May 25, 2021, the court took the motion under submission.  (ECF No. 98.)

**II.  Factual Allegations**

Plaintiff claims that defendants violated plaintiff's Eighth Amendment rights through deliberate indifference to plaintiff's serious medical needs.  In the TAC, Plaintiff alleges the following:  In April 2013, plaintiff used an inmate grievance to inform defendant Rading, a physician at California Medical Facility ("CMF"), that plaintiff's knee had been replaced with an antibiotic spacer due to multiple failed knee replacement surgeries.  (ECF No. 64 at 5.)  Plaintiff

stated in the grievance that the spacer was overdue for removal and requested a knee replacement surgery.  (Id.)  Defendant Rading denied plaintiff's request for a new knee replacement.  (Id.)  Plaintiff appealed this denial.  (Id.)  Defendant Clark, a non-physician employed as the Chief Executive Officer of CMF, denied plaintiff's appeal at the second level of review on May 28, 2013.  (Id.)

Plaintiff was later referred to San Joaquin General Hospital by defendant Bick, a physician and CMF's Chief Medical Executive, to meet with Dr. Wolfson regarding a knee replacement surgery to remove the antibiotic spacer.  (Id.)  During a pre-operative visit on May 8, 2014, Dr. Wolfson told plaintiff he was going to replace the antibiotic spacer with a Hinge total knee replacement device ("Hinge device") as well as metal rods in the leg bones for added stability.  (Id.)  Plaintiff's knee replacement surgery was performed by Dr. Wolfson on June 4, 2014.  (Id. at 6.)  Plaintiff alleges that, prior to the surgery, defendant Bick instructed Dr. Wolfson to install a DePuy knee replacement device ("DePuy device") despite numerous recalls both before and after the surgery.  (Id.)

At an unknown date, plaintiff informed defendant Fox, the Warden at CMF, of plaintiff's issues with his knee via two inmate appeals but both forms were ignored.  (Id. at 7-8.)  On March 16, 2015, defendant Lewis, a non-physician employed as Deputy Director of Policy and Risk Management Services at the Health Care Correspondence and Appeals Branch, denied a third level inmate appeal requesting that the defective DePuy device be fixed or replaced.  (Id. at 8.)  Defendant Lewis deemed the procedure unnecessary.  (Id.)

As a result of these events, plaintiff claims that he is in daily pain, that his left leg is 1.5 inches shorter than the right, and he can only walk short distances because of the pain and the risk of his knee buckling.  (Id.)  Plaintiff also claims he requires a wheelchair to travel and must wear a metal brace to protect the DePuy device from breaking.  (Id.)

////

////

////

////

**MOTION FOR SUMMARY JUDGMENT**

**I.     Legal Standards**

**A.  Summary Judgment under Rule 56**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.  In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the

existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248.

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (per curiam) (citation omitted).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted).  "Where the record is taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

On a motion for summary judgment, it is inappropriate for the court to weigh evidence or resolve competing inferences.  "In ruling on a motion for summary judgment, the court must leave '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts' to the jury." Foster v. Metropolitan Life Ins. Co., 243 Fed.Appx. 208, 210 (9th Cir. 2007) (quoting Anderson, 477 U.S. at 255).

Generally, when a defendant moves for summary judgment on an affirmative defense on which he bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial.  See Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992).  The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment rather than a motion to

dismiss.  See Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc).  On a motion for summary judgment for non-exhaustion, the defendant has the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy."  Id. at 1172.  If the defendant carries that burden, the "burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  Id.  The ultimate burden of proof remains with the defendant, however.  Id.  If material facts are disputed, summary judgment should be denied, and the "judge rather than a jury should determine the facts" on the exhaustion question, id. at 1166, "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue," id. at 1170-71

## II.    Material Facts

Local Rule 260(b) requires that a party opposing a motion for summary judgment "shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial."  Plaintiff's opposition to the summary judgment motion only consists of a brief (ECF No. 96) and the transcript of plaintiff's deposition in this case (ECF No. 96-1).  Plaintiff's filing in opposition to defendant's motion for summary judgment does not contain direct responses to the DSUF. (See ECF No. 96.)  As such, it fails to comply with Local Rule 260(b).

Failure to comply with local rules may be grounds for dismissal.  Ghazali v. Moran, 46 F.3d 52, 53 (9th Cir. 1995).  It is not uncommon for pro se inmates to have difficulties with the procedural elements of litigation.  This fact resulted in the Ninth Circuit's instruction that district courts are to "construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  However, plaintiff is not presently proceeding pro se in this action.  (ECF No. 86.)

It is unclear why plaintiff's counsel failed to include responses to the DSUF with the opposition.  Plaintiff's counsel has provided no explanation for their failure to abide by the local

1 │ rules.  In all future filings, counsel should review the local rules and ensure that they are

2 │ complying with them at all times.

3 │         In an effort to ensure proper consideration of plaintiff's case despite plaintiff's counsel's

4 │ failure to abide by the local rules, the court has reviewed all filings in this case to determine if

5 │ there are any material facts still in dispute.  Significantly, plaintiff clearly notes in his opposition

6 │ that "the facts of this case are well known to both Court and counsel and **not in serious dispute**."

7 │ (ECF No. 96 at 2) (emphasis added).

8 │         Based on the facts in the DSUF as well as plaintiff's statements in the TAC and

9 │ opposition, plaintiff's assertion that the facts of this case are "not in serious dispute" appears

10 │ largely correct.  In light of this statement from plaintiff, where there appears to be no

11 │ disagreement as to the facts presented, the court will consider those facts to be undisputed.  Any

12 │ remaining facts will be examined to determine if parties have provided adequate evidence that

13 │ shows there is a genuine dispute.  <u>Anderson</u>, 477 U.S. at 248.

14 │         **A.  Undisputed Facts**

15 │         At all times relevant times, plaintiff was an inmate within the California Department of

16 │ Corrections and Rehabilitation ("CDCR") at CMF.  (DSUF (ECF No. 92-1) #1; Third Am.

17 │ Compl. (ECF No. 64) at 2, ¶1.)  Defendant Robert W. Fox was the warden at CMF.  (DSUF #2;

18 │ Third Am. Compl. at 2, ¶4.)  Defendant F. Rading was a physician employed at CMF.  (DSUF

19 │ #3; Third Am. Compl. at 2, ¶5.)  Defendant Clark was employed as the Chief Executive Officer

20 │ ("CEO") and was responsible for oversight of health care operations at CMF.  (DSUF #4; Third

21 │ Am. Compl. at 3, ¶8.) Defendant Bick was employed by CMF's Chief Medical Executive

22 │ ("CME") as a licensed physician.  (DSUF #5; Third Am. Compl. at 2-3, ¶6.)  Defendant Lewis

23 │ was the Deputy Director of Policy and Risk Management Services at the Health Care

24 │ Correspondence and Appeals Branch.  (DSUF #6; Third Am. Compl. at 3, ¶9.)  Defendants Clark,

25 │ Lewis, and Fox are not physicians.  (J. Clark Decl. (ECF No. 92-3) at 1-2, ¶2; J. Lewis Decl.

26 │ (ECF No. 92-7) at 2, ¶4; R. Fox Decl. (ECF No. 92-8) at 2, ¶5.)

27 │         Prior to his arrival at CMF, plaintiff had a longstanding history of left knee problems and

28 │ had undergone multiple failed knee replacement surgeries.  (DSUF #7-9; Third Am. Compl. at 4,

¶16.)  As a result of plaintiff's third knee replacement surgery failing, all hardware was removed from plaintiff's knee and an antibiotic spacer was installed.  (DSUF #12; Third Am. Compl. at 4, ¶16.)

On or about March 7, 2013, plaintiff submitted an inmate grievance (No. PVSP-HC-12049082) requesting that plaintiff receive adequate treatment for his knee.  (DSUF #20; Third Am. Compl. at 5, ¶18.)  Plaintiff specifically requested surgery to install a new knee replacement device.  (Id.)

Defendant Rading was assigned to respond to plaintiff's grievance.  (DSUF #25; Third Am. Compl. at 5, ¶18.)  Defendant Rading reviewed the notes of Dr. Dowbak and Dr. Bentley. (DSUF #26.)  Based on the opinions of Dr. Dowbak and Dr. Bentley, plaintiff's current and previous orthopedic surgeons, defendant Rading found that Plaintiff had not received a recommendation for another knee revision from a qualified physician.  (DSUF #27.)  Defendant Rading granted plaintiff's request for adequate medical treatment but denied the plaintiff's specific request for surgery to insert a new knee replacement device.  (DSUF #28; Third Am. Compl. at 5, ¶18.)  Defendant Rading also referred plaintiff to the Institutional Utilization Management Committee ("IUMC") for further review of his case.[1]  (DSUF #28, 90; Third Am. Compl. at 5, ¶19.)

Defendant Clark reviewed this appeal at the second level of review.  (DSUF #98-99; Third Am. Compl. at 5, ¶19.)  Defendant Clark granted plaintiff's request for adequate treatment but denied plaintiff's request for a specific treatment in the form of knee replacement surgery. (DSUF #98-100;  Third Am. Compl. at 5, ¶19.)

Defendant Lewis denied a separate inmate appeal (No. CMF-HC-13037843) regarding the treatment of plaintiff's knee at the third level of review.  (DSUF #93-94; Third Am. Compl. at 8, ¶30.)  Defendant Lewis found that no changes were necessary to the previous appeal response as ////

---

[1] The TAC erroneously states that defendant Clark referred plaintiff to the IUMC for further review.  (Third Am. Compl. at 5, ¶19.)  Plaintiff later identified, and documentary evidence provided by defendants supports, that it was defendant Rading who referred plaintiff to the IUMC.  (See ECF No. 96-1 at 72, ll. 4-15; See also F. Rading Decl., Ex. E, at 32-33.)

plaintiff's medical issues were being addressed by his physicians.  (DSUF #95; Third Am. Compl. at 8, ¶30.)

In connection with two of plaintiff's inmate appeals, plaintiff sent two "Inmate Request[s] for Interview" to defendant Fox.[2]  (Third Am. Compl. at 7, ¶29; ECF No. 96-1 at 61, 110-11.) Defendant Fox was not mentioned in plaintiff's inmate grievances.  (DSUF #106-107;  ECF No. 96 5-6.)  Defendant Fox had no involvement in plaintiff's medical care or in reviewing plaintiff's inmate appeals.  (DSUF #108.)

### B.  Disputed Facts

As stated previously, the parties agree that the facts in this case are not in serious dispute. However, plaintiff appears to disagree with a few of the facts presented by defendants in the DSUF.

Plaintiff claims that defendant was given "a choice between amputation, fusion, and total knee replacement. He chose the third option."  (ECF No. 92 at 3-4.)  Plaintiff has not presented any evidence in support of this.  Defendants argue that plaintiff was not given three choices but was recommended different treatment plans over the course of several years and meetings with several different orthopedic surgeons.  (ECF No. 97 at 3-4.)  Defendants further contend that plaintiff's initial specialists refused to perform a knee replacement surgery.  (Id. at 2.) Defendants provide documentary evidence of treatment recommendations provided by plaintiff's various doctors.  (F. Rading Decl. (ECF No. 92-5), Ex. C, at 27; F. Rading Decl., Ex. D, at 30; F. Rading Decl., Ex. F, at 35.)

Plaintiff also claimed that Dr. Bick directed Dr. Wolfson "to install a DePuy knee replacement device" instead of a Hinge device.  (Third Am. Compl. at 6, ¶22.)  Plaintiff has not presented any evidence in support of this.  Defendants claim that Dr. Bick did not advise Dr. Wolfson on how to perform the surgery, recommend a specific knee replacement device, or otherwise direct Dr. Wolfson on how to conduct the surgery.  (DSUF #42.)  Defendants assert

---

[2] In the TAC plaintiff originally indicated he had "sent two Form 602s to Fox."  (Third Am. Compl. at 7, ¶29.)  Plaintiff later clarified that he sent two "Inmate Request for Interview" forms to defendant Fox, not his inmate appeals.  (ECF No. 96-1 at 110-11.)

1    that Dr. Bick had no knowledge of Dr. Wolfson's surgical plan for Plaintiff and never instructed

2    Dr. Wolfson to install a DePuy device.  (DSUF #43.)  In support, defendants provide a

3    declaration from Dr. Bick stating that prior to plaintiff's surgery, he had no contact with Dr.

4    Wolfson and did not provide any instruction as to plaintiff's surgery.  (ECF No. 92-4 at 7, ¶17.)

5    In the deposition testimony attached to the opposition, plaintiff also acknowledges that he has no

6    knowledge of if Dr. Bick instructed Dr. Wolfson to install a specific device (ECF No. 96-1 at 97,

7    ll. 14-16) or if Dr. Bick was even aware Dr. Wolfson intended to install a DePuy device prior to

8    surgery.  (Id. at 88, ll. 13-15.)

9        Whether the parties have presented sufficient evidence to establish the existence of a

10   genuine dispute as to the above facts will be addressed below in the relevant sections.

11   **III.   Discussion**

12       **A.   Exhaustion**

13           **1.   Legal Standard - Exhaustion**

14               **i.   PLRA Exhaustion Requirement**

15       Because plaintiff is a prisoner challenging the conditions of his confinement, his claims

16   are subject to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  The PLRA

17   mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 .

18   . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility

19   until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The

20   exhaustion requirement "applies to all inmate suits about prison life, whether they involve general

21   circumstances or particular episodes, and whether they allege excessive force or some other

22   wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).  Regardless of the relief sought, a prisoner

23   must pursue an appeal through all levels of a prison's grievance as long as some remedy remains

24   available.  "The obligation to exhaust 'available' remedies persists as long as *some* remedy

25   remains 'available.'  Once that is no longer the case, then there are no 'remedies . . . available,'

26   and the prisoner need not further pursue the grievance."  Brown v. Valoff, 422 F.3d 926, 935 (9th

27   Cir. 2005) (emphasis and alteration in original) (citing Booth v. Churner, 532 U.S. 731, 736

28   (2001)).

"Under § 1997e(a), the inmate exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." Ross v. Blake, 136 S. Ct. 1850, 1858 (2016) (brackets in original).  In discussing availability in Ross the Supreme Court identified three circumstances in which administrative remedies were unavailable: (1) where an administrative remedy "operates as a simple dead end" in which officers are "unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) where an administrative scheme is "incapable of use" because "no ordinary prisoner can discern or navigate it;" and (3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1859-60.  "[A]side from [the unavailability] exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" Id. at 1856.  "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." Id. at 1857.

"[F]ailure to exhaust is an affirmative defense under the PLRA." Jones v. Bock, 549 U.S. 199, 216 (2007).  It is the defendant's burden "to prove that there was an available administrative remedy." Albino, 747 F.3d at 1172 (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)).  The burden then "shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies unavailable to him." Id.

A prisoner is required to exhaust administrative remedies before filing suit.  McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam).  Section 1997e(a) mandates that "[n]o action shall be brought . . . until [the prisoner's] administrative remedies . . . are exhausted.  42 U.S.C. § 1997e(a).  "The 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained." Booth, 532 U.S. at 738.  "Exhaustion subsequent to the filing of suit will not suffice." McKinney, 311 F.3d at 1199.

### ii.  California's Inmate Appeals Process

In California, prisoners may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material

11

adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). During the time relevant to this action,[3] inmates in California proceeded through three levels of appeals to exhaust the appeal process: (1) formal written appeal on a CDC 602 inmate appeal form; (2) second level appeal to the institution head or designee; and (3) third level appeal to the Director of the California Department of Corrections and Rehabilitation ("CDCR"). Cal. Code Regs. tit. 15, § 3084.7. Under specific circumstances, the first level review may be bypassed. Id. The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies. See id., § 3084.7(d)(3). However, a cancellation or rejection decision does not exhaust administrative remedies. Id., § 3084.1(b).

A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennet v. King, 293 F.3d 1096, 1098 (9th Cir. 2002). In submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(3). Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and they must "describe the specific issue under appeal and the relief requested." Id. § 3084.6(b)(8).

An inmate has thirty calendar days to submit their grievance from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed." Cal. Code Regs. tit 15, § 3084.8(b).

## 2. Analysis - Exhaustion

Plaintiff failed to properly exhaust his claims as to defendant Fox. (ECF No. 92-2 at 20.) Plaintiff concedes that defendant Fox "[was not] specifically mentioned" in the inmate grievances filed by plaintiff. (ECF No. 96 at 6.) He also admits that CDCR regulations are sufficiently detailed such that the standard articulated by the Ninth Circuit in Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009), does not apply to California State prisoners. (Id.) However, plaintiff

---

[3] In 2020, California changed the grievance system from a three-tier system to a two-tier system. The change became effective on June 1, 2020, after plaintiff initiated the relevant appeals in the present case. See Cal. Code Regs. tit. 15, § 3480. All citations to the California code in the text refer to the prior law.

argues that defendants have not met "[their] burden to show that the applicable regulations were publicized to inmates for the plaintiff to know what he/she needed to do." (Id.)  Plaintiff believes that defendants cannot establish as a matter of fact that plaintiff failed to exhaust potential remedies because defendants have not shown "they provided [plaintiff] with the source material need to establish knowledge of the regulations." (Id. at 7.)  As a result of this alleged failure, plaintiff argues his grievances exhausted administrative remedies because it was "sufficient to alert the prison authorities in general, the warden in particular, of the nature of the wrong for which redress was sought." (Id.)

The Ninth Circuit has found that "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought[,]" Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)).  Such a grievance must "provide enough information…to allow prison officials to take appropriate responsive measures." Id. (quoting Johnson v. Testman, 380 F.3d 691, 697 (2nd Cir. 2004)).

The grievances filed by plaintiff are not sufficient to alert defendants to plaintiff's claim against defendant Fox.  The grievances do not mention defendant Fox or discuss any actions taken by him.  (ECF No. 96 at 6.)  Additionally, the grievances were filed before the plaintiff's claims against defendant Fox even arose.  Plaintiff's claims defendant Fox failed to act in response to Inmate Request for Interview forms sent after these grievances were filed.  (Third Am. Compl. at 7-8, ¶29.)  Thus, the grievances themselves were necessarily filed before defendant Fox allegedly violated plaintiff's rights.

As the grievances did not identify defendant Fox or actions taken by him and were filed before plaintiff's claim against defendant Fox arose, the grievances could not alert the prison to the harm stated in plaintiff's claim against defendant Fox as this harm had not yet occurred.  Griffin, 557 F.3d at 1120.  Therefore, these grievances cannot exhaust plaintiff's claim against defendant Fox. Id.

The court need not reach the issue of whether defendants met their burden in showing that applicable regulations were publicized to inmates.  The inmate appeals filed by plaintiff could not serve to alert the prison to the alleged wrongs as they necessarily had not occurred when those

13

1  appeals were filed.  As such, even if defendants have not shown that applicable regulations were

2  publicized, plaintiff did not file a grievance that would alert the prison to his claims.

3      Given the above, plaintiff failed to exhaust administrative remedies related to his claim

4  against defendant Fox.  Therefore, defendant's motion for summary judgment as to defendant Fox

5  should be granted based on plaintiff's failure to exhaust administrative remedies prior to filing

6  this action.  42 U.S.C. § 1997e(a); See McKinney, 311 F.3d at 1199.

7      **B.  Eighth Amendment Claims**

8          **1.  Legal Standard - Eighth Amendment Claims**

9      The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S.

10  Const. amend. VIII.  The unnecessary and wanton infliction of pain constitutes cruel and unusual

11  punishment prohibited by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986);

12  Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).

13  Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy

14  and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited

15  by the Cruel and Unusual Punishments Clause."  Whitley, 475 U.S. at 319.

16      What is needed to show unnecessary and wanton infliction of pain "varies according to

17  the nature of the alleged constitutional violation."  Hudson v. McMillian, 503 U.S. 1, 5 (1992)

18  (citing Whitley, 475 U.S. at 320).  In order to prevail on a claim of cruel and unusual punishment,

19  however, a prisoner must allege and prove that objectively he suffered a sufficiently serious

20  deprivation and that subjectively prison officials acted with deliberate indifference in allowing or

21  causing the deprivation to occur.  Wilson, 501 U.S. at 298-99.

22      For an Eighth Amendment claim arising in the context of medical care, the prisoner must

23  allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to

24  serious medical needs."  Estelle, 429 U.S. at 106.  An Eighth Amendment medical claim has two

25  elements: "the seriousness of the prisoner's medical need and the nature of the defendant's

26  response to that need."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on

27  other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

28  ////

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104).  Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60.  By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference.  See Farmer, 511 U.S. at 834.  In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care.  Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same).  Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835.

Delays in providing medical care may manifest deliberate indifference.  Estelle, 429 U.S. at 104-05.  To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful.  See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.

15

1   1985).  In this regard, "[a] prisoner need not show his harm was substantial; however, such would

2   provide additional support for the inmate's claim that the defendant was deliberately indifferent to

3   his needs."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

4          Finally, mere differences of opinion between a prisoner and prison medical staff or

5   between medical professionals as to the proper course of treatment for a medical condition do not

6   give rise to a § 1983 claim.  See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330,

7   332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662

8   F.2d 1337, 1344 (9th Cir. 1981).

9                    **2.  Analysis - Eighth Amendment Claims**

10          At the outset, it is noted that plaintiff's opposition raises only a general argument against

11   the motion for summary judgment.  (See ECF No. 96 at 3-5.)  It does not present any arguments

12   as to why the motion for summary judgment should not be granted for individual defendants.

13   (Id.)  Instead, plaintiff argues that because he suffered an eight-year delay in receiving treatment

14   for a serious medical condition, defendants were ipso facto deliberately indifferent.  (Id. at 3.)

15          Plaintiff also argues defendants are incorrect that plaintiff's claims amount to a difference

16   in medical opinion.  (Id.)  Plaintiff states that he was given "a choice between amputation, fusion,

17   and total knee replacement" but decided to receive a knee replacement.  (Id. at 3-4.)  The

18   opposition to the motion for summary judgment provides no support for the claim that plaintiff

19   was initially given a choice of treatment.  (See Id.)  In fact, plaintiff's deposition testimony—

20   which was the sole exhibit attached to plaintiff's opposition—indicates that plaintiff was aware

21   that his prior physicians had found him to be an unsuitable candidate for knee replacement

22   surgery.  (ECF No. 96-1 at 86) ("[Dr. Dowbak] said all he could offer me is above-the-knee

23   amputation or to fuse my leg")

24          It appears it was not until plaintiff met with Dr. Wolfson that plaintiff received a

25   recommendation for a new knee replacement.  (Id. at 65 ("When I seen [sic] Dr. Wolfson…he

26   said I required a hinge knee replacement device"; See also ECF No. 92-4 at 26-27.)  Defendants

27   have provided documentary evidence, that plaintiff has not disputed, showing plaintiff's prior

28   doctors had determined plaintiff was not a suitable candidate for knee replacement and refused to

16

1    perform that surgery.  (F. Rading Decl., Ex. C, at 27; F. Rading Decl., Ex. D, at 30; F. Rading

2    Decl., Ex. F, at 35.)  According to evidence provided by defendant, after Dr. Wolfson found that

3    knee replacement surgery would be an appropriate option, plaintiff underwent knee replacement

4    surgery soon after (ECF No. 92-5 at 5, ¶ 12), was later given repeated opportunities to undergo a

5    further knee replacement (Id. at 11-13), and received ongoing treatment during the intervening

6    time (Id. at 6-11).

7            Plaintiff has not presented any evidence or made any allegations that indicate he was

8    given the option of a new knee replacement before it was offered and subsequently provided by

9    Dr. Wolfson. "Mere allegation and speculation do not create a factual dispute for purposes of

10   summary judgment."  Nelson v. Pima Cmty. College, 83 F.3d 1075, 1081-82 (9th Cir. 1996)

11   (citing Witherow v. Paff, 52 F.3d 264, 266 (9th Cir. 1995)).  As such, plaintiff's bare assertion

12   that he was given three options fails to show there is any genuine issue of material fact that

13   plaintiff was denied a knee replacement surgery after he was provided with a recommendation

14   from a physician for that treatment.

15           Additionally, plaintiff's argument that defendants violated rights due to plaintiff facing an

16   eight-year delay is a conclusory allegation that fails to establish how individual defendants

17   violated plaintiff's rights.  Under Section 1983, a plaintiff bringing an individual capacity claim

18   must demonstrate that each defendant personally participated in the deprivation of his rights.  See

19   Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  There must be an actual connection or link

20   between the actions of the defendants and the deprivation alleged to have been suffered by

21   plaintiff.  See Ortez v. Washington County, State of Oregon, 88 F.3d 804, 809 (9th Cir. 1996);

22   see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

23           After defendants' motion to dismiss was partially granted, plaintiff's remaining claims

24   were that defendants Fox, Rading, Bick, Clark, and Lewis were deliberately indifferent to

25   plaintiff's serious medical needs.  (ECF No. 77 at 2; see also ECF No. 64 at 12.)  These

26   defendants were involved at different times and in different capacities during the course of

27   plaintiff's medical care.  (See ECF No. 64 at 4-8.)  The broad allegation that these defendants

28   were deliberately indifferent as plaintiff suffered an eight-year delay in treatment is woefully

1   insufficient.  This argument fails to establish a genuine issue of material fact as to whether any

2   individual defendant acted with the necessary state of mind for an Eighth Amendment claim.

3   Farmer, 511 U.S. at 835.

4        Given the above, these broad arguments as presented in the plaintiff's opposition to the

5   motion for summary judgment fail to show that this motion should be denied.  The court will now

6   consider the arguments and evidence presented as to each individual defendant to determine if

7   summary judgment should be granted as to each claim.

8             **i.   Claim Against Doctor Rading**

9        Plaintiff claims his Eighth Amendment rights were violated when defendant Rading

10  denied plaintiff's inmate grievance requesting that he receive surgery to install a Hinge device in

11  his left leg.  (ECF No. 64 at 5.)  Defendants argue that defendant Rading was not deliberately

12  indifferent as defendant Rading reviewed plaintiff's medical record and the recommendations

13  from his medical specialists before denying plaintiff's request.  (ECF No. 92-2 at 22.)  Plaintiff

14  does not directly address these arguments in his opposition to the motion for summary judgment.

15  (See ECF No. 93.)

16       The following facts are undisputed: defendant Rading reviewed and denied plaintiff's

17  inmate grievance (Log No. CMF-HC-13037843) which requested that plaintiff receive a knee

18  replacement.  (ECF No. 64 at 5; ECF No. 92-2 at 22.)  This denial was made based on the

19  determination by Dr. Dowbak, plaintiff's orthopedic surgeon at the time, that plaintiff was

20  unsuitable for knee replacement surgery and should receive an amputation instead.  (ECF No. 92-

21  2 at 22.)  Prior to reaching a decision, defendant Rading reviewed Dr. Dowbak's

22  recommendation, the notes from plaintiff's prior orthopedic surgeon, Dr. Bentley, and plaintiff's

23  medical history.  (Id.)  Defendant Rading denied plaintiff's request but also referred to the IUMC

24  for further consideration of plaintiff's request.[4]  (Id.)  The parties agree that there is no genuine

25  issue of material fact as to plaintiff's deliberate indifference claim against defendant Rading.

26  

_____

27  [4] After reviewing plaintiff's case, the IUMC did permit plaintiff to seek a further consultation
    with Dr. Bentley who again found plaintiff unsuitable for knee replacement.  (ECF No. 92-2 at

28  22.)

1    To establish that he is entitled to judgment as a matter of law, plaintiff must show that

2    defendant was substantially indifferent to plaintiff's serious medical need.  Broughton, 622 F.2d

3    at 460 (citing Estelle, 429 U.S. at 105-06).  There is nothing in the record to indicate that

4    defendant Rading acted with deliberate indifference in deciding to deny plaintiff's request.

5    Defendant reviewed the findings and recommendations of plaintiff's orthopedic surgeons and

6    found that plaintiff was receiving adequate treatment from his specialists.  Nothing in these

7    actions suggest defendant Rading acted with deliberate indifference

8    That plaintiff was dissatisfied with the determination of he was not a suitable candidate a

9    further knee replacement surgery cannot form the basis for a § 1983 claim.  A difference of

10   opinion between a medical professional and an inmate regarding appropriate treatment for a

11   medical need cannot support a claim of deliberate indifference.  See Toguchi, 391 F.3d at 1058;

12   Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th

13   Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  Plaintiff was provided with

14   two opinions from orthopedic specialists who had recommended amputation and fusion

15   respectively.  Defendant Rading reviewed these recommendations and found that the

16   recommendations of plaintiff's specialists were reasonable and constituted adequate medical

17   treatment.  (ECF No. 92-2 at 22.)

18   Plaintiff has presented no evidence or argument that shows defendant Rading acted with

19   deliberate indifference in making this decision.  Defendant Rading even referred plaintiff's

20   request to the IUMC to ensure he was receiving adequate treatment.  (Id.)  More importantly,

21   defendant Rading's decision finding plaintiff was receiving adequate treatment and denying his

22   request for a specific type of treatment cannot support a claim of deliberate indifference as it only

23   reflects a difference of opinion between defendant Rading and plaintiff.  See Toguchi, 391 F.3d at

24   1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242

25   (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

26   Under the undisputed facts before the court, plaintiff has not shown that defendant Rading

27   acted with deliberate indifference in denying plaintiff's inmate grievance.  As such, the motion

28   ////

1  for summary judgment should be granted as to defendant Rading as plaintiff has failed to

2  establish an essential element of his claim.  Celotex, 477 U.S. at 322-23.

3  **ii.  Claim Against Chief Medical Executive Bick**

4  Plaintiff claims defendant Bick violated plaintiff's Eighth Amendment rights by

5  instructing Dr. Wolfson to install a DePuy device as opposed to a Hinge device.  (ECF No. 64 at

6  6.)  In their motion for summary judgment, defendants argue that defendant Bick was not

7  deliberately indifferent as he did not instruct Dr. Wolfson about plaintiff's medical treatment.

8  (ECF No. 92-2 at 23.)  Defendants claim that defendant Bick was unaware that a DePuy device

9  would be used.  (Id.)  Plaintiff's reply does not individually address the arguments as to defendant

10  Bick in the motion for summary judgment.  (See ECF No. 96.)

11  Plaintiff has not presented any evidentiary support for his assertion that defendant Bick

12  instructed Dr. Wolfson to install a DePuy device instead of a Hinge device.  Additionally,

13  plaintiff stated in his deposition testimony that he had no reason to believe defendant Bick had

14  provided instruction to Dr. Wolfson or was even aware a DePuy device would be used prior to

15  surgery.  (ECF No. 96-1 at 97, ll. 14-16;  Id. at 88, ll. 13-15.)  Defendants have also provided a

16  declaration from defendant Bick stating that he did not instruct Dr. Wolfson to install a DePuy

17  device or give any input on Dr. Wolfson's surgical plan.  (ECF No. 92-4 at 4.)  Defendant Bick

18  further states that he did not have any contact with Dr. Wolfson prior to plaintiff's surgery and

19  had no knowledge that a DePuy device would be installed.  (Id.)

20  Plaintiff's mere allegation that defendant Bick instructed Dr. Wolfson to install a DuPuy

21  device is not sufficient to create a factual dispute for purposes of summary judgment.  Nelson v.

22  Pima Cmty. College, 83 F.3d 1075, 1081-82 (9th Cir. 1996) (citing Witherow v. Paff, 52 F.3d

23  264, 266 (9th Cir. 1995)).  As plaintiff has not presented any proof in support of these allegations,

24  there is no genuine dispute of material fact as to plaintiff's claim against defendant Bick.  Id.

25  For plaintiff to be successful on an Eighth Amendment medical needs claim, plaintiff

26  must show both the existence of a serious medical need and that defendant responded with

27  deliberate indifference to that need.  Farmer, 511 U.S. at 834.  For a defendant to be deliberately

28  indifferent, they must first have knowledge of a substantial risk of serious harm to plaintiff.  Id. at

842.  Defendant Bick's knowledge of a serious medical risk to plaintiff is an element essential to this deliberate indifference claim.  Id.  Plaintiff has not provided any evidence showing defendant Bick had any knowledge of Dr. Wolfson's intent to install a DePuy device in plaintiff's knee.  As such, plaintiff has failed to show defendant Bick had the requisite knowledge to act with deliberate indifference.

Given the above, there exists no genuine dispute of material fact and plaintiff has not established the existence of an essential element for an Eighth Amendment claim.  Thus, defendant Bick is entitled to judgment as a matter of law and summary judgment should be granted as to this claim.  Celotex, 477 U.S. at 322.

### iii.  Claim Against Chief Executive Officer Clark

Plaintiff claims that defendant Clark violated plaintiff's Eighth Amendment rights by denying plaintiff's appeal of an inmate grievance requesting surgery to insert a Hinge device in plaintiff's knee.  (ECF No. 64 at 5.)  Defendants argue that defendant Clark was not deliberately indifferent as the decision to deny the appeal was based on the determination of plaintiff's orthopedic surgeons that plaintiff was not an appropriate treatment and their refusal to perform the surgery.  (ECF No. 92-2 at 24.)  They further argue the denial was reasonable as plaintiff's appeal requested a referral to his previous orthopedist, Dr. Bentley, who himself had already recommended amputation instead of a further knee replacement.  (Id.)  Plaintiff does not raise any arguments specific to defendant Clark in his opposition to the motion for summary judgment.  (See ECF No. 93.)

The undisputed facts are that plaintiff submitted an appeal of his denied grievance requesting to be referred to Dr. Bentley for a further knee surgery to insert a Hinge device.  (DSUF #29.)  Defendant Clark, who is not a physician, granted plaintiff's request for adequate medical treatment but denied his specific request for a Hinge device as it appeared plaintiff was receiving adequate medical treatment.  (DSUF #99-100; Third Am. Compl. at 5, ¶19.)  The parties agree there is no genuine issue of material fact.

Defendant Clark's decision to partially deny plaintiff's appeal did not violate plaintiff's Eighth Amendment rights.  Plaintiff has not presented any evidence that defendant Clark acted

with deliberate indifference in reviewing plaintiff's appeal.  Defendant Clark granted plaintiff's request for adequate medical treatment.  (Id.)  Defendant only denied the portion of plaintiff's appeal that requested a specific treatment that had been determined inappropriate by plaintiff's physicians.  (Id.)  Further, courts in this district have repeatedly held that "non-medical prison personnel…cannot be held liable for their involvement in processing/ruling on inmate appeals for medical issues where the inmate is under the care of a physician for the issues raised."  Grant v. Lewis, No. 1:16-cv-00424-LJO-SKO, 2017 WL 880417, at *5 (E.D. Cal. Mar. 6, 2017); See Pelacos v. Mays, No. 1:16-cv-01163-AWI-JLT, 2017 WL 1881464, at *8 (E.D. Cal. May 9, 2017); Mwasi v. Corcoran State Prison, No. 1:13-cv-00695-DAD-JLT, 2016 WL 5210588, at *17 (E.D. Cal May 20, 2016); Wilson v. Woodford, No. 1:05-cv-00560-OWW-SMS, 2009 WL 839921, at *21 (E.D. Cal. Mar. 30, 2009).  As a non-medical prison official, defendant Clark did not have the medical training or knowledge to overrule plaintiff's physicians.  Defendant Clark reviewed the appeal and determined that plaintiff was being treated by physicians.  Under these facts, defendant Clark cannot be held to be deliberately indifferent for deferring to the advice of plaintiff's medical professionals in reviewing his appeal.  Id.

Given the above, no genuine issue of material fact exists and defendant Clark is entitled to judgment as a matter of law given plaintiff's failure to establish an essential element of an Eighth Amendment medical needs claim.  Celotex, 477 U.S. at 322.  Accordingly, the court will recommend that defendants' motion for summary judgment be granted for defendant Clark.

### iv. Claim Against Deputy Director of Policy and Risk Management Services Lewis

Similar to plaintiff's claim against defendant Clark, plaintiff claims that defendant Lewis violated his Eighth Amendment rights by denying plaintiff's appeal of an inmate grievance. Defendants argue that defendant Lewis is entitled to judgment as a matter of law as she was not a medical professional and defendant was not deliberately indifferent in denying plaintiff's appeal as his doctors had a treatment plan in place.  (ECF No. 92-2 at 24.)  Plaintiff does not directly address these arguments in his opposition.  (See ECF No. 93.)

////

It is undisputed that defendant Lewis's only involvement with plaintiff's medical treatment was in providing a response at the third level of review to an appeal filed by plaintiff. (DSUF #89; Third Am. Compl. at 8)  Defendant Lewis denied plaintiff's appeal of a grievance requesting that plaintiff's knee be fixed or replaced.  (DSUF #93-95; Third Am. Compl. at 8.)  Defendant Lewis did so on the basis that plaintiff was already receiving ongoing treatment in the manner that his physicians had deemed appropriate.  (DSUF #94; Third Am. Compl. at 8, ¶30.)  Defendant Lewis is not a physician.  (DSUF #96.)  There is no dispute between the parties as to the material facts related to this claim.

Plaintiff has failed to establish that defendant Lewis acted with deliberate indifference in denying this inmate appeal.  Defendant Lewis denied the appeal on the basis that plaintiff was receiving active treatment for his medical needs.  (Id.)  Plaintiff has not alleged any facts or presented any evidence indicating that defendant Lewis was deliberately indifferent in coming to this conclusion.  As stated previously, non-medical prison personnel cannot be held liable for ruling on medical issues in inmate appeals when the plaintiff is currently being treated by a physician for the issue raised in the appeal.  Grant, 2017 WL 880417, at *5; See Pelacos, 2017 WL 1881464, at *8; Mwasi, 2016 WL 5210588, at *17; Wilson, 2009 WL 839921, at *21.  As non-medical personnel, defendant Lewis cannot be held to be deliberately indifferent for denying plaintiff's appeal as plaintiff was under the treatment of physicians for his knee problems.  Id.

There exists no genuine dispute of material fact and defendant Lewis is entitled to judgment as a matter of law as plaintiff has not established an essential element of this Eighth Amendment deliberate indifference claim.  Celotex, 477 U.S. at 322-23; See Farmer, 511 U.S. at 834.  Accordingly, it will be recommended that defendant's motion for summary judgment be granted related to defendant Lewis.

**v.  Claim Against Warden Fox**

As determined above, it will be recommended that defendants' motion for summary judgment be granted as to defendant Fox as plaintiff failed to properly exhaust this claim. Defendants move for summary judgment as to the substantive claim against defendant Fox as

////

1  well.  Though it will already be recommended that summary judgment be granted, the court will

2  still analyze defendant's alternative basis for doing so.

3        Plaintiff claims that defendant Fox was deliberately indifferent to plaintiff's serious

4  medical needs by failing to ensure plaintiff received medical treatment.  (ECF No. 64 at 7-8.)  Per

5  the operative complaint, plaintiff asserts that defendant Fox was aware that plaintiff had serious

6  medical needs as a result of inmate appeals filed by the plaintiff but ignored the lack of treatment

7  plaintiff received.  (Id. at 7.)  Defendants argue that plaintiff cannot establish a medical needs

8  claim against defendant Fox as he "was not involved with any aspect of Plaintiff's medical

9  treatment related to his knee, including the processing of Plaintiff's health care grievances."

10  (ECF No. 92-2 at 24-25.)

11        It is undisputed that plaintiff's inmate grievances did not name Defendant Fox and were

12  not directed to him.  (DSUF #106-07; ECF No. 96 at 5; ECF No. 96-1 at 61, ll. 6-8.)  Defendant

13  Fox also had no involvement in plaintiff's medical care or the review of his inmate appeals.

14  (DSUF #103, 108.)  Plaintiff claims that defendant Fox should have been notified of plaintiff's

15  serious medical need as a result of the "Inmate Request for Interview" forms that plaintiff sent to

16  defendant Fox.  (ECF No. 96-1 at 61, ll. 6-8.)

17        Plaintiff has not presented any facts that establish that defendant Fox had requisite

18  knowledge for deliberate indifference.  Farmer, 511 U.S. at 842.  Though plaintiff has alleged that

19  he sent an "Inmate Request for Interview" to defendant Fox (ECF No. 96-1 at 61, ll. 6-8) he

20  provides no documentary evidence in support of that claim.  Plaintiff has also not submitted any

21  evidentiary support showing that the request for interview forms would make defendant Fox

22  aware that plaintiff had a serious medical need.

23        Additionally, plaintiff's claim appears to revolve around defendant Fox's response to

24  plaintiff's inmate appeals.  Defendant Fox was not responsible for reviewing those appeals.

25  (DSUF #103.)  However, even if he was, defendant could not be held liable for not ordering the

26  specific treatment requested by plaintiff.  As with defendants Clark and Lewis, defendant Fox is

27  non-medical prison personnel (DSUF #108) and cannot be held liable for ruling on medical issues

28  in inmate appeals when the plaintiff is currently being treated by a physician for the issue raised

1  in the appeal.  Grant, 2017 WL 880417, at *5; See Pelacos, 2017 WL 1881464, at *8; Mwasi,

2  2016 WL 5210588, at *17; Wilson, 2009 WL 839921, at *21

3      Plaintiff has not presented proof to support essential elements of an Eighth Amendment

4  deliberate indifference claim against defendant Fox.  Where a party failed to establish the

5  existence of an essential element to state a claim, summary judgment should be entered.  Celotex,

6  477 U.S. at 322-23.  Accordingly, it will be recommended that defendant's motion for summary

7  judgment as to defendant Fox be granted both for failure to exhaust and failure to establish an

8  essential element to his Eighth Amendment claim.[5]

9                                  **CONCLUSION**

10      For the foregoing reasons, IT IS RECOMMENDED that:

11  1.  Defendants' motion for summary judgment (ECF No. 92) be granted.

12  2.  Judgment be entered for defendants Robert W. Fox, F. Rading, Joseph Bick, Jackie Clark,

13      and J. Lewis; and

14  3.  This action be closed.

15      These findings and recommendations will be submitted to the United States District Judge

16  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

17  after being served with these findings and recommendations, either party may file written

18  objections with the court.  The document should be captioned "Objections to Magistrate Judge's

19  Findings and Recommendations."  The parties are advised that failure to file objections within the

20  specified time may result in waiver of the right to appeal the district court's order.  Martinez v.

21  Ylst, 951 F.2d 1153 (9th Cir. 1991).

22  Dated:  September 6, 2022

25  DB:14
    DB/DB Prisoner Inbox/Civil Rights/S/gove2545.msj.fr

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

27  [5] Defendants also argue that they are entitled to qualified immunity.  (ECF No. 92-2 at 25.)
    Because defendants did not violate plaintiff's Eighth Amendment rights, the court need not
28  address the question of qualified immunity.  Pearson v. Callahan, 555 U.S. 223, 236 (2009).

25